IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BAXTER INTERNATIONAL, INC., | ) ) ) | |
| *Plaintiff,* | ) ) ) | No.  15 C 9986 |
| v. | ) ) ) | Judge Virginia M. Kendall |
| CAREFUSION   CORP.,   and   BECTON, DICKSON AND CO., | ) ) ) ) | |
| *Defendants.* | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Baxter International ("Baxter") sued CareFusion Corporation and Becton,

Dickson and Company ("Defendants") for infringement of three medical infusion pump patents,

U.S. Patent Nos. 5,764,034 (the '034 Patent), 5,782,805 (the '805 Patent), and 6,231,560 (the '560

Patent). Defendants counterclaimed seeking a declaratory judgment that Baxter's patents are

invalid and therefore cannot be infringed. Defendants hired Gregg R. Kirkpatrick to assess the

validity of Claims 1–3 and 9–10 of the '805 Patent. Baxter moves to strike portions of

Kirkpatrick's expert report. (Dkt. 310). For the following reasons, Plaintiff's motion is denied.

**LEGAL STANDARD**

"The admissibility of expert testimony is governed by the Federal Rule of Evidence 702

and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

(1993)." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Trial judges act as

gatekeepers to screen expert evidence for relevance and reliability.  *Daubert*, 509 U.S. at 589; *see

also C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015).  Rule 702 permits

expert testimony only if: (a) the expert's scientific, technical, or other specialized knowledge will

1

help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

In performing its role as gatekeeper under Rule 702, *Daubert* requires the Court to determine: (1) "whether the witness is qualified"; (2) "whether the expert's methodology is scientifically reliable"; and (3) "whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (internal quotation marks omitted). The expert's proponent bears the burden of demonstrating the testimony would satisfy the *Daubert* standard by a preponderance of the evidence. *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017).

## DISCUSSION

### I.     Reliability of Kirkpatrick's Conclusions

Based on his analysis of various medical infusion pump devices alleged to be prior art, Kirkpatrick concludes the claims in the '805 Patent "are invalid as anticipated and obvious" and that Baxter's failure to disclose certain prior art devices to the Patent and Trademark Office ("PTO") "renders the '805 patent unenforceable for inequitable conduct." (Dkt. 310-1 at 22–23). Baxter moves to strike these conclusions to the extent they rely on Kirkpatrick's assessment of three alleged prior art devices: (1) the Orion Prototype, (2) the Signature Edition II (Model 7200) Pump, and (3) the Gemini PC-4 Pump. As a physical version of each device does not exist, Kirkpatrick used documents allegedly describing each device to render his conclusions. (*Id.* at Appx. A, C, and D); (Dkt. 320 at 4). Kirkpatrick relied on two categories of documents: (1) existing patents, namely Eggers, Voss, and Marston and (2) device manuals and development documents.

2

(Dkt. 310- 1 at 34-40, Appx. A, C, and D). Baxter argues that, because Kirkpatrick fails to establish these documents accurately describe the alleged prior art devices, his conclusions based on the documents are unreliable.

Under Rule 702 and *Daubert* the Court's primary focus is "the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013). "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." *Id.* (internal quotations omitted). Moreover, "[u]nder settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true. It is then up to the party who calls the expert to introduce other evidence establishing the facts assumed by the expert." *Williams v. Illinois*, 567 U.S. 50, 57 (2012). Kirkpatrick's conclusions may properly rely on assumptions that the patents, manuals, and development documents describe the alleged prior art devices, so long as Defendants lay that factual foundation through other means.

