IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAXTER INTERNATIONAL, INC., ) <br> ) <br> *Plaintiff* ) <br> ) <br> v. ) <br> ) <br> CAREFUSION CORPORATION, and ) <br> BECTON, DICKINSON AND ) <br> COMPANY, ) <br> ) <br> *Defendants*. ) | No. 15 C 9986 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Baxter International, Inc. ("Baxter") alleges in this case that Defendants CareFusion Corporation, Becton, Dickinson and Company (collectively, "CareFusion") infringes claims of U.S. Patent No. 5,782,805 relating to medical infusion pumps. CareFusion moves to exclude the opinion of Baxter's damages expert Ambreen Salters (Dkt. 358). For the reasons given, CareFusion's motion is granted.

**BACKGROUND**

Baxter accuses a subset of CareFusion's Alaris Medley infusion system of infringing the '805 patent: the main "PC Unit" module, and certain additional modules. The PC Unit can be programmed with dose error reduction software called Guardrails Suite MTX. Earlier in the case, other patents (U.S. Patent No. 5,764,034 and U.S. Patent No. 6,231,560) were asserted against CareFusion—those patents are no longer at issue, and the only asserted claims left in the case are 1-3 and 8-10 of the '805 patent.

Salters served an expert report on damages on March 13, 2020. (Dkt. 359-1, "Salters Rep."). Baxter asked Salters to opine on the damages due to Baxter by CareFusion, assuming the

1

asserted claims of the '805 patent are valid, enforceable, and infringed by Defendants as alleged by Baxter. (*Id.* at ¶ 1). Salters opines that "a reasonable royalty for Defendants' accused infringement from November 5, 2009, through April 10, 2016, is approximately $91 million based on a royalty of $225 per Accused Alaris Infusion System. This amount is determined based on a hypothetical negotiation considering the *Georgia-Pacific* factors and is computed as follows: apportioned Accused Product revenue less allocated expenses per unit, multiplied by the number of accused units sold from November 5, 2009, through April 10, 2016. (*Id.* at ¶ 25).

As a basis for her opinions, Salters identified (among other things) "interviews including Deborah Marin, a Territory Sales Representative and Region Coach at Baxter, and Warren Heim, Baxter's technical expert." (*Id.* at ¶ 7). In August 2020, following the issuance of Salters' report in March 2020, the Court struck the disclosure of Marin as untimely, and Baxter was not permitted to offer her as a witness. (Dkt. 287, *reconsideration denied at* Dkt. 308). Also in August 2020, the Court granted CareFusion's motion to strike certain portions of Heim's expert report because it expressed infringement opinions not contained in Baxter's final infringement contentions. (Dkt. 286). In particular, the Court found that Baxter's infringement contentions "did not put Defendants on notice… of its contention that the Guardrails Suite MX Software infringed the '805 patent. Accordingly, paragraphs of the Heim Report that express the theory that the Guardrails Suite MX Software infringes the '805 Patent are hereby stricken." (*Id.* at 2).

Salters did not move to supplement or amend her report after the exclusion of Marin as a witness or the exclusion of Heim's opinions on the Guardrails software as an infringing feature of the Alaris system. (Dkt. 359 at 7, *see also* Dkt. 359-3, Tr. 19:19-21).

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony with four required elements: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. However, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), must inform the court's decision in gatekeeping expert testimony under Rule 702 with three determinations: (1) "whether the witness is qualified"; (2) "whether the expert's methodology is scientifically reliable"; and (3) "whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (internal quotation marks omitted). With respect to the methodology, it is imperative that the expert's opinion "be reasoned and founded on data," but reliability is "primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013) (citing *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)).

## DISCUSSION

Salters holds an M.S. in Economics and a Bachelor's degree in Business Administration. (Dkt. 351-1 (Salters Rep.) at ¶2). She has more than 20 years of experience as an economic expert and consultant including significant patent experience. CareFusion does not challenge Salters' qualifications. The issue before the Court is if Salters' damages opinion is reliable and will assist a trier of fact. Defendants contend that Salters' methodology for calculating damages is unreliable

(1) because the underlying factual support for Salters' opinion is insufficient and (2) because Salters did not conduct an appropriate apportionment analysis.

