IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAXTER INTERNATIONAL, INC.,   *Plaintiff*   v.   CAREFUSION CORPORATION, and BECTON, DICKINSON AND COMPANY,   *Defendants*. | No. 15 C 9986   Judge Virginia M. Kendall |

**MEMORANDUM ORDER AND OPINION**

Before the Court is Defendants CareFusion Corporation and Becton, Dickinson, and Company's (collectively, "CareFusion") motion for partial summary judgment of noninfringement. [351]. CareFusion moves for noninfringement of claims 1-3 and 8-10 of U.S. Patent No. 5,782,805 ("the '805 patent") as to the accused Alaris Medley infusion pump system Model 8000 and Model 8015 PC Units in conjunction with one or more of the Syringe Module Model 8110 and/or PCA Module Model 8120. For the reasons given, CareFusion's motion is denied.

**BACKGROUND**

I. **The '805 Patent's Means-Plus-Function Limitations**

Claim 1 of the '805 patent discloses the means-plus-function limitation of having a "means for applying pumping action to the tube." (Dkt. 393 at ¶ 7, 9; *see also* '805 patent, col. 20, ln. 17–20). Claims 2–3 and 8–10 are dependent upon claim 1 and do not disclose any additional means-plus-function limitations. (*Id.* at ¶ 5). The '805 patent discloses two means for applying pumping action to the tube in the specification—specifically, peristaltic-type pumps and valve-type pumps.

1

(*Id.* at ¶ 13; *see also* '805 patent, col. 1, ln. 21–22). With respect to the valve-type pumps specifically, the '805 patent states:

> Infusion pumps also employ pumping chambers having upstream and downstream valves to sequentially impart the propulsion to the fluid. Such valve-type pumps typically require the use of a specialized pumping cassette chamber, which is contained on a dedicated IV tube between the patient and the source of fluid.

(Dkt. 393 at ¶ 13; Patent No. '805, col. 1, ln. 31–37). The patent makes no specific reference to the peristaltic-type nor valve-type pumps outside of column 1, lines 19–37. (Dkt. 393 at ¶ 14). The patent also does not disclose any specific prior art for valve-type pumping mechanisms—namely, the IMED 980 Volumetric Pump or its corresponding patent. (*Id.* at ¶ 16).

## II. Claim Construction

At claim construction, Baxter and CareFusion agreed upon the function for the limitation "means for applying pumping action to the tube," which was "applying pumping action to the tube." (*Id.* at ¶ 9; *see also* Dkt. 191 at pp. 9–10). With respect to the means, Baxter argued that the patent disclosed alternate pumping technologies, such as syringe pump mechanisms, which would tend towards an interpretation of the means as pumping mechanisms "that propel or impart propulsion to fluids." (Dkt. 393 at ¶ 11). The Court rejected Baxter's proposal, finding that the specification did not disclose the structure of the alternative pumping technology, and adopted CareFusion's proposal, which interpreted the means as "a peristaltic-type or valve-type pumping mechanism." (*Id.* at ¶ 12).

## III. The Accused Products

The two models at issue are the Syringe Module Model 8110 and the PCA Module Model 8120. (*Id.* at ¶ 4). Both Alaris modules utilize a syringe to pump liquid medication and deliver that medication to patients. (*Id.* at ¶ 28–29). The Syringe and PCA Modules also share the same "drive

2

mechanism" to move fluid through the module, which the modules achieve with a plunger that displaces fluid in the syringe via force. (Dkt. 421 at ¶¶ 23–25). The Syringe and PCA Modules both contain the syringe in a structure that holds the syringe and receives tubing sets attached to the syringe. (Dkt. 393 at ¶¶ 30–31).

While the Syringe and PCA Modules share some fundamental features and functions, the Syringe Module also keeps the tubing sets connected to the syringe from extending beyond the bottom of the housing, which enables the PCA Module to receive that tubing sets regardless of the presence of a pressure-sensing disc. (*Id.* at ¶ 30). The Syringe Module also has a controlling software that regulates the flow rate of the syringe programmed into the unit. (Dkt. 421 at ¶ 31). The PCA Module contains a notch that gives extra berth to the tubing set connected to the syringe to ensure that the PCA Module will not pinch the tubing. (Dkt. 393 at ¶ 31). That notch enables the PCA Module to deliver the liquid medication from the syringe inside the housing to the patient. (*Id.*).

