1

```
 1                  IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3
     BAXTER INTERNATIONAL, INC.,      )
 4                                    )
                     Plaintiff,       )
 5                                    )   No. 15 C 9986
                  vs.                 )   Chicago, Illinois
 6                                    )   August 10, 2023
     CAREFUSION CORPORATION, et al., )    10:30 a.m.
 7                                    )
                     Defendants.      )
 8

 9                   TRANSCRIPT OF PROCEEDINGS

10         BEFORE THE HONORABLE NANCY L. MALDONADO

11   APPEARANCES:
     For the Plaintiff:          MARSHALL, GERSTEIN & BORUN
12                               233 South Wacker Drive
                                 6300 Sears Tower
13                               Chicago, Illinois 60606-6357
                                 BY:  MS. JULIANNE M. HARTZELL
14
     For the Defendants:         FREDRIKSON & BYRON, P.A.
15                               60 South 6th Street
                                 Suite 1500
16                               Minneapolis, Minnesota 55402-4400
                                 BY:  MR. KURT J. NIEDERLUECKE
17
                                 TOTTIS LAW
18                               401 North Michigan Avenue
                                 Suite 530
19                               Chicago, Illinois 60611
                                 BY:  MR. KEVIN TOTTIS
20
                                 WILMER CUTLER PICKERING HALE and
21                               DORR LLP
                                 7 World Trade Center
22                               New York, New York 10007
                                 BY:  MR. OMAR KHAN
23
     Official Court Reporter:    JENNIFER COSTALES, CRR, RMR, CRC
24                               219 S. Dearborn St., Room 2342
                                 Chicago, Illinois 60604
25                               (312) 435-5895
                                 jenny.uscra@yahoo.com
```

1      (Proceedings via Webex)

2         THE COURTROOM DEPUTY:  Good morning.  Case 15 CV

3  9986, Baxter International versus CareFusion Corporation.

4         If plaintiff's counsel can please state their name.

10:32:46    5         MS. HARTZELL:  Good morning.  Julianne Hartzell of

6  Marshall Gerstein & Borun on behalf of plaintiff Baxter.

7         MR. TOTTIS:  Good morning, Your Honor.  Kevin Tottis

8  along with Omar Khan and Kurt Niederluecke on behalf of

9  defendants.  Mr. Khan will be taking the primary role here,

10:33:08   10  Your Honor.

11         THE COURT:  Thank you, counsel.

12         So I reviewed your status report and was able to

13  squeeze you in this morning to have a conversation about what

14  to do about motions in limine.  I saw that depositions have

10:33:26   15  been completed.  And I'll hear from both of you briefly.

16         You know, I will say to start I am leaning towards

17  more of not sticking with the set schedule here, because I

18  will say the schedule that I set previously with respect to

19  all motions in limine would have them fully briefed in the

10:33:53   20  beginning of February with the pretrial conference in the

21  middle of February.

22         I mean, it strikes me frankly that irrespective of

23  whether I allow any supplemental expert report, which I'm kind

24  of a little sceptical of at this point, the parties are served

10:34:13   25  by having some clarity here, because I suspect that these

1    aren't going to be the only motions in limine, and to sort of

2    put this more on the front burner to provide clarity would be

3    a benefit to both sides.

4            So that's sort of my initial sort of reaction to

10:34:29    5    having read your status report.  But perhaps I'll hear from

6    the plaintiff first, Ms. Hartzell, on your position and then

7    from Mr. Khan.

8            MS. HARTZELL:  Thank you, Your Honor.  Understanding

9    the position that the Court has referenced or expressed,

10:34:48    10   plaintiff believes that having one-sided motions in limine

11   only from the defendants in advance would be unfair to the

12   plaintiff.  All parties have evidence that they believe should

13   be excluded and should be given an equal opportunity to

14   address those.

10:35:05    15           Just because Baxter's expert report was excluded does

16   not make this case particularly unusual or require that it be

17   treated in a different manner than other cases.

