# EXHIBIT 15

## to

## Defendants' Motions *in Limine* regarding Damages

*Baxter Int'l, Inc. v. CareFusion Corp. et al.*
N.D. Ill. Case No. 1:15-cv-09986

1          IN THE UNITED STATES DISTRICT COURT
2        FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION
3

BAXTER INTERNATIONAL, INC.      )
4                               )
           Plaintiff,           )
5                               )
     vs.                        )  1:15-cv-09986
6                               )
CAREFUSION CORPORATION, and     )
7  BECTON,DICKINSON AND COMPANY, )
                                )
8          Defendants.          )

9

10        The videotaped deposition of Debra Bello,

11   called by Defendants, for examination, pursuant to

12   the Federal Rules of Civil Procedure of the United

13   States District Courts pertaining to the taking of

14   depositions taken before Stephanie A. Battaglia,

15   CSR and Notary Public in and for the County of

16   DuPage and State of Illinois, at

17   Regus - Lake Forest, 100 South Saunders Road,

18   Suite 150, Lake Forest, Illinois, on

19   August 4, 2023, 10:04 a.m.

20

21   Job No.:  500005

22   Pages:  1 - 76

23

24

1    A   Good morning.                              10:05:36

2    Q   Could you please state your name and       10:05:37

3  address for the record?                          10:05:39

4    A   Debra Bello, 21587 Westfield Court,        10:05:41

5  Deerpark, Illinois.                              10:05:44

6    Q   Ms. Bello, you understand that you are     10:05:45

7  under oath today?                                10:05:48

8    A   Yes.                                       10:05:48

9    Q   Is there any reason that you cannot        10:05:49

10  provide your most complete and accurate testimony 10:05:50

11  today?                                           10:05:52

12    A   No.                                       10:05:53

13    Q   You were previously deposed on March 15,  10:05:53

14  2017 in this litigation, correct?               10:05:58

15    A   Correct.                                  10:05:59

16        (Document marked Exhibit 176 for          10:05:59

17           identification.)                       10:05:59

18  BY MS. GARCIA:                                  10:06:00

19    Q   Now, I would like to mark or hand you what 10:06:00

20  has been marked Exhibit 176, which is a copy of  10:06:04

21  the transcript of your March 15, 2017 deposition. 10:06:09

22        Have you reviewed the transcript of your  10:06:17

23  March 15, 2017 deposition?                      10:06:19

24    A   I have reviewed it.                       10:06:20

| | | |
|---|---|---|
| 1 | Q  When? | 10:06:21 |
| 2 | A  Just the other day. | 10:06:21 |
| 3 | Q  Did you review it as part of the | 10:06:24 |
| 4 | preparation for today's deposition? | 10:06:26 |
| 5 | A  Yes. | 10:06:27 |
| 6 | Q  Did you read the entirety of your | 10:06:28 |
| 7 | transcript? | 10:06:29 |
| 8 | A  Yes. | 10:06:29 |
| 9 | Q  Is there anything in your March 15, 2017 | 10:06:30 |
| 10 | deposition transcript that you wish to clarify or | 10:06:34 |
| 11 | correct? | 10:06:36 |
| 12 | A  No. | 10:06:36 |
| 13 | Q  You testified in 2017, which was about six | 10:06:37 |
| 14 | years ago, right? | 10:06:42 |
| 15 | A  Yes. | 10:06:43 |
| 16 | Q  And that was closer in time to the events | 10:06:43 |
| 17 | that are salient to this litigation than today, | 10:06:45 |
| 18 | correct? | 10:06:48 |
| 19 | A  It is an earlier time period. | 10:06:48 |
| 20 | Q  So fair to say that your memory of the | 10:06:50 |
| 21 | events as they transpired in 2017 might be more | 10:06:52 |
| 22 | accurate than your memory today of those events? | 10:06:56 |
| 23 | MR. COOK:  Object to form. | 10:06:58 |
| 24 | THE WITNESS:  I don't know. | 10:07:00 |

| | | |
|---|---|---|
| 1 | BY MS. GARCIA: | 10:07:00 |
| 2 |    Q  Now, reviewing patents was not one of your | 10:07:02 |
| 3 | job responsibilities at Baxter, right? | 10:07:05 |
| 4 |    A  Correct. | 10:07:06 |
| 5 |    Q  Have you ever reviewed any patents other | 10:07:07 |
| 6 | than those that belong to Baxter? | 10:07:10 |
| 7 |    A  No. | 10:07:12 |
| 8 |    Q  Reviewing patent licenses was not one of | 10:07:13 |
| 9 | your job responsibilities while at Baxter? | 10:07:18 |
| 10 |    A  No. | 10:07:19 |
| 11 |    Q  And you didn't negotiate patent licenses | 10:07:20 |
| 12 | while you were employed at Baxter, correct? | 10:07:22 |
| 13 |    A  No, I did not. | 10:07:24 |
| 14 |    Q  You are not knowledgeable regarding U.S. | 10:07:25 |
| 15 | patent law, right? | 10:07:28 |
| 16 |    A  Correct. | 10:07:28 |
| 17 |    Q  You are not familiar with the | 10:07:29 |
| 18 | Georgia-Pacific factors for computing a reasonable | 10:07:31 |
| 19 | royalty in a patent infringement case? | 10:07:34 |
| 20 |    A  I have heard the term, I don't know what | 10:07:36 |
| 21 | that means. | 10:07:39 |
| 22 |    Q  In what context have you heard -- I am | 10:07:39 |
| 23 | sorry, strike that. | 10:07:42 |
| 24 |        When you say you heard the term, you are | 10:07:43 |

