IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAXTER INTERNATIONAL, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAREFUSION CORPORATION, and ) <br> BECTON, DICKINSON AND COMPANY, ) <br> ) <br> Defendants. ) <br> ) | **Case No.: 1:15-cv-09986** <br><br> **Judge Nancy L. Maldonado** |

**PLAINTIFF'S MOTIONS *IN LIMINE*
REGARDING DAMAGES-RELATED ISSUES**

# TABLE OF CONTENTS

                                                         **Page**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

I.     Argument ................................................................................................................ 1

        A.     MIL #1 - Defendants should be precluded from offering any evidence or argument that all elements of the claimed invention were known in the prior art or that there are no non-obvious differences between the '805 patent and the prior art. ............................................................... 1

        B.     MIL #2 - Defendants should be precluded from any reference to their own Eggers Patent or any other patent alleged to cover features of the Defendants' accused infusion pump. ................................................... 3

        C.     MIL #3 - Defendants should be precluded from reliance on any document not produced in discovery, including the late-produced license agreements, as well as associated testimony ............................................ 8

        D.     MIL #4 - Defendants should be precluded from presenting any testimony or argument regarding recalls of Plaintiff's Colleague Pump............. 11

II.    Conclusion .......................................................................................................... 14

CERTIFICATE OF SERVICE ..................................................................................... 15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*,
    750 F.2d 1569 (Fed. Cir. 1984) .......................................................................................... 4

*Bio-Technology General Corp. v. Genentech, Inc.*,
    80 F.3d 1553 (Fed. Cir. 1996) ............................................................................................. 3

*Bos. Sci. Corp. v. Cook Med. LLC*,
    No. 1:17-cv-03448-JRS-MJD, 2023 U.S. Dist. LEXIS 92986 (S.D. Ind. May
    27, 2023) .............................................................................................................................. 6

*Cameco Indus., Inc. v. Louisiana Cane Mfg. Inc.*,
    No. 92-3158, 1995 U.S. Dist. LEXIS 11294 (D. La. July 28, 1995) ................................. 4

*CIVIX-DDI, LLC v. Hotels.com, L.P.*,
    No. 05 C 6869, 2012 WL 6591684 (N.D. Ill. Dec. 18, 2012) ........................................ 1, 3

*Cordis Corp. v. Medtronic Vascular, Inc.*,
    Nos. 97-550-SLR, 97-700-SLR, 98-019-SLR, 2005 U.S. Dist. LEXIS 6583
    (D. Del. Feb. 28, 2005) ....................................................................................................... 6

*David v. Caterpillar, Inc.*,
    324 F.3d 851 (7th Cir. 2003) ............................................................................................ 10

*Dexcowin Global, Inc. v. Aribex, Inc.*,
    No. CV 16–143–GW(AGRx), 2017 WL 3478492 (C.D. Cal. June 29, 2017) ............... 13

*EZ Dock, Inc. v. Schafer Sys.*,
    No. 98-2364, 2003 U.S. Dist. LEXIS 3634 (D. Minn. Mar. 8, 2003) .............................. 5

*Fiskars, Inc. v. Hunt Mfg. Co.*,
    221 F.3d 1318 (Fed. Cir. 2000) .......................................................................................... 4

*Freeman v. Ocwen Loan Servicing, LLC*,
    No. 1:18CV03844TWPDLP, 2023 WL 2613641 (S.D. Ind. Mar. 23, 2023) ................. 11

*Glaros v. H.H. Robertson Co.*,
    797 F.2d 1564 (Fed. Cir. 1986) .......................................................................................... 5

*ICU Medical, Inc. v. RyMed Technologies, Inc.*,
    752 F.Supp.2d 486 (D. Del. 2010) ............................................................................. 12, 13

# **TABLE OF AUTHORITIES**
(*Continued*)

**Page(s)**

*Kearns v. Chrysler Corp.*,
    32 F.3d 1541 (Fed. Cir. 1994) .................................................................................................. 5

*Malibu Boats v. Skier's Choice*,
    No. 3:18-CV-00015, 2021 U.S. Dist. LEXIS 89957 (E.D. Tenn. May 6, 2021) .............. 7

*Oslon v. Ford Motor Comp.*,
    410 F.Supp. 2d 869 (D.N.Dakota 2006) ........................................................................ 12