Assessing the reliability of Kirkpatrick's methodology, the pertinent questions are (1) whether there is an evidentiary basis for Kirkpatrick's reliance on the patents, manuals, and development documents as descriptions of the alleged prior art devices and (2) whether there is a logical connection between the information those documents convey and Kirkpatrick's conclusions. *See e.g.*, *Richman v. Sheahan*, 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006); *Manpower*, 732 F.3d at 806. First, Kirkpatrick could reasonably expect that device manuals and development documents describe the devices they pertain to. For example, in forming his conclusion about the Orion Prototype, Kirkpatrick relied on documents titled, "Orion Feature Flow Chart/Storyboard

Document," "System Overview Orion Modular Patient Care System," and "Orion Project Plan," which can reasonably be expected to describe the Orion Protype Device. (Dkt. 310-1 at 35). Similarly, it is reasonable to expect that documents titled "IVAC Signature Edition II Volumetric Pump—Model 7200 Directions for Use," and "IVAC Model 7100 7200 Series Signature Edition Volumetric Infusion Pump Technical Service Manual" describe the Signature Edition II (Model 7200) Pump. (*Id.* at 38). The Court reaches the same conclusion with respect to the documents Kirkpatrick relied on as descriptions of the Gemini PC-4 Pump, namely "Gemini PC-4 Volumetric Infusion Pump/Controller Operator's Manual," and "Gemini PC-4 Volumetric Infusion Pump/Controller Maintenance Manual." (Dkt. 310-1 at 39-40). That some of these documents are drafts or post-date Baxter's patent application does not render them irrelevant or Kirkpatrick's reliance on them unreasonable. Those limitations go to the weight the jury should afford Kirkpatrick's testimony rather than to its admissibility. Baxter is free to question the accuracy and limitations of the documents at a later date "with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Daubert*, 509 U.S. at 596).

As to the patents, the similarities between the patents' contents and the features of the alleged prior art devices as described by other documents are apparent from Kirkpatrick's analysis. For example, in Appendix A Kirkpatrick describes teachings from the Eggers Patent, and then cites to Orion Prototype development records indicating that the Orion Prototype embodied each of those teachings. (Dkt. 310-1 at Appx. A). Similarly, in Appendix C, Kirkpatrick uses the Voss and Marston Patents to describe each feature of the Signature Edition II (Model 7200) Pump, but also cites to device manuals indicating that the device had the features described by Voss and/or Marston. (*Id*. at Appx. B). At least one witness has also testified that the Eggers Patent describes

the Orion Prototype. (Dkt. 311 at 137). Baxter argues that the same witness admitted that all the functionality described in the Eggers Patent is not embodied by the Orion Prototype. (Dkt. 311 at 137). That Eggers does not describe all of the functionality embodied in the Orion Prototype goes to weight, not admissibility. Kirkpatrick's analysis, as supported by witness testimony, demonstrates that at least some of the functionality described by the Eggers Patent was embodied in the Orion Prototype. Thus, while Defendants may lay more factual foundation as the case proceeds, Kirkpatrick had a reasonable basis to rely on the patents and other documents as complementary descriptions of the alleged prior art devices. The applicable patent statute itself contemplates reliance on other patents and printed publications to describe prior art inventions and prove the invalidity of the subject patent. 35 U.S.C. § 102(a)–(b); (e). [1]

Accepting the premise that the documents describe the alleged prior art devices, Appendices A, C, and D clearly establish that the information in the documents supports Kirkpatrick's conclusion that the Orion Prototype, the Signature Edition II (Model 7200) Pump, and the Gemini PC-4 Pump are prior art devices that render the claims in the '805 Patent invalid as anticipated and obvious. (Dkt. 310-1 at Appx. A, C, and D). Each feature of each device, as described by the documents, is shown to match up with each claim in the '805 Patent. (*Id*.) Kirkpatrick's determination that the devices constitute prior art, in turn supports his conclusion that Baxter's failure to disclose some of these devices to the PTO amounts to inequitable conduct that renders the '805 Patent unenforceable. (*Id*. at 52-54).