## I. Sufficient Factual Basis

Federal Rule of Evidence 702(b) requires that a "witness who is qualified as an expert by knowledge, skill, training, or education may testify in the form of an opinion or otherwise if the testimony is based on sufficient facts or data." FRE 702(b). CareFusion points to what they classify as Salters' failure to independently investigate the Alaris system, and the driving factors of its success, as a methodological failure. (Dkt. 359 at 9-10).

In particular, Salters discussed the system and its relevant features with Baxter expert witness Warren Heim and lay witness Deborah Marin but did not conduct her own market research. (Dkt. 383, Ex. A at 66:10–15, 67:16–21). The Court subsequently excluded the lay testimony of Marin, so Salters may not rely on Marin's testimony in her report. Beyond the information from Marin, Salters also discussed what drives demand for the Alaris system with Heim and another Baxter witness, Eric Sato. (Dkt. 383 at 10-11). Salters reviewed the pleadings, discovery materials, and promotional materials related to the Alaris system and identifies those materials in an appendix to her report. (Dkt. 383 at 10-11; *see also* Salters Rep. at Ex. B). The Court's focus at the *Daubert* stage is "the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013). Salters may rely on facts assumed to be true to reach her opinions, so long as Baxter establishes those facts at trial. *Williams v. Illinois*, 567 U.S. 50, 57 (2012). It was not improper for Salters to rely on a combination of case materials and discussions with other witnesses (Heim and Sato) in reaching her conclusions. *Monsanto Co. v. David,* 516 F.3d 1009 (Fed. Cir. 2008) (The "Federal Rules of Evidence establish that an expert

4

need not have obtained the basis for his opinion from personal perception… unlike an ordinary witness[], an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge."); s*ee also Apple Inc. v. Motorola,* 757 F.3d 1286 (Fed. Cir. 2014) ("[P]atent damages experts often rely on technical expertise outside of their field when . . . valuing the importance of the specific, infringing features in a complex device.") (overruled on other grounds). Therefore, the Court does not grant the *Daubert* motion on this ground.

    II.    **Apportionment Analysis**

When the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features. Apportionment is required even for non-royalty forms of damages: a jury must ultimately "apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features" using "reliable and tangible" evidence. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (citing *Garretson v. Clark*, 111 U.S. 120, 121-22 (1884).) A reasonable royalty "must reflect the value attributable to the infringing features of the product, and no more," which an expert can achieve "by careful selection of the royalty base to reflect the value added by the patented feature, where that differentiation is possible; by adjustment of the royalty rate so as to discount the value of the product's non-patented features; or by a combination thereof." *Ericsson*, 773 F.3d at 1226. Calculating damages on a whole product when only part of the product infringes "carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 66-67 (Fed. Cir. 2012). However, methods may require a wide berth to calculate damages when there are difficulties "in assigning value to a feature that may not have ever been individually sold." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014). The parties do not contest

that apportionment, as a general method of calculating damages, is universally regarded as reliable. CareFusion only alleges that Salters' method of calculating damages is not proper apportionment and is unreliable, resulting in a "bloated" $91 million damages figure. (Dkt. 359 at 1). Salters reaches that amount by multiplying the number or Alaris PC Units sold by the operating profit of the PC Unit, which is $225 per Unit. (Salters Rep. at ¶ 25).