## IV. Heim's and Kirkpatrick's Expert Reports

CareFusion's expert, Greg Kirkpatrick, and Baxter's expert, Warren Heim, compare the allegedly infringing CareFusion products to the disclosed means-plus-function claim in the '805 patent. Kirkpatrick finds that the accused Syringe and PCA Modules do not infringe the '805 patent because neither pump performs the disclosed function of applying pumping action to the tube. (*Id.* at ¶ 59). Principally, Kirkpatrick opines that the disclosed mechanisms in the '805 patent perform different functions than the accused products. The disclosed mechanisms—peristaltic-type and valve-type pumping mechanisms—both apply physical force to an IV tube to apply pumping action, whether that force is squeezing the walls of the tube or sequentially imparting propulsion to the fluid. (*Id.* at ¶ 57). Conversely, according to Kirkpatrick, CareFusion's Syringe

3

and PCA Modules rely on a pressure differential in the syringe to force fluid through the IV tube. (*Id.* at ¶ 56). In imparting a pressure differential, Kirkpatrick opines that these accused products do not apply physical force to the IV tube. (*Id.*).

Further, Kirkpatrick opines on the dissimilarity in the way in which the accused products and the disclosed mechanisms apply pumping action to the tube and the results those mechanisms achieve: first, that the way that the accused products deliver medication by decreasing the volume of a syringe with linear force is not the same as the 90-degree angular force, applied sequentially, that peristaltic-type or valve-type pumping mechanisms utilize to apply pumping action to the tube. (*Id.* at ¶ 60); and second, that the ability of the products to deliver small, precise volumes of liquid medication is a different result than the larger bulk deliveries of liquid medication for which the disclosed mechanisms tend to be best suited. (*Id.* at ¶ 61).

Heim arrives at a different result. He opines that the valve-type pumps applying pumping action to the tube in the same manner as the accused CareFusion pumps because the valve-type pumps employ a piston or plunger that mimics the syringe action. (Dkt. 421 at ¶ 8). Heim disputes that the valves in a valve-type pumping mechanism apply pumping action to the tube, instead stating that the valves control the direct of the flow of fluid. (*Id.* at ¶ 12). Valve-type pumping mechanisms then apply pumping action to the tube by decreasing the volume of the pumping chamber when delivering liquid medication, which applies pressure to the liquid and displaces that liquid. (*Id.* at 11). That displacement is the same function, Heim posits, as the CareFusion products perform. (*Id.*). Heim concludes that the accused products perform the identical function to the valve-type pumping mechanism disclosed in the '805 patent "in a substantially similar way (using a pumping chamber and a plunger or piston-like component to apply force to advance fluid to

impart propulsion to the fluid) to achieve substantially the same result (fluid is pumped through the tube)." (*Id.* at ¶ 10).

V. **CareFusion 30(b)(6) Testimony**

Daniel Abal is a Senior Principal Mechanical Engineer and CareFusion's 30(b)(6) witness. (*Id.* at ¶ 23). Abal testified that both the Syringe and PCA Modules utilize a "drive mechanism" to move fluid through the tubes. (*Id.* at ¶¶ 23–24). That drive mechanism involves a plunger applying a force to a syringe and displacing the fluid in the syringe. (*Id.* at ¶ 25). Abal testified that the displacement of fluid from a syringe is the pumping action in a valve-type pumping mechanism, which a piston, plunger, or tube compression can generate. (*Id.* at ¶ 26). Usually, a piston mechanism or some sort of squeezing on the tube creates that displacement in a valve-type pump that equates to the pumping action Abal describes. (*Id.* at ¶ 29). Abal testified that valves in a valve-type pump control the direction of the flow of the fluid through the tube. (*Id.* at ¶ 28).

## LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden falls on the party seeking summary judgment to "inform[] the district court of the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact*.*" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, if the movant has met their burden, "the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Such a "genuine issue" exists when a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

5

477 U.S. 242, 248 (1986). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc..,* 145 F.3d 1303, 1307 (Fed. Cir. 1998).