18           Additionally, it does appear that defendants are

19   trying to reopen fact discovery as well as expert discovery.

10:35:24    20   We have recently received some documents that have been in the

21   defendants' possession for more than a decade that were just

22   produced to us years after fact discovery was closed.

23           So we don't believe that there is any basis for

24   reopening the case to the extent that the defendants are

10:35:40    25   seeking to do here, and we believe that to the extent that

1    there is any motion practice, it should be mutual and should

2    not be front-loaded to allow the defendants additional pages,

3    additional motion practice and additional time to deal with

4    the outcome of those motions.

5    THE COURT:  Okay.  I hear you, Ms. Hartzell.

6    Here is the thing that you all -- first off, I am not

7    inclined to move this trial date.  This has been set.  I've

8    given you guys I think a week and a half.  It's been set.  I'm

9    not inclined to move it.

10    So it seems like this is sort of -- I don't want this

11    bubbling up.  The fact that I allowed these depositions, in

12    some cases second depositions of fact witnesses to sort of

13    provide clarity as I understood that the information that

14    these witnesses were relying on in these interrogatory

15    responses were based on all information that has been

16    disclosed, but it was sort of just packaging it so that it

17    wasn't new.  So this is why I'm sceptical as to why an expert

18    report is needed.

19    But to sort of reopen fact discovery, reopen expert

20    discovery, I am very reluctant to do that.  I just want to put

21    that out there.  I want to keep this date.

22    Now, Ms. Hartzell, you know, I was thinking damages

23    have been an issue in this case, right.

24    MS. HARTZELL:  Correct.

25    THE COURT:  Obviously when it came to me I was like,

1    okay, no expert.  Fact -- I mean, it's an issue.  And so a

2    logical sort of piece -- sort of front-load would be damages.

3         Now, because I'm not saying I have time to sort of

4    take a priority look at all the motions in limine and rule on

10:37:46   5    all of them early.  I mean, I have limited resources.  I'm one

6    person.  So this is why I typically, typically do motions in

7    limine in the four to six weeks before trial and so it's fresh

8    in my mind, I dig in.

9         The reason why I am even considering expediting it

10:38:05  10   here is because damages have been an issue.  So when you talk

11   about you want to do all these other motions, golly, you can

12   do all those motions, but is there any reason why to expedite

13   any other motions from the plaintiff's perspective, any other

14   categories?  Because the damages category to me seemed narrow

10:38:31  15   and for a good reason, because it's been, since I got the

16   case, it's been all about damages, right.

17        So what else would you want to front-load?

18        MS. HARTZELL:  Well, there are several other portions

19   of the defendants' case that plaintiff expects to seek to

10:38:47  20   exclude.  And as a matter of fairness, we believe that those

21   should be addressed in the same page limits and number of

22   motions as defendants are given.

23        For example, there was a lot of questioning of the

24   fact witnesses regarding a recall of Baxter's product.  We

10:39:05  25   don't think that that's relevant to this case.

1    There was testimony or questioning of the fact

2    witnesses about defendants' patent, which is not at issue in

3    this case and we believe that that is not something that's

4    relevant.

10:39:16    5    So those are the kinds of things that we believe we

6    will seek to exclude. And we don't believe that it

7    necessarily needs to be moved up, but if anything is moved up,

8    we think it should all be addressed on equal footing and in

9    equal time.

10:39:33    10    THE COURT: Okay. So when you say "on equal footing

11    and equal time," here, you can hold me accountable for being

12    fair. You've seen in my pretrial standing order, I want you,

13    I like the omnibus one, two, three, four, five motions in

14    limine in one brief.

10:39:49    15    Now, I understand that that may not work in this case

16    because of the complexity of the issues involved. I will

17    obviously give parity here and not allow defendant to go wild

18    with motions in limine and not allow plaintiff to file the

19    same, you know, the same page number, you know. In terms of

10:40:16    20    the same number, I will be fair to both sides here.