| | |
|---|---|
| 1 | referring to Georgia-Pacific factors? | 10:07:45 |
| 2 | A  Yes. | 10:07:47 |
| 3 | Q  In what context did you hear the term | 10:07:47 |
| 4 | Georgia-Pacific factors? | 10:07:49 |
| 5 | MR. COOK:  I am just going to caution the | 10:07:51 |
| 6 | witness not to disclose the substance of any | 10:07:52 |
| 7 | attorney-client communications. | 10:07:55 |
| 8 | THE WITNESS:  Okay. | 10:07:56 |
| 9 | BY MS. GARCIA: | 10:07:56 |
| 10 | Q  To be clear, I am not interested in the | 10:07:57 |
| 11 | content of your communications with counsel, I am | 10:07:58 |
| 12 | just interested in knowing in what context you | 10:08:00 |
| 13 | heard the term Georgia-Pacific factor. | 10:08:02 |
| 14 | MR. COOK:  You can answer the question to | 10:08:09 |
| 15 | the extent you heard Georgia-Pacific factors | 10:08:11 |
| 16 | outside the context of attorney-client | 10:08:14 |
| 17 | communication. | 10:08:16 |
| 18 | THE WITNESS:  That is correct. | 10:08:17 |
| 19 | BY MS. GARCIA: | 10:08:17 |
| 20 | Q  And just so the record is clear, you heard | 10:08:18 |
| 21 | the Georgia -- the term Georgia-Pacific factors as | 10:08:22 |
| 22 | part of your preparation for this deposition with | 10:08:26 |
| 23 | counsel? | 10:08:28 |
| 24 | A  Yes. | 10:08:29 |

1      Q   You have never performed a Georgia-Pacific      10:08:30
2  analysis to determine damages in a patent              10:08:34
3  infringement case, correct?                            10:08:37
4      A   No.                                             10:08:38
5      Q   Do you understand what the term                10:08:39
6  apportionment means in the term of patent              10:08:40
7  licensing?                                             10:08:43
8      A   Not totally.                                   10:08:44
9      MR. COOK:  Object to form.                         10:08:44
10      THE WITNESS:  No.                                 10:08:45
11  BY MS. GARCIA:                                         10:08:46
12      Q   What is your -- do you have any               10:08:47
13  understanding of the term apportionment within the    10:08:48
14  context of patent licensing?                          10:08:50
15      A   No.                                           10:08:52
16      Q   So you have never performed any               10:08:52
17  apportionment analysis in the context of              10:08:54
18  determining a reasonable royalty in patent            10:08:56
19  infringement cases?                                   10:08:59
20      A   No.                                           10:09:00
21      Q   Ms. Bello, you were one of the named          10:09:00
22  inventors to U.S. Patent No. 7,782,805, correct?      10:09:03
23      A   I don't have the number memorized for the     10:09:07
24  patent.                                               10:09:11

| | | |
|---|---|---|
| 1 | any other Baxter products, is that right? | 10:48:11 |
| 2 | A  I was in medication delivery and there | 10:48:14 |
| 3 | were other pumps with sets and things, but not | 10:48:17 |
| 4 | directly involved in development. | 10:48:22 |
| 5 | Q  The only product for which you were | 10:48:23 |
| 6 | directly involved in development is the Colleague, | 10:48:25 |
| 7 | right? | 10:48:27 |
| 8 | A  Yes. | 10:48:27 |
| 9 | Q  Now, in your role in medical affairs at | 10:48:28 |
| 10 | Baxter you were responsible for supporting other | 10:48:32 |
| 11 | medical pumps in Baxter's portfolio, right? | 10:48:35 |
| 12 | A  Uh-huh. | 10:48:39 |
| 13 | Q  Are you familiar with the Flogard 6201? | 10:48:39 |
| 14 | A  Yes. | 10:48:48 |
| 15 | Q  Do you know whether the Flogard 6201 | 10:48:48 |
| 16 | practices of the '805 patent? | 10:48:51 |
| 17 | A  I don't know. | 10:48:54 |
| 18 | Q  Are you familiar with the Flogard 6301? | 10:48:55 |
| 19 | A  Yes. | 10:48:59 |
| 20 | Q  You don't know whether the Flogard 6301 | 10:48:59 |
| 21 | practices the '805 patent? | 10:49:03 |
| 22 | A  No, I don't know. | 10:49:11 |
| 23 | Q  Are you familiar with the Sigma Spectrum? | 10:49:11 |
| 24 | A  I have heard the name. | 10:49:13 |

| | | |
|---|---|---|
| 1 | Q You don't know whether the Spectrum | 10:49:14 |
| 2 | practices the '805 patent? | 10:49:17 |
| 3 | A No. | 10:49:18 |
| 4 | Q Are you familiar with the AS40 pump? | 10:49:19 |
| 5 | A Yes. | 10:49:22 |
| 6 | Q You don't know -- | 10:49:24 |
| 7 | A I have heard of it, but I don't know. | 10:49:25 |
| 8 | Q You don't know if the AS40 practices the | 10:49:27 |
| 9 | '805? | 10:49:31 |
| 10 | A No. | 10:49:31 |
| 11 | Q Are you familiar with the AS50? | 10:49:31 |
| 12 | A Yes. | 10:49:34 |
| 13 | Q You don't know that it practices the '805 | 10:49:34 |
| 14 | patent either? | 10:49:38 |
| 15 | A No. | 10:49:39 |
| 16 | Q I will just give a longer list of pumps. | 10:49:40 |
| 17 | A Okay. | 10:49:44 |
| 18 | Q Are you familiar with the AP2, Ipump, | 10:49:45 |
| 19 | InfuseOR, Syndeo, Sabratek Home Run, MAXX | 10:49:50 |
| 20 | Ambulatory Infusion Pump, and IV Expres Volumetric | 10:49:56 |
| 21 | Ambulatory Infusion Pumps? | 10:50:02 |
| 22 | A I have heard of them. I don't know that I | 10:50:05 |
| 23 | have heard of IV Expres. | 10:50:06 |
| 24 | Q Of the pumps that you are familiar with | 10:50:08 |