*Physicians Healthsource, Inc. v. Alma Lasers, Inc.*,
    No. 12C 4978, 2014 WL 6561781 (N.D. Ill. Nov. 20, 2014) ......................................... 10

*Rao v. Gondi*,
    No. 14 c 66, 2017 WL 4278542 (N.D. Ill. June 26, 2017) .............................................. 8

*Sky Zone LLC v. Flip N Out, LLC*,
    No. 2:10cv-567 JCM, 2015 WL 4548694 (D. Nev. July 28, 2015) .............................. 1, 3

*Sonos, Inc. v. D&M Holdings, Inc.*,
    No. 14-1330-WCB, 2017 U.S. Dist. LEXIS 193078 (D. Del. Nov 21, 2017) .................. 5

*United States v. Bainbridge Management, L.P.*,
    2002 WL 31006135 (N.D. Ill. 2002) ............................................................................. 12

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
    944 F.2d 870 (Fed. Cir. 1991) ........................................................................................ 4

*Zimmer Surgical v. Stryker Corp.*,
    No. 16-679-RGA, 2019 U.S. Dist. LEXIS 232083 (D. Del. Mar. 13, 2019) .................. 8

**Rules**

Fed. R. Civ. P. 26(a)(1)(A) ................................................................................................. 8

Fed. R. Civ. P. 26(e) ......................................................................................................... 10

Fed. R. Civ. P. 37(c) ..................................................................................................... 8, 10

FRE 403 .......................................................................................................................... 1, 7

Pursuant to the Court's order directing the parties to address damages-related motions *in limine* (Dkt. 544), Plaintiff asks that the Court preclude Defendants from (1) asserting that the '805 patent, its technology, the invention claimed therein, or its asserted claims are a combination of known elements; (2) presenting evidence or argument concerning their own patent or any other patent alleged to cover features of the accused infusion pump; (3) relying on documents not produced in fact discovery, or related testimony; and (4) presenting evidence or argument concerning any recall of Plaintiff's Colleague pump.

I. **Argument**

　　A. **MIL #1 - Defendants should be precluded from offering any evidence or argument that all elements of the claimed invention were known in the prior art or that there are no non-obvious differences between the '805 patent and the prior art.**

A motion *in limine* is appropriate to preclude a party from relitigating an issue already decided by the Court. *See, e.g., CIVIX-DDI, LLC v. Hotels.com, L.P.*, No. 05 C 6869, 2012 WL 6591684, *2-3 (N.D. Ill. Dec. 18, 2012) (granting motions *in limine* to preclude any argument that would relitigate issues decided on summary judgment); *Sky Zone LLC v. Flip N Out, LLC*, No. 2:10cv-567 JCM, 2015 WL 4548694, *2-3 (D. Nev. July 28, 2015) (granting motion *in limine* to preclude defendant from relitigating prior issues decided on summary judgment). Further, such statements that are contrary to the Court's ruling are also likely to cause unfair prejudice, confuse the issues, and mislead the jury. *See* FRE 403.

In this case, at least Defendants' damages expert (Phillip Green) intends to testify that the '805 patent is limited to combinations of already known elements as a way to disparage the advantages and value of Plaintiff's invention. In doing so Mr. Green has indicated that he intends to rely on the opinion of Defendants' technical expert (Gregg Kirkpatrick) that the '805 patent is

1

invalid based on the prior art.[1] Yet, on February 14, 2022, the Court granted Plaintiff's motion for summary judgment that the '805 patent is not invalid as anticipated or obvious because neither Mr. Kirkpatrick nor Defendants were able to identify the '805 Patent's means-plus-function limitations in the prior art. (*See* Dkt. 432 at pp. 1-5; 21-23.) The Court found that Defendants presented "no factual basis from which a reasonable trier of fact could find clear and convincing evidence of anticipation or obviousness." (*Id.* at 23.) Indeed, in their Joint Status Report dated August 22, 2022, the parties expressly told the Court that the ***only*** remaining triable issues are infringement, damages, Defendants' waiver and equitable estoppel defenses, and Defendants' purported written description defense.[2] (Dkt. 453, p. 1.) The parties further told the Court that they "agree that no other claims or defenses not specifically addressed in this Joint Status Report remain for trial." (*Id.*)

Thus, any testimony or argument that would suggest to the jury that the '805 Patent is just a combination of known elements would directly contradict the Court's earlier Order in which it determined as a matter of law that Defendants do ***not*** have sufficient evidence to make such a showing. Defendants and their witnesses should not be allowed to relitigate that issue dressed up and disguised as a damages issue, especially given the risk of juror confusion about the validity of