Baxter argues that various versions of each prior art device exist and Kirkpatrick's failure to identify the specific version of each device he is using as a comparison renders his conclusions speculative. But again, Kirkpatrick's failure to account for the nuance of version types in his

---

[1] The citation refers to the pre-America Invents Act version of 35 U.S.C. § 102, which is applicable to the patents at issue in this lawsuit.

analysis goes to the credibility, rather than the admissibility, of his testimony. For example, Baxter faults Kirkpatrick for relying on a document relating to the Signature Edition I (Model 7100) Pump to describe the features of the Model 7200 device. (Dkt. 310 at 12). Citing to deposition testimony in the record, Kirkpatrick explains that "[t]he only material difference between the model 7100 and model 7200 was the number of pumping channels." (Dkt. 310-1 at 48). Baxter goes further, however, and scrutinizes the testimony on which Kirkpatrick relies, arguing that the witness's testimony cannot be read to imply that the *only* difference was the number of pumping channels. (Dkt. 325 at 15). A *Daubert* motion is not the vehicle through which to challenge how facts should or should not be interpreted. That is for the jury to assess. *See Manpower*, 732 F.3d at 806 ("The district court usurps the role of the jury, and therefore abuses its discretion, if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed.").

The Court concludes that Kirkpatrick's method of using patents, device manuals, and development documents to assess the features of each alleged prior art device and compare those features to the claims in the '805 Patent was reliable. Baxter's motion to strike the portions of Kirkpatrick's report relying on his assessment of these documents is denied.

## II. Scope of Kirkpatrick's Testimony

Baxter also argues that Kirkpatrick's asserted testimony impermissibly expands the scope of Defendant's Final Invalidity Contentions. In addition to using the patents for descriptions of physical prior art devices, Kirkpatrick relies on them as prior art in and of themselves. (Dkt. 36–37, 39, Appx. A). Baxter contends this is inappropriate because Defendants' Final Invalidity Contentions identified the physical devices (the Orion Prototype and Signature Edition II (Model 7200) Pump) as the asserted prior art, not the patents. (Dkt. 325 at 2–4). A review of the Final

Invalidity Contentions indicates that Baxter is mistaken. Defendants disclosed the Eggers, Voss, and Marston Patents as prior art and Kirkpatrick is free to rely on them as such. (Dkt. 325-1 at 6, 10). Defendants claim that other documents relied on by Kirkpatrick (manuals and formation documents) also constitute prior art. (Dkt. 320 at 3-5). The Court declines to address the parties' arguments on this point because Kirkpatrick does not identify these documents as prior art in his report and because Baxter objects to Kirkpatrick's reliance on the documents as descriptions of physical prior art devices, not to his reliance on the documents as prior art. (Dkt. 310-1 at 34-40) (Dkt. 325 at 8).

Baxter also takes issue with Kirkpatrick using Orion Prototype development documents as evidence of prior conception and diligence on grounds that this theory of invalidity was not expressed in Defendants' Final Invalidity Contentions. (Dkt. 325 at 10-11); (Dkt. 310-1 at Appx. A). To the contrary, Defendants state in their Final Invalidity Contentions that the Orion Prototype is prior art under pre-AIA 35 U.S.C. § 102(g), which provides that a patent is invalid if the invention was created first in time by another inventor and that inventor did not abandon, suppress, or conceal it. (Dkt. 325-1 at 11). Thus, Kirkpatrick may use the development documents for that purpose. Baxter relatedly argues that the failure to disclose some of the development documents in the Final Invalidity Contentions precludes Kirkpatrick's reliance on them. (Dkt. 325 at 10-11). Baxter fails to cite authority for this position. The Local Patent Rules which govern Final Invalidity Contentions require only that the party identify the documents they assert are prior art, not every document the party expects to use in support of its claim. N.D. Ill. LPR §§ 2.3; 3.1; 3.3. As Kirkpatrick does not rely on the development documents as prior art, it is unproblematic that they were not all disclosed in the Final Invalidity Contentions. (*See* Dkt. 310-1 at 34-40).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to strike portions of Gregg R. Kirkpatrick's

expert report [310] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: February 8, 2021