As an initial matter, Baxter argues that there are many ways to calculate a reasonable royalty, and that these disagreements go to weight, not admissibility. (Dkt. 383 at 9). While *some* disagreements about royalty calculations can go to weight, failure to properly apportion is a consideration for whether the expert's opinion is sufficiently reliable. *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1373 (Fed. Cir. 2021) (affirming *Daubert* motion to exclude expert opinion on damages for failure to properly apportion); *see also VirnetX*, 767 F.3d at 1328 (district courts should exercise "gatekeeping authority to ensure that only theories comporting with settled principles of apportionment were allowed to reach the jury.") Therefore, to get to the applicability of the *Georgia-Pacific* factors and the "hypothetical negotiation" Salters uses to compute damages (a method which can be reliable but can also be tested on cross-examination), she must first start out with a proper apportionment.

The first question is whether Salters determined the smallest salable patent practicing unit of the accused product. ("SSPPU"). The parties dispute whether Salters needed to identify an SSPPU; and if she was required to do so, what component of the Alaris system (if any) Salters identified as the SSPPU. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018) ("We have articulated that, where multi-component products are accused of infringement, the royalty base should not be larger than the smallest salable unit embodying the patented invention.") Baxter argues that an SSPPU is not required in all instances

6

involving multi-component products. (Dkt. 383 at 6 n.3). This is directly contrary to what the Federal Circuit said in *LaserDynamics:* "We reaffirm that in any case involving multi-component products, patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is attributable to the patented feature." *LaserDynamics*, 694 F.3d at 67-68.

Because Baxter does not argue the entire market rule applies and the Alaris system is a multi-component product, Federal Circuit law required Salters to identify an SSPPU. Baxter then contends Salters viewed the SSPPU as the entire Alaris system (Dkt. 383 at 5) while CareFusion argues that Salters' report and deposition testimony show the PC Unit was the SSPPU, even if Salters chose to refer to it as a "primary embodi[ment]." (Dkt. 416 at 3-5).

In her deposition, Salters testified that "the entire infusion pump is contemplated by the patents and the asserted claims of the patents; however, what I was looking for where – was where the patented functionality was primarily embodied. And so we can call it the SSPPU. That is the term that was used. I typically prefer primarily embodied, which is what I clarify later." (Dkt. 359-3 at Tr. 95:23 - 96:4).[1] Baxter attempts to argue in its Opposition that Salters was referring to the entire Alaris System as the SSPPU, which she then apportioned down to the PCU component. (Dkt. 383 at 5). Salters' own report belies this position. First, her report makes clear that she "apportioned based on the portion of Accused Product revenue generated by the PCU component, which is where the accused technology is **primarily embodied**." (Salters Rep. ¶ 33) (emphasis added). She repeats again that "the technology taught by the '805 patent is **primarily embodied** within PC Unit of the Accused Product." (*Id.* ¶ 39) (emphasis added). Finally, she repeats that she

---

[1] This inconsistency in Baxter's position—she did not need to identify an SSPPU, but if she did, it was the entire Alaris system—only underscores the unreliability of Salters' apportionment approach.

7

apportioned based on revenue generated by the PCU, "which is where the accused technology is **primarily embodied**." (*Id.* ¶ 67) (emphasis added).

Still, Baxter argues that Salters does not need to further apportion beyond the Alaris PC Unit, because the invention of the '805 patent is "fundamental" to the entire system. (Opp. at 8). Apportioning down to the PC Unit, then, was appropriate because that is "where [the primary features driving demand] physically primarily reside." (Dkt. 359-3, Tr. 99:14-24.) Here, even identifying the "smallest, identifiable technical component tied to the footprint of the invention… does not insulate [Baxter] from the essential requirement that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product... if the smallest salable unit—or smallest identifiable technical component—contains non-infringing features, additional apportionment is still required." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310-11 (Fed. Cir. 2018); *see also VirnetX*, 767 F.3d at 1327 ("It is not enough to show that the patented feature is viewed as valuable, important, or even essential to the use of the overall product.") Whether "viewed as valuable, important, or even essential" the patented feature must be separated. *VirnetX,* 767 F.3d at 1327 (citing *LaserDynamics*, 694 F.3d at 68). Baxter's "obligation to apportion damages only to the patented features does not end with the identification of the smallest salable unit if that unit still contains significant unpatented features." *Id.*