## DISCUSSION

Means-plus functions claims "may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112(f). To prove literal infringement of a means-plus-function limitation, "the accused device [must] perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." *Caterpillar Inc. v. Deere & Co.,* 224 F.3d 1374, 1379 (Fed. Cir. 2000). To be an "equivalent" structure, the accused device must "perform[] the identical function 'in substantially the same way, with substantially the same result.'" *General Protecht Group, Inc. v. International Trade Com'n,,* 619 F.3d 1303, 1312 (Fed. Cir. 2010). In identifying what the structure should be, "[a] careful examination of the claim language and the recited function provides guidance as to what the corresponding structure of a claim should encompass." *Gemstar-TV Guide Intern., Inc. v. International Trade Com'n,* 383 F.3d 1352, 1363 (Fed. Cir. 2004) "Whether an accused device or method infringes a claim either literally or under the doctrine of equivalents is a question of fact." *Caterpillar*, 224 F.3d at 1379.

### I. Identical Function

The function recited in the '805 patent's means-plus-function limitation—"means for applying pumping action to the tube"—is "applying pumping action to the tube." (Dkt. 393 at ¶ 9;

*see also* Dkt. 191 at pp. 9–10). CareFusion contends that its accused products do not infringe the '805 patent because its products do not perform the function of "applying pumping action to the tube." (*E.g.,* Dkt. 393 at ¶ 55). The Court adopted CareFusion's proposed construction of the means for this claim: "a peristaltic-type or valve-type pumping mechanism." (*Id.* at ¶ 12). In doing so, the Court rejected Baxter's proposal, which was "a mechanism that imparts propulsion to a fluid," because it did not find that the '805 patent disclosed the "alternative pumping technologies" that Baxter argued the patent did during claim construction. (*Id.* at ¶¶ 10–11).

The parties dispute how the two pumping mechanisms perform the function of applying pumping action to the tube. Kirkpatrick, for CareFusion, reads this function as applying pumping action *to the tube*, as Kirkpatrick states that both peristaltic-type and valve-type pumps apply a force to the IV tube itself to impart propulsion to the fluid the IV tube delivers. (*Id.* at ¶ 57; *see also* Dkt. 352 at pp. 8–9). Kirkpatrick differentiates this function from the accused CareFusion products—the Alaris Syringe and PCA Modules—by opining that the modules do not apply a force to the tube, but rather use a "drivetrain extrusion mechanism" that increases the pressure on the fluid and forces the fluid through the IV tube. (Dkt. 393 at ¶ 56).

Baxter contends that a valve-type pumping mechanism—an acceptable means for performing the function—does not have the valves apply a physical force to the tube, which Kirkpatrick himself admits. (Dkt. 421 at ¶ 20). Heim identifies the cassette, which contains a piston that mimics the action of a syringe pump, as the source of the pumping action within a valve-type pumping mechanism. (*Id.* at ¶ 4). CareFusion's 30(b)(6) witness Daniel Abal testified that cassettes utilize a piston or plunger to pump fluid and that the piston action is the pumping action in a valve-type pump. (*Id.* at ¶¶ 26, 30). Because the Syringe and PCA Modules utilize a plunger to displace

7

fluid in the syringe, Baxter argues that these products apply pumping action to the tube identically to a valve-type pump. (*Id.* at ¶¶ 24–25).

Because the claim limitation is a means-plus-function limitation, the specification can be particularly instructive with regards to the mechanism for performing the function. *See* 35 U.S.C. § 112(f); *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1351–52 (Fed. Cir. 2015). The '805 patent discloses a "specialized pumping cassette chamber" for valve-type pumps, which is the technology Heim analogizes to the accused CareFusion pumps. (Dkt. 393 at ¶ 13; *see also* Patent No. '805, col. 1, ln. 34–37). The patent also discloses infusion pumps with "upstream and downfield streams to sequentially impart the propulsion to the fluid." (Dkt. 393 at ¶ 13; *see also* Patent No. '805, col. 1, ln. 31–34). Kirkpatrick incorporates this language in his opinion that the valves in a valve-type pump apply physical force to the IV tube to impart propulsion to the fluid, whereas syringe pumps do not apply that force. (Dkt. 393 at ¶¶ 56–57). Whether or not the accused products embody this disclosure is a question of fact.