21    I guess the issue is I'm not going to do all the

22    motions in limine early. I just don't have the bandwidth to

23    do that. It would be nice if everyone had, you know, three,

24    four months in advance of trial complete clarity on their

10:40:40    25    motions in limine. Wouldn't that be a fantastic world. I

1    don't see that happening here due to my extensive caseload

2    including criminal cases.

3         However, the reason why I'm considering doing this

4    for damages only is because this has been a sticking point in

5    this case that I think also has prevented sort of discussion

6    of resolution of the case.  You know, I'm happy to try this

7    case, but it struck me that if you all knew what was in or out

8    in terms of damages, it could help you evaluate your positions

9    for settlement.  You know, that's the other reason to do

10   damages first as well, no?

11        MS. HARTZELL:  Well, Your Honor, we were faced during

12   our settlement negotiations with the position taken by

13   defendants that once the Court revolved the motion to strike,

14   then they might be in a position to negotiate.  But that was

15   resolved, and we're back again having this discussion yet

16   again.  So I'm not certain how much that clarity would assist.

17        THE COURT:  Okay.  I'll hear from you now, Mr. Khan.

18        MR. KHAN:  Your Honor, from our perspective, the

19   Court gave extraordinary, extraordinary leeway to Baxter in

20   essentially supplementing its disclosures years after the

21   close of fact discovery.  And, you know, and the Court, we

22   respect the Court's ruling on that issue.

23        But one consequence of that, Your Honor, is something

24   we foreshadowed right there in the April hearing, was we're

25   going to need to come back to you all after taking these

1    depositions to understand the shape of the damages case.  And

2    I think Your Honor is taking a very practical approach in

3    expediting that one issue, you know, and allowing us an

4    opportunity to show you why we think, you know, it's not just

10:42:29    5    in limine motions, but also we believe on timeliness issues

6    with respect to the damages case, and we think that is

7    absolutely appropriate.

8         With respect to expert reports, Your Honor, we're

9    happy to, you know, brief that for you on the same pace.  We

10:42:46    10   think there is enough time for that to be addressed at the

11   same pace as the motion practice directed to their damages

12   evidence.

13        Your Honor, it is critical for us to have the ability

14   for our experts to respond, and I'll give you one example why.

10:43:00    15   Throughout the life of this case, the entire case, there is a

16   license called the Cerner license.  Their expert, all of their

17   experts, all of our experts said that that license was

18   irrelevant.  Our expert didn't analyze that license in any

19   great detail because he said, Well, you know, Baxter's expert

10:43:17    20   said it's irrelevant.  I agree.  And he didn't analyze that.

21        Now what we've got is an interrogatory response from

22   them served a couple months ago that has all this detail about

23   it, their witnesses testified about it.  The expert has to be

24   able to analyze and assess that license and, you know, any

10:43:32    25   other underlying documents relating to that licensing in

1    context now.

2        And I think that's the kind of thing that we're

3    talking about.  We're not talking about a freewheeling right

4    to sort of put in new reports.  We're talking about a very

10:43:45    5    targeted set of issues as to which our expert did not get an

6    opportunity to respond.

7        I don't think we're talking about -- you know, we are

8    not looking to delay the case.  We're not looking to push the

9    trial date.  We think everything that we're asking for can be

10:44:00    10    accommodated within the time frame provided.

11        In fact, one of the things that we were going to

12    propose to you all, to the Court essentially was, you know,

13    we're comfortable so long as the Court would permit our

14    experts to respond to the evidence and contentions that Baxter

10:44:19    15    recently put in.  We're comfortable, we're comfortable

16    foregoing reports to the extent that our expert hadn't

17    addressed it in his report already.

18        But if the Court would like everything sort of

19    formalized in a report, then we can serve such a report very

10:44:35    20    quickly after the Court's rulings and get that done very

21    quickly.  We're not looking to delay the case at all.