1   you don't know whether they practice of the '805          10:50:10

2   patent, right?                                             10:50:12

3        A  I don't know.                                      10:50:13

4        MR. COOK:  Object to form.                            10:50:14

5   BY MS. GARCIA:                                             10:50:15

6        Q  So part of your role at Baxter was to              10:50:16

7   speak to customers and get feedback for that               10:50:18

8   clinical perspective, right?                               10:50:20

9        A  Yes.                                               10:50:22

10       Q  You spoke were customers to get feedback           10:50:22

11  about the Colleague specifically, right?                   10:50:30

12       A  Yes.                                               10:50:31

13       Q  Now, in your prior deposition you                  10:50:32

14  testified that you could not recall how often you          10:50:34

15  spoke with customers to get their feedback,                10:50:36

16  correct?                                                   10:50:38

17       A  Correct.                                           10:50:38

18       Q  And you testified that you had no                  10:50:39

19  recollection whatsoever how often you met with             10:50:41

20  customers in the mid 1990s, right?                         10:50:44

21       A  I do not know.                                     10:50:46

22       Q  Now, sitting here today can you remember           10:50:48

23  any specific instance of when you spoke with a             10:50:51

24  customer about Baxter's Colleague pump?                    10:50:54

| | | |
|---|---|---|
| 1 | A  No. | 10:50:58 |
| 2 | Q  Can you -- withdrawn. | 10:50:58 |
| 3 | Are you aware of any documents recording | 10:51:18 |
| 4 | customer feedback for the Colleague pump after it | 10:51:20 |
| 5 | launched? | 10:51:26 |
| 6 | A  After launch?  I don't recall. | 10:51:27 |
| 7 | Q  Do you recall whether customers ever had | 10:51:31 |
| 8 | any criticisms of the Colleague pump after it | 10:51:36 |
| 9 | launched? | 10:51:39 |
| 10 | A  I don't recall. | 10:51:39 |
| 11 | Q  Do you recall if customers ever provided | 10:51:44 |
| 12 | feedback about the Colleague's ability to bolt and | 10:51:54 |
| 13 | unbolt the pumps? | 10:51:57 |
| 14 | MR. COOK:  Object to form. | 10:51:58 |
| 15 | THE WITNESS:  I don't recall. | 10:52:00 |
| 16 | BY MS. GARCIA: | 10:52:00 |
| 17 | Q  Do you recall whether customers ever | 10:52:03 |
| 18 | provided feedback about the Colleague's ability to | 10:52:05 |
| 19 | display pictorial graphics depicting user | 10:52:08 |
| 20 | interface information? | 10:52:12 |
| 21 | MR. COOK:  Object to form. | 10:52:15 |
| 22 | THE WITNESS:  I don't recall. | 10:52:15 |
| 23 | BY MS. GARCIA: | 10:52:15 |
| 24 | Q  Do you recall if customers ever provided | 10:52:15 |

| | |
|---|---|
| 1 | feedback about the Colleague screens displaying | 10:52:23 |
| 2 | user interface information? | 10:52:26 |
| 3 | MR. COOK:  Object to form. | 10:52:27 |
| 4 | THE WITNESS:  I don't recall. | 10:52:28 |
| 5 | BY MS. GARCIA: | 10:52:29 |
| 6 | Q  You were the director of medical affairs | 10:52:44 |
| 7 | at Baxter in the 2005 time period, right? | 10:52:46 |
| 8 | A  Yes. | 10:52:50 |
| 9 | Q  Were you responsible for providing | 10:52:52 |
| 10 | clinical support for the Colleague up | 10:52:56 |
| 11 | through 2005? | 10:52:59 |
| 12 | A  I don't remember exactly, but we responded | 10:53:00 |
| 13 | to clinical inquiries as part of the role in | 10:53:06 |
| 14 | medical information. | 10:53:09 |
| 15 | Q  Did customers ever report safety concerns | 10:53:10 |
| 16 | with the Colleague pump? | 10:53:15 |
| 17 | A  That wouldn't be my department. | 10:53:16 |
| 18 | Q  So as the director of medical affairs | 10:53:18 |
| 19 | concerns with the safety of the Colleague pump | 10:53:24 |
| 20 | were not within your purview? | 10:53:26 |
| 21 | A  No. | 10:53:28 |
| 22 | Q  Were you aware in 2005 of Baxter notifying | 10:53:28 |
| 23 | customers that it detected a design issue with the | 10:53:34 |
| 24 | Colleague pump that may have been associated with | 10:53:37 |