---

[1] Exemplary "known elements" passages in Mr. Green's report (Exhibit A) include, but are not limited to, those that appear on pages 5, 8, 33-36, 38, 45, 54, 57 and 60. Mr. Green explicitly relies on Mr. Kirkpatrick for his "understanding" at least on pages 8 and 34-36. Of particular note in view of Plaintiff's MIL #2 below is that on page 35 of his report Mr. Green, relying on Mr. Kirkpatrick, indicated that he intends to testify that "there are no non-obvious differences between" Plaintiff's '805 Patent and Defendant's own patent, U.S. Patent No. 5,713,856" (the "Eggers Patent" attached as Exhibit B). Although Defendants chose to file an early *Daubert* motion directed to Baxter's damages expert, Mr. Green's expert report has not yet been subject to motion practice and Baxter reserves the right to do so in accordance with the Court's standing order deadlines for such motions, including regarding the lack of evidentiary support for these assertions by Mr. Green.

[2] For the reasons stated in the Joint Status Report (Dkt. 453, p. 10), Plaintiff disputes that written description remains a viable defense and intends to file a motion *in limine* on this non-damages issue at the appropriate time under the Court's schedule.

2

the '805 Patent. *See CIVIX-DDI*, 2012 WL 6591684 at *2-3; *Sky Zone*, 2015 WL 4548694 at *2-3. Thus, any evidence or arguments that the '805 Patent is the combination of known elements should be excluded as irrelevant and likely to cause under prejudice under FRE 402 and 403.

> **B.  MIL #2 - Defendants should be precluded from any reference to their own Eggers Patent or any other patent alleged to cover features of the Defendants' accused infusion pump.**

As explained above, in light of the Court's opinion granting Summary Judgment to Plaintiff, Defendants do not have a prior art invalidity defense (*i.e.*, anticipation or obviousness). (Dkt. 432, pp. 21-23.) Despite this, and based on how they conducted the recent supplemental damages depositions, it is clear Defendants intend to introduce their Eggers Patent and related evidence at trial. This includes Defendants' assertion that the Defendants' Eggers Patent (and perhaps others) covers the Defendants' accused infusion pump.[3]

Regardless of how they may attempt to rationalize this tactic in response to this motion, the real reason Defendants want at least the Eggers Patent in front of the jury is that the jury may get confused and incorrectly think that because the Patent Office granted the Eggers Patent it must mean that Defendants' accused infusion pump is different from Plaintiff's '805 Patent and therefore cannot infringe that patent.

The Federal Circuit recognizes this improper tactic and rejected it: "[T]he existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the right to exclude others and confers no rights on its holder to make, use, or sell." *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) (quoting *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870,

---

[3] Other prior art patents used for this purpose as exhibits at the recent damages depositions include at least U.S. Patent No. 4,756,706 (the "Kerns Patent") (Lynn Dep. Ex. 170) and U.S. Patent No. 5,814,015 (the "Gargano Patent") (Lynn Dep. Ex. 171).

3

879 n.4 (Fed. Cir. 1991)). Thus, while the Eggers Patent may give Defendants the right to exclude, the Eggers Patent does not grant Defendants the right to infringe the '805 Patent. *See id.; see also Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000) ("It is well established that separate patentability does not avoid [infringement] as a matter of law."); *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1580-81 (Fed. Cir. 1984) (agreeing "where defendant has appropriated the material features of the patent in suit, infringement will be found even when those features have been supplemented and modified to such an extent that the defendant may be entitled to a patent for the improvement" and finding persuasive "that a right to make is created by the patent grant is obviously inconsistent with the established distinctions between generic and specific patents, and with the well-known fact that a very considerable portion of the patents granted are in a field covered by a former relatively generic or basic patent, are tributary to such earlier patent, and cannot be practiced unless by license thereunder.") (cleaned up).