Thus, even if Salters was considering the PC Unit as the SSPPU, CareFusion argues that further apportionment was still required because the PC Unit contains both patented and non-patented features. It points to the Guardrails software as an example of non-infringing technology contained within the PC Unit. (Dkt. 359 at 11). Baxter disputes that Salters made "any reference to 'Guardrails' when she identified the feature functionality driving demand." (Dkt. 383 at 13). Salters, in her report, explains that the "Alaris Infusion System is … programmed with dose error

8

reduction software called Guardrails." (Salters Rep. ¶ 21). She goes on to say that "this software [Guardrails] runs on all Accused Alaris Infusion Systems and allows a system to use what the Defendants call profiles, which are different sets of configuration parameters that contain medicine and dosing parameters for a particular area of the facility, such as the NICU or the adult critical care unit." (*Id.*) Salters' Report also includes "Driving and/or Differentiating Features" of the Alaris System that include "Supports Guardrails Safety Software" and "Specifically References Profiles within Guardrails." (Salters Rep., Workpaper 4). And Heim, whom Salters relies on for the features driving demand, opines that the Alaris system products use a PC Unit, and "the Main Microprocessor in the PC Unit **runs** the Guardrails dose error reduction software that uses Profiles to configure the Alaris System to the hospital clinical area selected by the user." (Dkt. 359-2, ¶ 641).[2] (emphasis added). Baxter (and Salters) now disclaim these statements, but Salters is bound by the opinions she set forth in her report, and chose not to seek leave to amend or supplement those opinions after Baxter was precluded from offering expert testimony on the infringement of the Guardrails software. Salters' failure to apportion between the patented features of the PC Unit and the non-patented features (including Guardrails) is unreliable. *See Power Integrations, Inc.*, 904 F.3d at 977 ("[T]he patentee must estimate what portion of that smallest salable unit is attributable to the patented technology when the smallest salable unit itself contains several non-infringing features.")

The cases Baxter relies on in support of Salters' apportionment methodology are easily differentiated. In *Exmark*, the Federal Circuit allowed a reliable apportionment using the accused

---

[2] The parties appear to contest whether or not this portion of Heim's opinion on Guardrails is stricken. *Compare* Dkt. 359-2 (striking portion of ¶ 641 that refers to Guardrails) with Dkt. 383 at 14. And to the extent Baxter suggests it will still argue infringement of the Guardrails software at trial (Dkt. 383 at 13-14) the Court has already found that "Baxter did not put Defendants on notice, as required by the Local Rules, of its contention that the Guardrails Suite MX Software infringed the '805 Patent." (Dkt. 286 at 2).

9

product as a royalty base and further apportionment through the royalty rate. *See Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018). But in that case, the Federal Circuit recognized that using the accused product sales as the royalty base was particularly appropriate because the asserted claim was actually directed to the product as a whole—there were no unpatented or non-infringing features of the product. *Id.* Baxter's reliance on *Oil-Dri Corp. of America v. Nestle Purina Petcare Co.* is similarly misplaced. *Oil-Dri,* 2019 WL 5206273 (N.D. Ill. Mar. 13, 2019). There, the patent in suit "cover[ed] the infringing product as a whole, not a single component of a multi-component product." Therefore, the expert there was "entitled to use the entire market value rule of the product as the base for determining a reasonable royalty." The asserted claims of the '805 patent do not cover the infringing product (the Alaris system) as a whole, as there are several non-infringing modules and the Guardrails software, at least. Ultimately, Salters' failure to clearly identify an SSPPU, and further failure to apportion between patented and non-patented features of the PC Unit, is an unreliable methodology that does not comport with apportionment standards set by the Federal Circuit and would only serve to confuse the jury.

## CONCLUSION

For the foregoing reasons, CareFusion's motion to exclude the testimony of damages expert Ambreen Salters (Dkt. 359) is granted.

_____
Virginia M. Kendall
United States District Judge

Date: March 30, 2022