CareFusion points to the Court's rejection of Baxter's proposed construction of the means in support to their argument that this function is not met by the accused products. (Dkt. 393 at ¶ 10). Baxter proposed mechanisms that "propel or impart propulsion to fluids," which was rejected in construing the means as "peristaltic-type or valve-type pumping mechanism." (Dkt. 393 at ¶¶ 10–12). CareFusion contends that Baxter is barred from arguing about the function changing from "applying pumping action to the tube" to "imparting propulsion to fluids," given that this Court rejects mechanisms to impart propulsion to fluids. (Dkt. 352 at p. 7). Baxter contends that a requirement of applying a force to the tube is not required by the construed language. (Dkt. 392 at p. 4-5). Baxter has presented evidence that, using the Court's construction of the means—a "peristaltic-type or valve-type pumping mechanism"— a valve-type pumping mechanism does not

apply physical force to the tube. (Dkt. 421 at ¶ 20). Baxter's interpretation stems from its reliance on Heim's conclusions. CareFusion argues that "[c]onclusory expert assertions cannot raise triable issues of material fact on summary judgment." *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008). Although Heim does conclude that the accused products perform the identical function to the claimed function (Dkt. 421 at ¶ 10), he forms that conclusion from comparisons between the functionality of the accused products and exemplary valve-type pumping mechanisms (*id.* at ¶¶ 2–4) and the testimony of CareFusion's experts, such as Kirkpatrick (*id.* at ¶ 20). The *Sitrick* court found the expert's conclusions failed to raise a genuine issue of material fact because the conclusions were "unsupported by any actual information" and were made by someone who "admitted to not being skilled in the art . . . ." 516 F.3d at 1001. CareFusion does not challenge Heim's qualifications nor skill in the art. (*See generally* Dkt. 352, 393). Heim's conclusions are also founded upon "actual information," such as handbooks (Dkt. 421 at ¶¶ 3, 13), other testimony (*e.g., id.* at ¶ 20), and comparisons to exemplary valve-type pumps (*e.g.,* Dkt. 393 at ¶¶ 41–42). Heim's testimony, and Baxter's contentions, go beyond bare conclusory statements and raise an issue of fact.

Kirkpatrick opines that the peristaltic-type and valve-type pumping mechanisms apply a physical force to the IV tube to move fluid through the tube, an opinion CareFusion argues is supported in the specification. Baxter raises Kirkpatrick's own statements that valve-type pumping mechanisms do not apply a physical force to the tube that the trier of fact must reconcile. (*Compare* Dkt. 393 at ¶ 57 *with* Dkt. 421 at ¶ 20). Baxter presents evidence of identical functionality between valve-type pumping mechanisms and the accused CareFusion products (Dkt. 421 at ¶¶ 2–4), and summary judgment is thus improper when construing the evidence in the light most favorable to Baxter.

9

## II. Identical or Equivalent Structure

To prove infringement, the moving party must show the accused product not only performs the identical claimed function, but also that the accused product utilizes an identical or equivalent structure. *Caterpillar*, 224 F.3d at 1379. This claim limitation was construed as "a peristaltic-type or valve-type pumping mechanism," and the Court did not construe the means to include alternate pumping mechanisms. (Dkt. 393 at ¶ 12). The Syringe and PCA Modules employ a syringe to create a pressure differential and displace the fluid through the tube. (*Id.* at ¶¶ 29, 49). However, the specification discloses that peristaltic-type pumping mechanisms include an "array of cams" that impart force to the IV tube via "linear wave motion," and valve-type pumping mechanisms include "upstream and downstream valves to sequentially impart the propulsion to the fluid." (*Id.* at ¶ 13). Baxter argues only that the accused products have an equivalent—not identical—structure.