22        I think, you know, Ms. Hartzell spoke about parity.

23    You know, certainly this is not an issue of CareFusion's

24    making.  You know, as I've already alluded to, there was

10:44:55    25    extraordinary leeway given to Baxter in supplementing its

disclosures late in the day.  You know, if we rewound, you

know, our interrogatory, Your Honor, on that issue was served

in 2016, seven years ago.  So had we gotten that interrogatory

response that we got from them a couple months ago, we would

10:45:13   have dealt with these issues over seven years through our fact

witnesses, through our expert witnesses and through motion

practice that has long been going on.  We would have addressed

these issues in the motion that we brought before you that

Your Honor denied, right.

10:45:28        And I think so we're not looking for some advantage

over Baxter.  We're just looking to create parity in the sense

of being able to be put in the place where we would have been

had this supplemental 'rog response been provided in 2016,

seven years ago, at the correct time.

10:45:44        We've noted that, yeah, we do reserve the right for

our fact witnesses to respond to the evidence and contentions

that Baxter has put forward.  We think that's appropriate.

            THE COURT:  Mr. Khan, I did note that footnote.  And

why isn't that enough?  Why do you need experts?

10:45:59        MR. KHAN:  So, Your Honor, for example, in certain

instances our experts -- our fact witnesses would lack

knowledge of the issues that -- or personal knowledge of the

issues that were raised.  And the only vehicle for us to be

able to respond then would be through an expert.

10:46:15        And so that is sort of, you know, why we had flagged

1    for Your Honor back even in April that that is something that

2    is a possibility.  And, again, we're not looking for

3    freewheeling reports served anew as if the history of this

4    case didn't exist.  We're looking very targeted

5    supplementation on sort of a set of discrete issues that are

6    raised by Baxter's recent contentions and Baxter's recent

7    deposition testimony.

8              THE COURT:  Okay.  I do believe that, I'm not sure if

9    I ever -- I guess there was a motion to strike.  I do believe

10   that Ms. Hartzell disputed sort of this issue of disclosure.

11   And there were lots of disputes about disclosure.

12             So here is what I am going to do.  I will allow

13   motions in limine on damages to proceed on a more expedited

14   time frame.  I'm a little reluctant to have the defendants

15   simultaneously brief why they need an expert report, because

16   it's hypothetical, and this case, I'm sure -- I don't even

17   want to know what your fees are.  And depending on my ruling,

18   it may or may not be necessary.  And I'm not into sort of

19   make-work.

20             And so I hear you, Mr. Khan, that you would like to

21   brief the issue of a supplemental report.  That feels

22   premature to me and that it may not be the best use of your

23   time.  And until I rule, it's just we don't know.

24             So in terms of a schedule, have you given -- I want

25   to hear, Mr. Khan, you know, you want to do this, so what kind

1    of schedule are you thinking about?  You can make a proposal

2    about, you know, page limits.  I need to be well informed, but

3    the more that you ask for, the longer it's going to take.

4    That's just the reality.  So choose wisely in terms of -- you

5    know, I have folks that ask for 50, 60 pages, and I read it,

6    and I'm like, well, plenty of this was unnecessary.  So choose

7    wisely, Mr. Khan.  And let me know what would be your proposal

8    for a schedule?

9           MR. KHAN:  Your Honor, I'm happy, we have given

10   thought to that, and I'm happy to talk about it now.  We

11   haven't had a chance to confer with Ms. Hartzell.  We can do

12   that and then put in a proposal to you.

13          We were thinking, Your Honor, roughly, you know, 15

14   pages and sort of, you know, two to three weeks for the

15   opening brief, you know, a couple weeks, three weeks for the

16   opposition and a week for the reply.

17          So we can get this done I think, Your Honor, pretty

18   quickly, by the end of September essentially, so that the

19   issue is teed up for you to rule on, you know, at that time.