| | | |
|---|---|---|
| 1 | a patient death? | 10:53:40 |
| 2 | MR. COOK:  Object to form. | 10:53:41 |
| 3 | THE WITNESS:  I don't recall the exact | 10:53:42 |
| 4 | information. | 10:53:45 |
| 5 | BY MS. GARCIA: | 10:53:45 |
| 6 | Q  Do you have any familiarity with that | 10:53:47 |
| 7 | notice that Baxter provided to its customers in | 10:53:49 |
| 8 | 2005? | 10:53:53 |
| 9 | MR. COOK:  Object to form. | 10:53:54 |
| 10 | THE WITNESS:  Again, that would be from a | 10:53:54 |
| 11 | safety organization, that wouldn't be from mine. | 10:53:56 |
| 12 | BY MS. GARCIA: | 10:53:58 |
| 13 | Q  Were you involved at all in addressing the | 10:53:58 |
| 14 | design issue that was associated with a patient's | 10:54:01 |
| 15 | death? | 10:54:04 |
| 16 | A  No. | 10:54:04 |
| 17 | MR. COOK:  Object to form. | 10:54:05 |
| 18 | BY MS. GARCIA: | 10:54:06 |
| 19 | Q  Now, you previously testified that you did | 10:54:17 |
| 20 | not know all the names of the competing pumps that | 10:54:20 |
| 21 | were in the market at the same time as you were | 10:54:24 |
| 22 | developing the Colleague, right? | 10:54:26 |
| 23 | A  Correct. | 10:54:28 |
| 24 | Q  But as we discussed earlier, you did have | 10:54:28 |

| | | |
|---|---|---|
| 1 | personal clinical experience with IVAC pumps, IMED | 10:54:34 |
| 2 | pumps, and Flogard, right? | 10:54:38 |
| 3 | A  Yes. | 10:54:39 |
| 4 | Q  But you can't recall the specific IVAC or | 10:54:39 |
| 5 | IMED models for which you have clinical | 10:54:43 |
| 6 | experience, right? | 10:54:46 |
| 7 | A  Not anymore. | 10:54:46 |
| 8 | Q  So fair to say in 1998 you personally had | 10:54:48 |
| 9 | not used all of the infusion pumps that were | 10:54:56 |
| 10 | available in the market at that time, correct? | 10:54:58 |
| 11 | A  Correct. | 10:55:00 |
| 12 | Q  And you were not involved in evaluating | 10:55:00 |
| 13 | competitor pumps as part of your role at Baxter, | 10:55:03 |
| 14 | correct? | 10:55:06 |
| 15 | A  No. | 10:55:06 |
| 16 | Q  You didn't receive reports or evaluations | 10:55:07 |
| 17 | about competitor pumps in your role at Baxter, | 10:55:09 |
| 18 | right? | 10:55:12 |
| 19 | A  No. | 10:55:13 |
| 20 | Q  And you don't know who at Baxter was | 10:55:13 |
| 21 | responsible for evaluating competitor pumps at any | 10:55:16 |
| 22 | time, correct? | 10:55:19 |
| 23 | A  No. | 10:55:20 |
| 24 | Q  And you were not focused on reading | 10:55:21 |