Where, as here, anticipation and obviousness are not being tried, courts typically exclude evidence about other patents, particularly, patents owned by the accused infringer under Rules 401, 402 and 403 of the Federal Rules of Evidence because such evidence would be unfairly prejudicial and likely to create confusion in the minds of a lay jury. In doing so, courts recognized "this evidence is likely to give the jury the false impression that a patent on the accused [product] means that it is substantially different from the [product] claimed in plaintiff's patent[s]." *See Cameco Indus., Inc. v. Louisiana Cane Mfg. Inc.*, No. 92-3158, 1995 U.S. Dist. LEXIS 11294, at *16 (D. La. July 28, 1995) (excluding defendants' patents because their admission "would be unfairly prejudicial to the plaintiff, as this evidence is likely to give the jury the false impression that a patent on the accused [device] means that it is substantially different from the [device] claimed in plaintiff's patent."); *see also EZ Dock, Inc. v. Schafer Sys.*, No. 98-2364, 2003 U.S.

4

Dist. LEXIS 3634, at *11 (D. Minn. Mar. 8, 2003) (excluding evidence of defendants' own patents under F.R.E. 402 and 403 in part based on "the common misconception by the public that a patent grants an affirmative right to make the patented article"); *Sonos, Inc. v. D&M Holdings, Inc.*, No. 14-1330-WCB, 2017 U.S. Dist. LEXIS 193078, *4 (D. Del. Nov 21, 2017) ("The fact that defendant has patents in the same technological field is not a defense to infringement, but could mislead the jury into believing that the defendant's patents give it the right to practice technology that is covered by those patents even though it is also covered by plaintiff's patents.") (cleaned up).

As depicted below, and for example, Defendants could easily mislead the jury by presenting a side-by-side comparison of a figure in their Eggers Patent and their accused infringement pump. In doing so, the jury could be confused into thinking incorrectly that, since Defendants' pump looks just like Defendants' patent, it can't also infringe Plaintiff's patent, and if it did, any damage to Plaintiff should be insignificant.



| Fig. 2 of the Eggers Patent | Accused Infringement Pump (CF029950) |

The Federal Circuit also has observed that evidence like this could inject "frolics and detours" that are likely to create side issues that distract the jury from the main issues of this case. *See Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573 (Fed. Cir. 1986); *see also Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1547 (Fed. Cir. 1994) (affirming decision to exclude prior art

5

patents where trial court concluded that defendant's "attempts to offer such evidence constituted a disguised, 'back door' attack on the validity of the patents, which was expressly proscribed by" an earlier finding of that the patents in suit were not invalid).

For the reasons discussed above, evidence concerning the Eggers Patent and any other patent alleged to cover features of the Defendants' accused infusion pump have no relevance to Defendants' infringement of the '805 Patent. *See also Cordis Corp. v. Medtronic Vascular, Inc.*, Nos. 97-550-SLR, 97-700-SLR, 98-019-SLR, 2005 U.S. Dist. LEXIS 6583, *11 (D. Del. Feb. 28, 2005) (granting motion *in limine* to exclude evidence of defendant's patents because "the patents are not relevant to an infringement analysis"). Nor does such evidence have relevance to Defendants' purported written description defense, which is based on the four corners of the '805 Patent. *See Bos. Sci. Corp. v. Cook Med. LLC*, No. 1:17-cv-03448-JRS-MJD, 2023 U.S. Dist. LEXIS 92986, *12 (S.D. Ind. May 27, 2023) ("Defendant's own patents have no relevance to whether Plaintiff's patents have an adequate written description; Defendant is precluded from relying on its patents for that defense.") (cleaned up). Similarly, and to the extent such defenses remain viable under current law and the Court's prior rulings in this case, evidence concerning other patents is not relevant to Defendants' waiver and equitable estoppel defenses. Defendants served an interrogatory response in this case in which they explained in detail the factual and legal basis for those defenses. Notably, that response, which primarily is focused on laches (which no longer is a defense in patent cases) and inequitable conduct (which the Court already dismissed), makes no mention of other patents. (*See* Ex. C, pp. 11-12.) Instead, as it relates to waiver and equitable estoppel, Defendants' response is limited to their reliance on unidentified, but allegedly misleading, statements and conduct by Plaintiff and the fact that Plaintiff was aware of Defendants' accused infusion pump before the case was filed. (*See id.*)

Defendants may argue that other infusion pump patents, including Defendants' Eggers Patent, would be evidence as to the state of the art of infusion pumps and, therefore, relevant to damages. However, assuming without conceding that other patents have some probative value on damages, such evidence, and particularly evidence concerning the Eggers Patent, still should be excluded because any theoretical probative value would be substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and/or needlessly presenting cumulative evidence. *See* FRE 403.