### A. Substantially Similar Way

An accused product has an equivalent structure to the claimed mechanism if it performs the identical function in "substantially the same way[] with substantially the same result." *General Protecht*, 619 F.3d at 1312. For the accused products to apply pumping action to the tube in a substantially similar way to the claimed device, the parties have each offered expert testimony on whether "applying pumping action" includes applying physical force to the IV tube. (*See supra*). The specification, as previously discussed, discloses a valve-type pump that has a "specialized pumping cassette chamber" and "upstream and downstream valves." (Dkt. 393 at ¶ 13). The cassette chambers "conceptually mimic the piston type of action of the syringe pump," which enables a valve-type pumping mechanism to displace fluid from the pumping chamber through the IV tube. (Dkt. 421 at ¶ 3). CareFusion's expert agrees with this characterization of the pumping

10

action of a valve-type pumping mechanism, stating that a piston causes the displacement of the fluid, which is the pumping action in a valve-type pump. (*Id.* at ¶ 26). Because the Syringe and PCA Modules likewise displace fluid. (*Id.* at ¶ 25).

CareFusion argues that valves are an essential component of the way in which pumping action is applied to the tube. Even if the cassette chamber is part of the way a valve-type pumping mechanism applies pumping action to the tube, CareFusion argues that the cassette chamber itself is insufficient to demonstrate a "substantially similar way" if the chamber is a "mere component" of the way pumping action is applied. (Dkt. 352 at p. 12; *see Dawn Equipment Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1017 (Fed. Cir. 1998)). Pointing to similarity in only one component of the entire mechanism does not demonstrate the entire mechanism performs the function in substantially the same way, especially if the excluded component is an "indispensable part" of the system. *See Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1324 (Fed. Cir. 2004).

CareFusion's position hinges on the valves in a valve-type pumping mechanism applying pumping action to the tubes. If valves do not apply pumping action to the tube, but rather merely direct the flow of fluid through the tube, then excluding valves from a substantially similar way analysis is not improper. If a valve-type pumping mechanism applies pumping action to the tube with only a cassette chamber, then utilizes valves to control the pumped fluid through the IV tube, then it is imperative to cabin analysis of the way in which the mechanism performs the function to just the cassette chamber. *See Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999). Baxter proposes such an interpretation, relying on substantial similarity between the cassette chamber in the valve-type pumping mechanism and the Syringe and PCA Modules. (Dkt. 421 at ¶¶ 25–26). While Baxter does not contend that the accused products utilize valves to perform the function, it contends that incorporating valves into the

11

analysis is unnecessary given the scope of the patent specification. (Dkt. 392 at pp. 10–11). This competing expert testimony raises an issue of fact. If valves do apply pumping action to the tube, then Baxter has not properly compared all essential elements of the accused products and the claimed mechanism. However, if valves do not apply pumping action to the tube, then CareFusion incorporates unnecessary structure in its comparison of the two mechanisms. At the summary judgment stage, resolving all ambiguities in favor of Baxter, CareFusion has not met their burden of showing that no reasonable jury could find that its accused products perform the claimed function in a substantially similar way to a valve-type pumping mechanism.

### B. Substantially Similar Result

The second element of the test for equivalent structure is whether the accused device performs the identical function with a "substantially similar result." *General Protecht*, 619 F.3d at 1312.

CareFusion first contends there are multiple results that the claimed mechanism can achieve that its accused products cannot achieve. One of these results is the ability of peristaltic-type and valve-type pumps to "piggyback" by adding a new fluid bag to the mechanism without disconnecting the IV tube from the fluid source. (Dkt. 393 at ¶ 61). Though the claimed mechanisms can achieve this piggybacking result, the Syringe and PCA Modules cannot because there is no means to attach the second piggybacking bag. (*Id.*). In addition, the IMED pump that Baxter and its expert Heim point to can automatically refill after emptying itself. (*Id.* at ¶ 45). However, the accused syringe pumps cannot automatically refill, instead requiring the replacement of the spent syringe with a full one. (*Id.* at ¶ 61). These two differences in result, CareFusion contends, are sufficient to demonstrate the two mechanisms do not achieve substantially the same result. (Dkt. 352 at 13–14). In *Kemco Sales, Inc. v. Control Papers Co., Inc.*, for example, the