20          THE COURT:  Okay.  Ms. Hartzell, do you have any

21   immediate thoughts on that?  I'm happy to sort of have you all

22   meet and confer and collaborate on a schedule that works for

23   you both and to submit that to me via a joint status report if

24   you don't want to commit at this point.

25          Ms. Hartzell, do you have any thoughts?

10:48:31

10:48:48

10:49:01

10:49:16

10:49:34

1      MS. HARTZELL:  I think that would make sense.  And

2  actually I know a lot of the judges in our district allow for

3  a briefing schedule at the time the motion is filed.  So I

4  think it would be beneficial for us to see what's in the

10:49:45    5  motion before we set the briefing schedule.

6      THE COURT:  Yeah, that is actually typically what I

7  do.  And so, but I think setting parameters for, Mr. Khan, if

8  you could do it in 15 pages, I don't know when you think you

9  could get this on file, and then at that point you can meet

10:50:05   10  and confer with Ms. Hartzell.  She'll have a better idea of

11  what the arguments are.

12      And, you know, understanding that, you know, don't

13  ask for 60 days or else you'll never get the clarity in

14  advance of trial that you are seeking.  So when would you be

10:50:22   15  in a position to file this, Mr. Khan?

16      MR. KHAN:  Your Honor, as I said, two or three weeks.

17  Let me just confer with our team.

18      THE COURT:  Okay.

19      MR. KHAN:  We think we can do this very quickly.

10:50:33   20      THE COURT:  Okay.  So what if I give you three weeks.

21  That's August 31st, Thursday.

22      MR. KHAN:  That would be fine.

23      THE COURT:  That's the Thursday before the long

24  weekend.  And you will thank me for doing this before the long

10:50:43   25  weekend.  So August 31st.

1       And then at the time of filing, consult with

2   Ms. Hartzell.  Give her some time to digest, come up with a

3   schedule.  And you can even just email the courtroom deputy

4   your proposed schedule for response and reply.

10:51:06    5       I mean, typically I actually don't frankly do replies

6   on motions in limine.  You know, it's not my practice,

7   Mr. Khan.

8       MR. KHAN:  Understood, Your Honor.  Go ahead.

9       THE COURT:  But if you are going to ask for leave to

10:51:29   10  file a reply, you know, I will allow it in this instance, but

11  just so you know, it's not my practice on motions in limine to

12  give the movant the last word.  It prolongs the process.  It's

13  just a little bit different because we're expediting it and

14  there is room in the schedule for a reply, but it is not my

10:51:47   15  practice.

16      MR. KHAN:  Understood, Your Honor.  We are committed,

17  because we raised it, we are committed to trying to brief it

18  as quickly as possible.  I do think if a reply is needed, we

19  could get one on file within a week of getting their

10:52:00   20  opposition brief, you know, seven to ten days.

21      And maybe, Your Honor, we can take the same approach

22  that you suggested to Ms. Hartzell, which is to say let us

23  take a look at the opposition brief and see whether a reply is

24  needed before we put more paper in front of you.

10:52:16   25      THE COURT:  Okay.  That would be fine.  That would be

10:52:42

1    fine.  So we'll handle it that way.  And obviously I will try
2    to get to it as soon as I can.  So I will not anticipate any
3    motion for excess pages.  At this point you think you can do
4    it in 15, which is great.  And I'll try to rule as promptly as
5    I can.  Okay.

6         And I will probably set a status in October.  I do
7    have a couple trials in October, but I will set a status at
8    some point in October, just to sort of keep us on track.
9    Maybe I'll have a ruling for you.  My goal would be to, but

10:53:06

10    we'll see.

11         Ms. Hartzell, did you have something you wanted to
12    add?

13         MS. HARTZELL:  Yes, I have two quick things.  One, to
14    the extent that plaintiff has any damages issues that we

10:53:16

15    believe should be addressed in a motion in limine, should we
16    raise it at this time?