1  materials about pumps made by Baxter's          10:55:27

2  competitors, right?                              10:55:30

3     A  No.                                         10:55:30

4     Q  And you weren't curious at all about the    10:55:30

5  competing pumps in the market during your time at 10:55:34

6  Baxter, correct?                                  10:55:36

7        MR. COOK:  Object to form.                  10:55:37

8        THE WITNESS:  No.                           10:55:38

9  BY MS. GARCIA:                                    10:55:38

10    Q  You testified previously that you never     10:55:40

11 spoke with Baxter's customers about competitor    10:55:42

12 pumps, correct?                                   10:55:45

13       MR. COOK:  Object to form.                  10:55:46

14       THE WITNESS:  Correct.                      10:55:47

15 BY MS. GARCIA:                                    10:55:47

16    Q  And in your testimony one of the reasons    10:55:50

17 that you did not discuss pumps -- withdrawn.      10:55:53

18       One of the reasons why you didn't discuss   10:55:58

19 Baxter's competitor pumps with your customers is  10:56:01

20 because you didn't know all the nuances of how    10:56:05

21 those competitor pumps operated, right?           10:56:08

22    A  Correct.                                    10:56:10

23    Q  Now, for example, you never discussed with  10:56:10

24 -- you never discussed with customers how Baxter's 10:56:16

1    Colleague alarm compared to alarms in other          10:56:19

2    products, right?                                      10:56:22

3        A   No.  I wouldn't have a need to.               10:56:24

4        Q   And you worked at Baxter from 1996 to         10:56:26

5    2006?                                                 10:56:31

6        A   2016.                                         10:56:32

7        Q   Apologies, I will reask it.                   10:56:36

8            You worked at Baxter from 1996 to 2016,       10:56:39

9    right?                                                10:56:42

10       A   Correct.                                      10:56:42

11       Q   So in the 20 years that you were at Baxter    10:56:42

12   it's fair to say that you have no knowledge of the    10:56:48

13   other infusion pumps that were in the marketplace     10:56:53

14   during that time, correct?                            10:56:56

15           MR. COOK:  Object to form.                    10:56:56

16           THE WITNESS:  I know names.                   10:56:57

17   BY MS. GARCIA:                                         10:56:58

18       Q   Your knowledge of competitor pumps during     10:56:59

19   the 20 years you were at Baxter is limited to the     10:57:01

20   names of those competitor pumps, right?               10:57:04

21           MR. COOK:  Object to form.                    10:57:06

22           THE WITNESS:  Correct, sorry.                 10:57:06

23   BY MS. GARCIA:                                         10:57:08

24       Q   You have heard of the Alaris Medley           10:57:08

| | | |
|---|---|---|
| 1 | Infusion Pump, right? | 10:57:11 |
| 2 | A  Yes. | 10:57:12 |
| 3 | Q  And, actually, we have been going about an | 10:57:13 |
| 4 | hour, I am transitioning into a different module, | 10:57:15 |
| 5 | if you want to take a break we can do so. | 10:57:18 |
| 6 | A  I am okay. | 10:57:20 |
| 7 | Q  Okay. | 10:57:21 |
| 8 | You have seen the Alaris Medley at trade | 10:57:27 |
| 9 | shows, correct? | 10:57:30 |
| 10 | A  Yes. | 10:57:31 |
| 11 | Q  At your prior deposition you testified | 10:57:31 |
| 12 | that you had never operated an Alaris Medley, | 10:57:33 |
| 13 | right? | 10:57:36 |
| 14 | A  That is correct. | 10:57:36 |
| 15 | Q  Have you operated an Alaris Medley since | 10:57:37 |
| 16 | March, 2017? | 10:57:39 |
| 17 | A  No. | 10:57:40 |
| 18 | Q  In your prior deposition you also | 10:57:40 |
| 19 | testified that you had no understanding of how an | 10:57:47 |
| 20 | Alaris Medley operates, correct? | 10:57:49 |
| 21 | A  Correct. | 10:57:51 |
| 22 | Q  Have you developed any understanding of | 10:57:52 |
| 23 | how the Alaris Medley operates since March, 2017? | 10:57:54 |
| 24 | A  No. | 10:57:58 |

| | | |
|---|---|---|
| 1 | Q  Do you know anything about Baxter's | 10:57:58 |
| 2 | infringement allegations in this case? | 10:58:02 |
| 3 | MR. COOK:  Object to form. | 10:58:04 |
| 4 | THE WITNESS:  No. | 10:58:05 |
| 5 | BY MS. GARCIA: | 10:58:05 |
| 6 | Q  Do you know what Baxter is accusing of | 10:58:07 |
| 7 | infringing the '805 patent? | 10:58:09 |
| 8 | A  No. | 10:58:11 |
| 9 | Q  Now, none of your roles at Baxter required | 10:58:11 |
| 10 | you to value patents, right? | 10:58:16 |
| 11 | A  Correct. | 10:58:18 |
| 12 | Q  You have never performed a valuation of | 10:58:18 |
| 13 | any of Baxter's U.S. patents, correct? | 10:58:21 |
| 14 | A  Correct. | 10:58:25 |
| 15 | Q  You are not aware of every patent in | 10:58:25 |
| 16 | Baxter's patent portfolio, right? | 10:58:27 |
| 17 | A  I am not aware. | 10:58:29 |
| 18 | Q  None of your roles at Baxter ever required | 10:58:30 |
| 19 | you to negotiate patent licenses, right? | 10:58:33 |
| 20 | A  Correct. | 10:58:35 |
| 21 | Q  Do you have any understanding of whether | 10:58:36 |
| 22 | Baxter has any policies or practices with respect | 10:58:41 |
| 23 | to patent licensing? | 10:58:44 |
| 24 | A  I don't know. | 10:58:46 |

| | | |
|---|---|---|
| 1 | Q   In 2001 were you aware of Baxter having | 10:58:47 |
| 2 | any written policies or practices regarding patent | 10:58:57 |
| 3 | licensing? | 10:59:00 |
| 4 | A   I don't know. | 10:59:00 |
| 5 | Q   Between 2001 and 2016 did you know whether | 10:59:01 |
| 6 | Baxter implemented any written policies or | 10:59:07 |
| 7 | practices regarding patent licensing? | 10:59:09 |
| 8 | A   I don't know. | 10:59:11 |
| 9 | Q   Do you have any knowledge of how Baxter | 10:59:11 |
| 10 | negotiated licenses for patents in 2001? | 10:59:16 |
| 11 | A   No. | 10:59:19 |
| 12 | Q   You have never determined a patent royalty | 10:59:19 |
| 13 | rate, correct? | 10:59:25 |
| 14 | A   Correct. | 10:59:26 |
| 15 | Q   You have never justified a patent royalty | 10:59:26 |
| 16 | rate, correct? | 10:59:32 |
| 17 | A   Correct. | 10:59:32 |
| 18 | Q   You have never valued a patented | 10:59:33 |
| 19 | technology in comparison to non-infringing | 10:59:35 |
| 20 | alternatives, correct? | 10:59:37 |
| 21 | A   Correct. | 10:59:38 |
| 22 | MR. COOK:  Object to form. | 10:59:38 |
| 23 | BY MS. GARCIA: | 10:59:39 |
| 24 | Q   You have never testified regarding damages | 10:59:40 |

| | | |
|---|---|---|
| 1 | from patent infringement, correct? | 10:59:43 |
| 2 | MR. COOK:  Object to form. | 10:59:47 |
| 3 | THE WITNESS:  Correct. | 10:59:47 |
| 4 | BY MS. GARCIA: | 10:59:48 |
| 5 | Q  You have never evaluated the effect of a | 10:59:51 |
| 6 | convoyed sale on the determination of a royalty | 10:59:55 |
| 7 | rate, correct? | 10:59:57 |
| 8 | A  Correct. | 10:59:57 |
| 9 | Q  You don't have any knowledge about any | 10:59:58 |
| 10 | licenses between Massachusetts General Hospital | 11:00:01 |
| 11 | and SIGMA International, right -- | 11:00:04 |
| 12 | MS. REPORTER:  Massachusetts General | 11:00:04 |
| 13 | Hospital and? | 11:00:04 |
| 14 | MS. GARCIA:  SIGMA International.  I can | 11:00:11 |
| 15 | reask the question. | 11:00:12 |
| 16 | BY MS. GARCIA: | 11:00:13 |
| 17 | Q  You do not have any knowledge about any | 11:00:13 |
| 18 | licenses between Massachusetts General Hospital | 11:00:16 |
| 19 | and SIGMA International, right? | 11:00:19 |
| 20 | A  Correct. | 11:00:21 |
| 21 | Q  You do not have any knowledge about any | 11:00:22 |
| 22 | agreements between SIGMA and Care Everywhere, | 11:00:24 |
| 23 | correct? | 11:00:27 |
| 24 | A  Correct. | 11:00:27 |