That is, any possible relevance is substantially outweighed by the possibility that the jury would either draw the false impression that other patents, such as the Eggers Patent, that cover the accused pump means that it is substantially different from the pump claimed in the '805 Patent thereby preventing in their mind a finding of infringement, or the false impression that the '805 Patent is invalid, or both. This is especially the case here, where there is substantial other evidence available to Defendants to establish the state of the art at the time, including stipulations between the parties, evidence of earlier infusion pump products, and witness testimony about the development of Defendants' accused product. None of that evidence would cause the unfair prejudice and risk of confusion associated with telling the jury that the Defendants' accused infusion pump are covered by other patents, including those owned by Defendants themselves. *See Malibu Boats v. Skier's Choice*, No. 3:18-CV-00015, 2021 U.S. Dist. LEXIS 89957, *3 (E.D. Tenn. May 6, 2021) (despite claimed relevance to damages the court excluded defendants patents holding that "introducing this sort of evidence—the relevance of which is debatable—risks injecting frolics and detours that will increase the likelihood of side issues that have potential to unduly distract the jury from the main issues" and "because the probative value is substantially outweighed by the potential for confusion and waste of time, defendant will not be allowed to

7

introduce testimony regarding its own patents and technology for any purpose.") (cleaned up); *Zimmer Surgical v. Stryker Corp.*, No. 16-679-RGA, 2019 U.S. Dist. LEXIS 232083, *5 (D. Del. Mar. 13, 2019) (excluding reference to defendant's patents noting that, as it relates to damages, "if there are features in the accused products that defendant believes require apportionment, that can be brought out without saying that those features are patented.") (cleaned up).

Plaintiff respectfully asks the Court to preclude Defendants from introducing testimony, arguments, evidence, or reference to the Eggers Patent or any other patent alleged to cover the Defendants' accused infusion pump or its features. The Court cannot permit Defendants to create the legally improper impression that because Defendants also have infusion pump patents, Defendants' infusion pump does not infringe the '805 Patent or that the patent is less valuable. And for the reasons set forth in MIL #1 above, nor can the Court permit Defendants to back door an attack on the validity of the '805 Patent given that Defendants already lost that issue.

### C. MIL #3 - Defendants should be precluded from reliance on any document not produced in discovery, including the late-produced license agreements, as well as associated testimony

Motions *in limine* may be used to preclude the use of evidence not disclosed in discovery. *See, e.g.*, *Rao v. Gondi*, No. 14 c 66, 2017 WL 4278542 (N.D. Ill. June 26, 2017) at *1-2 (excluding all documents not produced in discovery). Under Rule 26(a)(1)(A), each party must disclose "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses[.]" Where a party fails to disclose such documents, it cannot rely on them at trial. Exclusion under Rule 37(c)(1) is "automatic" in that it follows as a matter of course for documents that are not properly disclosed in discovery, without the need for a sanctions motion. *See* Fed. R. Civ. P. 37(c), Advisory Committee Notes.

8

In this case, fact discovery ended on April 13, 2017. The Court allowed supplemental discovery on technical issues implicated by its claim construction decision in 2019. Expert reports were completed in October 2020, with limited supplemental technical expert discovery in July 2022 on issues implicated by the Court's summary judgment and *Daubert* decisions. Now, long after the close of discovery, Defendants have belatedly produced two license agreements for the first time. On July 13, 2023, Defendants produced an agreement executed in October 2001 between Alaris Medical (now Defendant CareFusion) and Massachusetts General Hospital. On August 7, 2023, Defendants produced an agreement executed in December 2006 between Cardinal Health and Cerner. For ease of reference, Plaintiff will refer to these documents as the "New MGH" and "New Cerner Agreements" and collectively as the "New Agreements." Defendants have asserted that these New Agreements concern the same technology as other license agreements that were timely produced during discovery and relied on by the parties' experts, which begs the question why these New Agreements were not produced earlier.

Defendants do not dispute that they failed to produce these agreements during discovery. Plaintiff would be unfairly prejudiced by any use of these late-produced agreements at trial given that it cannot take any needed follow up discovery or elicit testimony about them from the expert witnesses. And these New Agreements should have been produced long ago. As far back as August 8, 2016, Defendants responded to requests to produce "all documents concerning licenses or potential licenses under any patent(s) in connection with the Accused Products", "all documents concerning offers to license concerning the Accused Products" and "all documents you may offer as evidence, use as an exhibit, or otherwise rely upon in connection with any trial, hearing motion, submission to the Court, or deposition in this case." (Ex. D, pp. 39-40, 52.) The New Agreements are dated 2001 and 2006 and Defendants have not asserted that they only recently came into their

9

possession, which makes sense give that the New Agreements involve entities related to Defendants. Defendants' failure to produce these New Agreement during discovery is, therefore, unexcused.