accused and disclosed products performed the same function (closing an envelope) but after performing the function, had different closures of the envelope (the envelope lip adhered on the outside versus the inside of the envelope). 208 F.3d 1352, 1365 (Fed. Cir. 2000). Here, the disclosed mechanisms can have a refilled cassette chamber and a piggybacking fluid bag after applying pumping action to the tube, whereas the Syringe and PCA Modules require a replacement syringe with additional fluid after performing the function. These differences between the accused and disclosed mechanisms are not disputed. (*See, e.g.*, Dkt. 393 at ¶ 61; Dkt. 392 at pp. 13–14). However, Baxter contends that these differences are not *results*, but rather are additional *functions*. In part, Baxter relies on the defined function—applying pumping action to the tube—to support that CareFusion's proposed results, like refilling the fluid source without disconnecting the tube, are not results of applying pumping action to the tube, thus unduly limiting the claimed function. (*Id.*). Furthermore, the patent specification limits the possible results only to what the language itself discloses. *See, e.g.*, *Gemstar-TV*, 383 F.3d at 1363 ("A careful examination of the claim language and the recited function provides guidance as to what the corresponding structure of a claim should encompass."); *Valmont Industries, Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1043 (Fed. Cir. 1993) ("In the context of section 112, however, an equivalent results from an insubstantial change which adds nothing of significance to the structure, material, or acts disclosed in the patent specification.").

Baxter argues that the only result in the patent specification is that propulsion is imparted to the fluid. (Dkt. 392 at 13; *see generally* Patent No. '805, col. 1, ln. 17–31). Baxter argues that result bars CareFusion's additional results, such as piggybacking fluid sources or automatically

refilling cassettes,[1] from providing the necessary differentiation, as both the claimed valve-type pumping mechanisms and the accused products impart motion to the fluid after applying pumping action to the tube.

CareFusion further argues that there are results the Syringe and PCA Modules can attain that the claimed structure cannot. (Dkt. 352 at 14; Dkt. 393 ¶ 61). Kirkpatrick opines that valve-type pumping mechanisms are most useful to deliver bulk amounts of fluid through an IV tube, whereas the accused CareFusion products can deliver a precise amount of fluid to the patient through the tube. (Dkt. 393 ¶ 61). CareFusion argues that because valve-type pumps cannot reach the level of precision that the Syringe or PCA Modules can, that technological gap creates a substantially different result between the accused products and disclosed mechanisms. *See Gemstar-TV*, 383 F.3d at 1363.

Baxter disputes that valve-type pumping mechanisms cannot deliver precise amounts of fluid by pointing to the IMED 980 Volumetric pump and IMED 965A Micro Volumetric Infusion pump. (Dkt. 421 at ¶¶ 18–19). The 980 pump can achieve 1 mL/hr precision, while the 965A pump can get to 0.1 mL/hr levels of precision. (*Id.*). The patent specification does not disclose any IMED pumps. (Dkt. 393 at ¶ 16). Though Baxter admits the specification of the '805 patent does not disclose the IMED technology, it argues that a person of ordinary skill in the art would understand that the specification encompassed the IMED technology at the time of drafting. (Dkt. 421 ¶¶ 13–17). In addition to the shared characteristics with valve-type pumping mechanisms, Baxter's expert Heim relies on the IMED 980 patent language, a textbook, and the IMED operating manual to

---

[1] Per *Valmont*, the automatic refilling of the cassette chamber in a valve-type pumping mechanism versus replacement of the syringe in the accused products could be a significant change from the disclosed structure. However, a reasonable jury could find that this difference is insubstantial given the claimed result, so this difference is not sufficient to grant summary judgment.

show that a POSITA would read these documents and understand that the IMED pumps are exemplary of the valve-type pumping mechanisms disclosed in the '805 patent. (*Id.*; *see also* 35 U.S.C. § 102(b) (defining what kinds of printed publications can be prior art)). Heim opines that a POSITA's understanding of the state of the art could allow a reasonable jury to find the patent inherently discloses the IMED technology, which could then be sufficient to convince a reasonable jury that the results are substantially similar. These questions of fact regarding the result of performing the function of applying pumping action to the tube, as well as the technology a POSITA would understand to be disclosed in the patent specification, preclude summary judgment as to whether the accused products perform a substantially similar result.

## CONCLUSION

For these reasons, CareFusion's motion for partial summary judgment that the Syringe Module Model 8110 and PCA Module Model 8120 do not infringe claims 1-3 and 8-10 of the '805 patent [351] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: March 31, 2022