17         THE COURT:  I think that makes sense.  I think it
18    makes sense for me to look at all the damages issues together,
19    because that's what the focus has been before me for the last

10:53:29

20    six months and what seems to be sort of an obstacle to
21    resolution and an issue that the parties need clarity for for
22    trial.  So by all means, yes, you should raise them by the
23    31st as well.

24         MS. HARTZELL:  Thank you, Your Honor.  And then the

10:53:45

25    second question is more of a housekeeping question.  Our

1    docket reflects a status report of August 18th, which is a

2    carryover from when the trial date was set for November 6th.

3    So I just want to clarify if the Court would like to strike

4    that date or maintain that date.

10:54:01    5    THE COURT:  I would strike that.

6    MS. HARTZELL:  Thank you, Your Honor.

7    THE COURT:  Thank you for bringing that to my

8    attention.

9    MR. TOTTIS:  Excuse me, Your Honor.

10:54:08    10    THE COURT:  Yes, Mr. Tottis, yes.

11    MR. TOTTIS:  Yes.  Just a couple quick questions.

12    Ms. Hartzell just asked one of my questions.  But the other

13    is, I just want to be clear about the meet and confer

14    requirement because the standing order I think says to meet

10:54:21    15    and confer before a motion in limine is filed.  As it's set

16    now, are we filing our motion in limine and then we'll meet

17    and confer with Ms. Hartzell once she sees everything in the

18    papers?

19    THE COURT:  No, no.  Only on deadlines.  That meet

10:54:41    20    and confer requirement in my pretrial standing order is meant

21    to get parties to narrow.  Sometimes there is no objection.  I

22    think there are some objections here.  So I'm not thinking you

23    guys are going to suddenly work out damages.  So that's what

24    that meet and confer requirement is intended to do, because

10:55:02    25    sometimes folks do look at, okay, no objection, and then they

17

1   become agreed motions in limine, which is, you know, less of a

2   burden on the Court.  I don't see that happening here.

3           So the meet and confer I'm talking about is really a

4   how long do you need to brief this.  That's what I'm talking

5   about.  That should happen after this is filed on the 31st.

10:55:17

6           MS. HARTZELL:  I just wanted to confirm that.  Thank

7   you.

8           THE COURT:  Yep, yep.

9           MR. KHAN:  Your Honor, just a word, if you don't

10:55:27

10  mind.  You know, we don't mind sort of meeting and conferring

11  with the plaintiff and Ms. Hartzell in order to see if we can

12  narrow the issues, and I think we can still put our brief in,

13  you know, by the end of the month as you said.  So if the

14  Court is not opposed to it, I would sort of at least take the

15  opportunity to meet with Ms. Hartzell and talk with her.

10:55:42

16          THE COURT:  Yes, absolutely, absolutely.  If you --

17          I think, Ms. Hartzell, you have sort of a little

18  sneak peak through the status report.  I mean, there may be

19  some issues that you agree and some that you vehemently

20  disagree.  By all means, I always encourage communication and

10:55:56

21  collaboration between parties if you feel that you can narrow

22  the issues for the motion and the motions in limine.  By all

23  means, yes.

24          MR. KHAN:  Thank you, Your Honor.

25          THE COURT:  Okay.  Anything else?

10:56:11

18

1        Okay.  Thank you.

2            MS. HARTZELL:  Thank you, Your Honor.

3            MR. TOTTIS:  Thank you very much.

4            THE COURT:  Thanks.

10:56:19    5            MR. KHAN:  Thank you.

6        (Proceedings concluded)

7              C E R T I F I C A T E

8            I, Jennifer S. Costales, do hereby certify that the

9    foregoing is a complete, true, and accurate transcript of the

10   proceedings had in the above-entitled case before the

11   Honorable NANCY L. MALDONADO, one of the judges of said Court,

12   at Chicago, Illinois, on August 10, 2023.

13

14                      */s/ Jennifer Costales, CRR, RMR, CRC*

15                      Official Court Reporter

16                      United States District Court

17                      Northern District of Illinois

18                      Eastern Division

19

20

21

22

23

24

25