| | |
|---|---|
| 1 | Q  You do not have any knowledge about any | 11:00:28 |
| 2 | licenses between Baxter and Cerner Corporation, | 11:00:32 |
| 3 | correct? | 11:00:35 |
| 4 | A  Correct. | 11:00:36 |
| 5 | Q  You do not have any knowledge about a | 11:00:36 |
| 6 | patent license between Alaris Medical Systems and | 11:00:39 |
| 7 | Caesarea Medical Electronics Medical, Ltd., | 11:00:44 |
| 8 | correct? | 11:00:47 |
| 9 | A  Correct. | 11:00:47 |
| 10 | Q  Have you been deposed since March, 20 -- | 11:00:47 |
| 11 | March 15, 2017? | 11:00:56 |
| 12 | A  No. | 11:00:57 |
| 13 | Q  Have you ever testified in court before? | 11:00:57 |
| 14 | A  No. | 11:01:00 |
| 15 | Q  Do you intend to testify to testify in | 11:01:02 |
| 16 | this litigation at trial? | 11:01:08 |
| 17 | MR. COOK:  Object to form. | 11:01:10 |
| 18 | THE WITNESS:  I don't know. | 11:01:11 |
| 19 | BY MS. GARCIA: | 11:01:12 |
| 20 | Q  What did you do to prepare for this | 11:01:15 |
| 21 | deposition? | 11:01:17 |
| 22 | A  As discussed before, I briefly looked at | 11:01:17 |
| 23 | the patent and my deposition. | 11:01:22 |
| 24 | Q  Did you do anything else to prepare for | 11:01:24 |

1   the deposition?                                    11:01:26

2       A   No.                                         11:01:27

3       Q   Did you communicate with Baxter's in-house  11:01:28

4   lawyers to prepare for today?                      11:01:31

5       A   Yes.                                        11:01:32

6       Q   When?                                       11:01:34

7       A   It was two days ago, I believe, which      11:01:35

8   would have been August 2.                          11:01:40

9       Q   How long did you meet with Baxter's        11:01:45

10  in-house lawyers to prepare for this deposition?   11:01:48

11      A   About an hour.                              11:01:50

12      Q   Who did you meet with from Baxter's        11:01:52

13  in-house legal team?                               11:01:54

14      A   In-house, Austin Foley.                     11:01:55

15      Q   Did you meet with Baxter's outside counsel  11:02:02

16  to prepare for today's deposition?                 11:02:05

17      A   They were present.                          11:02:07

18      Q   And who from Baxter's outside counsel was   11:02:08

19  present in your preparation?                       11:02:11

20      A   I didn't write down all the names.  John    11:02:12

21  was there, but I don't know who else.              11:02:16

22      Q   Did you communicate with anyone other than  11:02:18

23  attorneys to prepare for your deposition today?    11:02:21

24      A   No.                                         11:02:23

1    Q   And your communication with Baxter's          11:02:23
2    in-house and outside counsel was limited to one    11:02:28
3    hour, correct?                                      11:02:30
4    A   Yes.                                            11:02:31
5    Q   Did you review any documents to prepare        11:02:31
6    for this deposition other than the patent and your 11:02:35
7    transcript?                                         11:02:37
8    A   No.                                             11:02:37
9    Q   Are you being compensated by Baxter for        11:02:38
10   your time spent in this deposition?                 11:02:44
11   A   No.                                             11:02:45
12   Q   Are you being compensated by Baxter for        11:02:45
13   your time spent preparing for this deposition?      11:02:49
14   A   No.                                             11:02:51
15   Q   Are you being compensated by Baxter for        11:02:52
16   any time spent consulting?                          11:02:54
17   A   No.                                             11:02:56
18   Q   What is the total amount of time that you      11:02:56
19   have spent preparing for today's deposition?        11:03:06
20   A   I can give an estimate, maybe an hour and      11:03:08
21   a half.                                             11:03:27
22       MS. GARCIA:  Why don't we take a               11:03:28
23   five-minute break.                                  11:03:29
24       THE WITNESS:  Okay.                            11:03:30

| | |
|---|---|
| 1 | some of the work done in developing the '805 | 11:20:40 |
| 2 | patent? | 11:20:42 |
| 3 | MR. COOK:  Object to form. | 11:20:43 |
| 4 | THE WITNESS:  I don't know. | 11:20:44 |
| 5 | MS. GARCIA:  I don't have any further | 11:20:46 |
| 6 | questions. | 11:20:48 |
| 7 | THE WITNESS:  Okay. | 11:20:48 |
| 8 | MR. COOK:  Dr. Bello, I just have a few | 11:20:49 |
| 9 | follow-up questions. | 11:20:52 |
| 10 | EXAMINATION | 11:20:52 |
| 11 | BY MR. COOK: | 11:20:52 |
| 12 | Q  First of all, there has been a lot of talk | 11:20:53 |
| 13 | this morning about the terms clinical and | 11:20:56 |
| 14 | clinician.  Can you just explain to the jury what | 11:20:58 |
| 15 | your understanding of each of those terms are? | 11:21:02 |
| 16 | A  When I use the word clinical it really | 11:21:04 |
| 17 | means in the setting in which pumps were used, it | 11:21:07 |
| 18 | meant in -- whether it be in the hospital setting, | 11:21:12 |
| 19 | in an outpatient setting, just in general where | 11:21:16 |
| 20 | pumps would be used in the clinical setting. | 11:21:20 |
| 21 | Q  And what is your understanding of the term | 11:21:22 |
| 22 | clinician? | 11:21:26 |
| 23 | A  Clinician, I used it in terms of, again, | 11:21:27 |
| 24 | healthcare professional.  It could be anyone that | 11:21:32 |