Under Rule 37(c)(1), Defendants are not allowed to use at trial information that they were required to produce under Rule 26(e), unless that failure was substantially justified or harmless. *See David v. Caterpillar, Inc.,* 324 F.3d 851, 856–57 (7th Cir. 2003). This sanction is automatic and mandatory. *Id.* It is Defendants' burden to show substantial justification and/or harmlessness. *See Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, No. 12C 4978, 2014 WL 6561781 at *2 (N.D. Ill. Nov. 20, 2014) (excluding late-produced documents because the producing party failed to meet its burden to show the failure to timely produce was justified or harmless). When considering whether the failure to disclose is substantially justified or harmless, the Court should consider (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Caterpillar, Inc.,* 324 F.3d at 857.

Here Plaintiff is prejudiced because it was deprived of the opportunity to conduct meaningful discovery on these documents. The Court has made clear that there will be no further extensions of the trial date, now set to proceed in six months, and Plaintiff cannot cure the prejudice that results from its inability to consider these documents when preparing its damages case. Defendants' failure to produce license agreements addressing the very same parties and technology disclosed by Plaintiff appears to have been done in bad faith, or at least not entirely in good faith, as there does not appear to be any argument that they do not fall within the scope of Plaintiff's discovery requests and the overlap between the subject matter of the agreements that were subject

to fact and expert discovery is obvious on the face of the documents. For all of these reasons, the Court should find that the failure to disclose is not substantially justified or harmless.

Because Defendants cannot show that the failure to disclose was either substantially justified or harmless, it is appropriate to grant Plaintiff's motion *in limine* to exclude these documents and any related testimony. *See, e.g.*, *Freeman v. Ocwen Loan Servicing, LLC*, No. 1:18CV03844TWPDLP, 2023 WL 2613641, *2-4 (S.D. Ind. Mar. 23, 2023) (granting motion *in limine* to exclude documents first produced at summary judgment which prevented opposing party from conducting meaningful discovery of their contents).

### D. MIL #4 - Defendants should be precluded from presenting any testimony or argument regarding recalls of Plaintiff's Colleague Pump.

It is undisputed that Plaintiff's Colleague pump, which was the commercial embodiment of the Plaintiff's '805 Patent, was subject to FDA recalls over the course of its lifespan and that, ultimately, Plaintiff stopped selling the Colleague pump in accordance with an FDA recall. But evidence related to that recall is not relevant to the issues to be decided in this case and, due to the inflammatory nature of a medical device recall, is likely to cause unfair prejudice.

In the recent supplemental fact depositions allowed by the Court with respect to damages, Defendants appear to be seeking to make improper arguments concerning this recall to prejudice the jury against Plaintiff and the '805 Patent.[4] Specifically, Defendants appear to be seeking to present evidence related to alleged safety issues caused by design flaws to Plaintiff's product, resulting injury or death, and seeking to imply without evidentiary support that the claimed

---

[4] Under ordinary circumstances, Plaintiff would have deposition designations and an exhibit list from Defendants when preparing its motions *in limine* and Plaintiff reserves the right to later to object to any such designations and exhibits when they are exchanged. However, in view of the Court's expedited schedule for motions *in limine* related to damages, Plaintiff has identified concerns regarding themes and questioning elicited by Defendants that it raises at this time.

invention was the cause of at least certain of the recalls. Because there is no evidence demonstrating such a relationship, these arguments are not relevant to the issues in this patent infringement lawsuit. Further, any attempt to prove such a causal relationship is likely to result in "sideshows" concerning the causes of the recalls and the safety of the Colleague pump as reflected by the recalls. *See ICU Medical, Inc. v. RyMed Technologies, Inc.*, 752 F.Supp.2d 486, 496 (D. Del. 2010) (excluding testing evidence unrelated to the issue of infringement that could create an unjustified sideshow); *see also Oslon v. Ford Motor Comp.*, 410 F.Supp. 2d 869, 875 (D.N.Dakota 2006) (excluding reference to recalls where the need to provide evidence of the purpose, context and resolution of the recalls would lead the jury far astray). Additionally, evidence related to the overall safety of the Colleague with respect to the recalls is likely to cause unfair prejudice resulting from the jury's emotional response to allegations regarding safety issues unrelated to the patented invention. Evidence of patient deaths is particularly inflammatory. *See United States v. Bainbridge Management, L.P.*, 2002 WL 31006135 at \*2 (N.D. Ill. 2002). For all of these reasons, arguments and evidence related to the recall should be excluded.