| | | |
|---|---|---|
| 1 | in context of this deposition using a pump, it | 11:21:37 |
| 2 | could be a physician, it could be a nurse, it | 11:21:40 |
| 3 | could be an LPN. | 11:21:44 |
| 4 | Q  And you testified that you have had | 11:21:46 |
| 5 | conversations with clinicians about the Colleague | 11:21:50 |
| 6 | pump, is that correct? | 11:21:53 |
| 7 | A  Correct. | 11:21:53 |
| 8 | Q  During those conversations do you recall | 11:21:54 |
| 9 | any clinicians identifying features of the | 11:21:57 |
| 10 | Colleague pump that they liked? | 11:22:00 |
| 11 | A  Yes. | 11:22:02 |
| 12 | Q  And what features do you recall them | 11:22:02 |
| 13 | identifying? | 11:22:05 |
| 14 | MS. GARCIA:  Objection, form. | 11:22:05 |
| 15 | THE WITNESS:  They liked the pump | 11:22:06 |
| 16 | personalities.  They liked the information that | 11:22:09 |
| 17 | was displayed on the screen in regards to the | 11:22:12 |
| 18 | volume history, the infusions themselves, the | 11:22:16 |
| 19 | selection of infusion parameters, being able to | 11:22:21 |
| 20 | set the air bubble size depending on what unit you | 11:22:27 |
| 21 | were in, some of those types of things. | 11:22:30 |
| 22 | BY MR. COOK: | 11:22:33 |
| 23 | Q  And you used the term personalities, what | 11:22:34 |
| 24 | did you mean by that? | 11:22:37 |

| | |
|---|---|
| 1 | A  That you could set up certain | 11:22:38 |
| 2 | configurations for the unit of the hospital you | 11:22:40 |
| 3 | were in.  For example, if you were in a neonatal | 11:22:45 |
| 4 | intensive care unit you could set the volume to be | 11:22:49 |
| 5 | infused at a smaller volume to match the patients | 11:22:52 |
| 6 | that were in that type of setting. | 11:22:56 |
| 7 | Q  And do you recall during your | 11:22:58 |
| 8 | conversations with clinicians any identifications | 11:23:04 |
| 9 | of which of the features of the Colleague pump the | 11:23:07 |
| 10 | clinicians viewed to be more significant than | 11:23:10 |
| 11 | others? | 11:23:13 |
| 12 | MS. GARCIA:  Objection, form. | 11:23:13 |
| 13 | THE WITNESS:  I don't recall them saying | 11:23:14 |
| 14 | which were most significant. | 11:23:23 |
| 15 | BY MR. COOK: | 11:23:26 |
| 16 | Q  Do you recall any of the clinicians that | 11:23:26 |
| 17 | you talked to about the Colleague pump identifying | 11:23:28 |
| 18 | certain features as the reason why they purchased | 11:23:33 |
| 19 | the Colleague pump? | 11:23:35 |
| 20 | MS. GARCIA:  Objection, form. | 11:23:37 |
| 21 | THE WITNESS:  Not in regards to why they | 11:23:38 |
| 22 | purchased. | 11:23:43 |
| 23 | BY MR. COOK: | 11:23:43 |
| 24 | Q  Earlier you were asked questions about the | 11:24:01 |

| | | |
|---|---|---|
| 1 | Court's claim construction decision, do you recall | 11:24:04 |
| 2 | that? | 11:24:06 |
| 3 | A  Yes. | 11:24:06 |
| 4 | Q  I am correct that is not something you | 11:24:07 |
| 5 | have reviewed? | 11:24:08 |
| 6 | A  Correct. | 11:24:09 |
| 7 | Q  And you do not have any understanding as | 11:24:09 |
| 8 | to how the Court has construed certain elements of | 11:24:12 |
| 9 | the claims of the '805 patent? | 11:24:16 |
| 10 | A  I don't have that knowledge. | 11:24:18 |
| 11 | Q  So earlier today when you were asked | 11:24:19 |
| 12 | questions about claim 1 of the '805 patent and | 11:24:21 |
| 13 | certain elements you were not considering how the | 11:24:26 |
| 14 | Court may have construed those elements in | 11:24:28 |
| 15 | answering your questions, have you? | 11:24:31 |
| 16 | A  No.  I am coming truly from a user | 11:24:32 |
| 17 | clinical background. | 11:24:36 |
| 18 | MR. COOK:  I don't have any additional | 11:24:42 |
| 19 | questions at this time, thank you. | 11:24:44 |
| 20 | FURTHER EXAMINATION | 11:24:44 |
| 21 | BY MS. GARCIA: | 11:24:44 |
| 22 | Q  Dr. Bello, Mr. Cook just asked you | 11:24:46 |
| 23 | questions about your conversations with clinicians | 11:24:49 |
| 24 | about what they purportedly liked about the | 11:24:52 |