During the supplemental depositions, Defendants asked Plaintiff's witnesses about recalls of the Colleague pump and whether there were associated serious injuries or deaths. (*See, e.g.*, Ex. E, Bello 8/4/2023 Dep. at 54:22-55:16; Ex. F, Vaughn 7/24/2023 Dep. at 44:10-48:24; Ex. G, Lynn 7/26/2023 Dep. at 87:10-95:21.) At least with respect to Mr. Lynn's testimony, counsel also sought to imply that the recall issues, which were related to problems with batteries and crystal issues in the clocking circuit, were caused ***by the patented invention***. But Defendants have no evidence to support this theory, which Mr. Lynn clearly refuted. (*See* Ex. G, at 144:22-145:20.)

Indeed, Mr. Green's report does not contend that the recalls or related safety issues were or related to the patented invention and Defendants' technical expert offers no such opinion. Mr.

Green identified "battery swelling, inadvertent power off, service data errors, and other issues" as the cause. (Ex. A, p. 14.) Mr. Green further opines in his expert report that "Baxter's Colleague pump is the only infusion pump that the FDA mandated be removed from the market and destroyed" and references that certain of the recalls were Class I recalls, explaining that such recalls related to issues "in which there is a reasonable probability that the use of or exposure to a violative product will cause serious adverse health consequences or death." (*Id.*, at pp. 10-11; 13-14.)

Each of these statements in Mr. Green's report and the testimony elicited from Baxter's witnesses regarding the safety of the Colleague pump as evidenced by the FDA recalls are irrelevant to any issue to be tried and likely would unfairly prejudice the jury against Plaintiff and the '805 Patent. Indeed, a recall presents inflammatory facts that may improperly cause a jury to decide the case based on which of the competing products it would feel safer having used, rather than on the merits. *See Dexcowin Global, Inc. v. Aribex, Inc.*, No. CV 16–143–GW(AGRx), 2017 WL 3478492, \*15 (C.D. Cal. June 29, 2017) (granting in part motion to exclude FDA documents relating to battery recall, pictures of burnt batteries or units, or otherwise discussing the reason for the recall); *See ICU Medical, Inc.* 752 F.Supp. 2d at 496 (rejecting back door effort to encourage the jury to conclude the accused product is safer, creating a risk that the jury may punish the patent owner for having a less safe product even if the competing product infringes the patents-in-suit). Here, a product recall of a medical device, regardless of the reason, is likely to cause an improper emotional response from the jury that would unfairly and without justification prejudice the jury against Plaintiff and the '805 Patent.

## II. Conclusion

For the foregoing reasons, Plaintiff asks that the Court preclude Defendants from offering evidence, testimony, or argument on the identified topics.

Respectfully submitted,

**BAXTER INTERNATIONAL, INC.**

Dated: September 7, 2023

By: /s/*Julianne M. Hartzell*
Julianne M. Hartzell
Kelley S. Gordon
Chelsea M. Murray
MARSHALL GERSTEIN & BORUN LLP
6300 Willis Tower
233 S. Wacker Dr.
Chicago, IL 60606
T: 312.474.6300
E: jhartzell@marshallip.com
E: kgordon@marshallip.com
E: cmurray@marshallip.com

Douglas J. Nash
John D. Cook
Denis Sullivan
Thomas Hoehner
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Tel: (315) 425-2700

ATTORNEYS FOR PLAINTIFF
BAXTER INTERNATIONAL, INC.

**CERTIFICATE OF SERVICE**

I, Julianne M. Hartzell, attorney for Plaintiff Baxter International, Inc. hereby state that on this 7th day of September, 2023, the foregoing **PLAINTIFF'S MOTIONS IN LIMINE REGARDING DAMAGES-RELATED ISSUES** was electronically served by transmission through the Court's ECF Filing system upon all counsel of record.

/s/*Julianne M. Hartzell*
Julianne M. Hartzell