| | |
|---|---|
| 1 | Colleague pump, correct? | 11:24:54 |
| 2 | A  Uh-huh, yes. | 11:24:55 |
| 3 | Q  Can you identify one specific conversation | 11:24:56 |
| 4 | with a specific customer about the Colleague pump? | 11:24:59 |
| 5 | A  I can't do a specific customer or | 11:25:05 |
| 6 | conversation. | 11:25:08 |
| 7 | I recall in general they were pleased with | 11:25:09 |
| 8 | the information that the pump shared with them in | 11:25:13 |
| 9 | how they could potentially reduce medication | 11:25:20 |
| 10 | errors by knowing what the pump was infusing, how | 11:25:23 |
| 11 | it was infusing, those types of things, but a | 11:25:27 |
| 12 | specific conversation, no. | 11:25:30 |
| 13 | Q  And can you identify any documents | 11:25:31 |
| 14 | memorializing your conversations with customers | 11:25:34 |
| 15 | about Baxter's Colleague pump? | 11:25:36 |
| 16 | A  I cannot. | 11:25:38 |
| 17 | Q  Mr. Cook also asked you some questions | 11:25:40 |
| 18 | about personalities, do you recall that? | 11:25:43 |
| 19 | A  Yes. | 11:25:45 |
| 20 | Q  Would you please turn to Exhibit 1, which | 11:25:45 |
| 21 | is the '805 patent, column 20 of claim 1. | 11:25:48 |
| 22 | The word personality doesn't appear | 11:26:04 |
| 23 | anywhere in claim 1, correct? | 11:26:06 |
| 24 | A  I use that interchangeably with | 11:26:07 |

1    configuration because that is one portion of          11:26:10

2    configuration is to be able to configure a pump        11:26:14

3    personality.                                           11:26:17

4        Q  The word personality does not appear           11:26:18

5    anywhere in claim 1 of the '805 patent, correct?       11:26:20

6        A  Correct.                                        11:26:23

7        Q  The word personalities does not appear          11:26:24

8    anywhere in Claim 1 of the '805 patent, correct?       11:26:26

9        A  I haven't checked every word, but it is --      11:26:29

10       Q  Please take your time.                          11:26:34

11       A  It is a configuration parameter.                11:26:35

12       Q  My question is the word personality --          11:26:37

13       A  It does, on Page 29 it says personality in      11:26:39

14   the picture on the graphical user interface, and       11:26:43

15   that's where personality appears.                      11:26:47

16       Q  Now, I am directing you to Claim 1 of the       11:26:48

17   '805 patent in column 20 --                            11:26:51

18       A  But you asked me anywhere in the patent         11:26:53

19   that the word personality was used and it is.          11:26:55

20       Q  My question is -- we can have the court         11:26:57

21   reporter read it back if you like.                     11:27:01

22       MS. GARCIA:  Please, go ahead.                     11:27:04

23       (Record read as requested.)                        11:27:21

24       THE WITNESS:  It's not in claim 1, but I           11:27:21

1   haven't looked at the other claims in detail to        11:27:23
2   see if it is there.                                    11:27:26
3         MS. GARCIA:  Nothing further.                    11:27:27
4         MR. COOK:  I don't have anything else.           11:27:29
5   Thank you very much.                                   11:27:30
6         THE VIDEOGRAPHER:  This marks the end of         11:27:32
7   today's deposition, the time is 11:27 a.m., we are     11:27:34
8   now off the record.                                    11:27:38
9         (End of video proceedings.)                      11:27:46
10        MS. REPORTER:  Do you need this on an            11:27:46
11  expedited basis?                                       11:27:47
12        MS. GARCIA:  No, we don't need it                11:28:01
13  expedited.                                             11:28:03
14        THE VIDEOGRAPHER:  Anybody need a copy of        11:28:04
15  the video?                                             11:28:05
16        MR. COOK:  I don't think at this point.          11:28:06
17        THE VIDEOGRAPHER:  Did you need a copy?          11:28:08
18        MS. GARCIA:  Eventually on the standard          11:28:09
19  order.                                                 11:28:11
20        THE VIDEOGRAPHER:  I will put standard.          11:28:11
21        MS. REPORTER:  Do you need a rough draft?        11:30:09
22        MR. COOK:  Yes, why not.                         11:30:11
23        (WHICH WERE ALL OF THE PROCEEDINGS HAD OR
24          TAKEN PLACE IN THE ABOVE-ENTITLED MATTER.)

1   STATE OF ILLINOIS)
                    ) SS.
2   COUNTY OF DUPAGE )

3           I, STEPHANIE A. BATTAGLIA, CSR and

4   Notary Public in and for the County of DuPage and

5   State of Illinois, do hereby certify that on

6   August 4, 2023, at 10:04 a.m., at Regus - Lake

7   Forest, 100 South Saunders Road, Suite 150, Lake

8   Forest, Illinois, the deponent DEBRA BELLO

9   personally appeared before me.

10          I further certify that the said DEBRA

11  BELLO was by me first duly sworn to testify and

12  that the foregoing is a true record of the

13  testimony given by the witness.

14          I further certify that the deposition was

15  terminated at 11:27 a.m.

16          I further certify that I am not counsel

17  for nor related to any of the parties herein, nor

18  am I interested in the outcome hereof.

19          In witness whereof, I have hereunto set

20  my hand and seal of office this 17th of August,

21  2023.

22

23  _____
    Notary Public
24  CSR No. 084-003337 - Expiration Date:  5/31/2025