# EXHIBIT 26

**to**

**Defendants' Opposition to Baxter's Motions *in Limine* regarding Damages**

*Baxter Int'l, Inc. v. CareFusion Corp. et al.*
N.D. Ill. Case No. 1:15-cv-09986

```
 1                  IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3
    BAXTER INTERNATIONAL, INC.,      )
 4                                   )
                    Plaintiff,       )
 5                                   )  No. 15 C 9986
                vs.                  )  Chicago, Illinois
 6                                   )  April 28, 2023
    CAREFUSION CORPORATION, and      )  10:30 a.m.
 7  BECTON, DICKINSON AND COMPANY,   )
                                     )
 8                  Defendants.      )

 9               TRANSCRIPT OF PROCEEDINGS - MOTION

10          BEFORE THE HONORABLE NANCY L. MALDONADO

11  APPEARANCES:

12  For the Plaintiff:        MARSHALL GERSTEIN & BORUN LLP
                              6300 Willis Tower
13                            233 South Wacker Drive
                              Chicago, Illinois 60606
14                            BY:  MS. JULIANNE M. HARTZELL

15                            BARCLAY DAMON LLP
                              One Park Place
16                            125 East Jefferson Street
                              Syracuse, New York 13202
17                            BY:  MR. DOUGLAS J. NASH

18  For the Defendants:       WILMER CUTLER PICKERING HALE AND
                              DORR LLP
19                            7 World Trade Center
                              250 Greenwich Street
20                            New York, New York 10007
                              BY:  MR. OMAR KHAN
21

22

23  Official Court Reporter:  JENNIFER COSTALES, CRR, RMR, CRC
                              219 S. Dearborn St., Room 1928
24                            Chicago, Illinois 60604
                              (312) 435-5895
25                            jenny.uscra@yahoo.com
```

```
 1   APPEARANCES:   (Continued)

 2   For the Defendants:        TOTTIS LAW
                                401 North Michigan Avenue
 3                              Suite 530
                                Chicago, Illinois 60611
 4                              BY:  MR. KEVIN TOTTIS

 5                              FREDRIKSON & BYRON, P.A.
                                200 South 6th Street
 6                              Suite 4000
                                Minneapolis, Minnesota 55402-1425
 7
     ALSO PRESENT:              Ms. Jeanne Lukasavage,
 8                              Bectin, Dickinson in-house counsel
                                Mr. Scott Rittman,
 9                              Bectin, Dickinson in-house counsel
                                Ms. Dawn Harley
10                              Bectin, Dickinson in-house counsel

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1     (Proceedings via Webex)

2          THE COURTROOM DEPUTY:  I'm going to have everyone

3     that's on the call, if you can please turn on your cameras,

4     even if you are not speaking.

10:32:11    5          Good morning.  Case 15 CV 9986, Baxter International

6     versus CareFusion.

7          If plaintiff's counsel can please state their name.

8          MS. HARTZELL:  Good morning, Your Honor.  This is

9     Julianne Hartzell of Marshall Gerstein & Borun on behalf of

10:32:24   10    Baxter.

11         THE COURTROOM DEPUTY:  Anyone else?

12         MR. NASH:  Good morning, Your Honor.  Doug Nash from

13    Barclay Damon on behalf of Baxter as well.

14         THE COURTROOM DEPUTY:  And defense counsel.

10:32:47   15         MR. TOTTIS:  Good morning, Your Honor.  This is Kevin

16    Tottis on behalf of the defendants.

17         I'll let the other counsel introduce themselves.  I

18    will also tell the Court that from Becton, Dickinson we have

19    in-house lawyers Scott Rittman, Jeanne Lukasavage and Dawn

10:33:13   20    Harley.

21         THE COURT:  Thank you, counsel.

22         So we're here for argument, which I believe was

23    requested by CareFusion on their motion to strike.

24         So I defer a lot to lawyers in these circumstances.

10:33:29   25    I have reviewed your papers.  I did see there was a filing

1    yesterday on the supplemental exhibit, and I will grant that

2    later on this afternoon probably.

3         But we'll start with I guess, Mr. Tottis, will you be

4    arguing?

10:33:51  5    MR. KHAN:  Good morning, Your Honor.  This is Omar

6    Khan of Wilmer Hale for the CareFusion defendants.  I'll be

7    arguing today for the defendants.

8         THE COURT:  Okay.  Thank you, Mr. Khan.

9         So, Mr. Khan, I'll let you open since it's your

10:34:01 10   motion and then I'll give --

11        Ms. Hartzell, will you be arguing for Baxter?

12        MS. HARTZELL:  I will, Your Honor.

13        THE COURT:  Okay.  I'll give you an opportunity to

14   respond.

10:34:11 15        I will allow you your time to give your prepared

16   remarks.  I will jump in if I have questions or if I want to

17   address a point.  But I have some time this morning and I want

18   to hear you out.  I know this is probably one of my oldest

19   cases, which was reassigned to me late last year.  So I know

10:34:32 20   we have a trial set and I know this motion is relevant to

21   that.

22        So, Mr. Khan, I give you the floor.

23        MR. KHAN:  Thank you, Your Honor.  So this is a case

24   in which, you know, after the Court excluded Baxter's damages

10:34:49 25   expert report, Baxter turned around and, first, they are now

1    trying to put before the jury almost exactly the same number

2    based on untimely damages contentions and computations that

3    were never before disclosed.

4            And then, second, their apparent plan in connection

10:35:07    5    with those undisclosed contentions and computations is

6    essentially to do an end run around the Court's *Daubert*

7    decision because they're trying to put the same number in

8    front of the jury without apportionment evidence the Court

9    already found was lacking and needed.

10:35:23    10            So essentially they wanted to do directly with the

11    jury what the Court told them they couldn't do through an

12    expert.

13            So this Court through Judge Kendall consistent with

14    the practice in the district regarding precluding untimely

10:35:37    15    disclosures already struck an untimely disclosed fact witness.

16    That was Ms. Marin.  And the Court already struck their

17    damages expert report for lack of apportionment.  The Court

18    should apply those rulings here again.

19            As to the bases for the motion, there are really two

10:35:53    20    separate and independent grounds for the motion.  The first is

21    failure to disclose damages contentions, that's sort of a high

22    level description of the grounds relating to that that are set

23    forth in the motion, and the second is a lack of apportionment

24    or comparability evidence.

10:36:10    25            And those are really separate and independent grounds

1      that both lead to the same remedy that CareFusion is seeking

2      here.

3            And Baxter has in the briefing -- Baxter's briefing

4      is a little bit muddled on these issues, so with the Court's,

10:36:27    5      indulgence, I'll just draw out at the outset the first issue

6      is really the disclosure issue under Rule 26, 33, 37.  And if

7      the answer is that there was no disclosure and the *Caterpillar*

8      factors are satisfied, then the Court on that basis can

9      conclude that any trial should be limited to liability only.

10:36:45   10           And that's the holding of a very long line of cases

11     that are in the briefing to you going back to *ePlus*, that's

12     the *NexStep* case, that's *ABM* and there are others.

13           There is a smaller number of cases that's saying that

14     under those circumstances where there is a nondisclosure and

10:37:04   15     the *Caterpillar* facts are satisfied, a small number of cases

16     that say it may or could be appropriate to have a damages

17     trial, but really only allowing the plaintiff to call the

18     defendants' expert in limited ways, that's the S-H-U-R-E case,

19     *Shure,* and there is some suggestion in the *Info-Hold* case that

10:37:25   20     that could be a possibility.

21           But that's the set of constellation of issues

22     relating to nondisclosure of the damages contentions.

23           But if the Court were to find that there was no

24     disclosure problem, which we of course think there is, then

10:37:42   25     there is also a separate and independent problem with

1   evidentiary sufficiency, namely, that there is no evidence of

2   apportionment and perhaps importantly, given the way that the

3   plaintiffs are now trying to put forward their undisclosed

4   damages contentions, there is no evidence of economic

10:37:59   5   comparability on the licences that they want to rely.

6       And if the evidence on that front is insufficient and

7   you agree with CareFusion on that, then -- and in candor, it's

8   not the holding of the cases I mentioned, so *ePlus*, *NexStep*,

9   *ABM*, *Shure*, because the holdings of those cases are about

10:38:18   10   nondisclosure and untimely damages contentions.

11      But the implication of those cases is that the lack

12   of evidence justifies the Court limiting the trial again to

13   liability only or, alternatively, calling -- allowing the

14   plaintiff in limited ways to call the defendants' expert.

10:38:39   15      In our view it's fairly important to keep those

16   issues separate because Baxter often goes straight to the

17   apportionment evidentiary issues, glossing over the fact that

18   it didn't disclose any of these theories and apportionment

19   evidence and factual bases in its interrogatory response and

10:38:53   20   its Rule 26 disclosures.

21      So I'll start with the first one, which is

22   nondisclosure of the contentions.

23      There is really no dispute that Baxter did not

24   disclose its damages computation contentions and the factual

10:39:06   25   bases for those contentions.  It did not provide a substantive

1    interrogatory response during fact discovery.  And there is

2    potentially no dispute that the supplement interrogatory

3    response is new.

4           And I am going to step through why that's the case,

10:39:20   5    though I think at the end of the day there is good agreement

6    on the parties about what I am about to say.

7           So, first, in their Rule 26 disclosures, they were

8    required to put forward a computation of damages.  And what

9    does their Rule 26 disclosures say?  It says, "Baxter has not

10:39:38  10   computed the damages it has suffered and continues to suffer

11   based on its claims," period, that's it.

12          So what did Baxter say in its interrogatory response

13   when CareFusion's interrogatory asked Baxter for the amount,

14   the type of damages, the specific calculations and methods

10:39:55  15   used, the identities of all persons who have knowledge or

16   information, and the identity of all documents relating to

17   such damages?  What did Baxter say in response to that

18   interrogatory?

19          After some thorough clearing objections they say,

10:40:11  20   "Information responsive to such an interrogatory will be

21   addressed in one or more initial and reply expert reports to

22   be served pursuant to the scheduling order."

23          That's it.  They don't identify any witnesses.  They

24   don't identify any documents.  There is no computation.  There

10:40:27  25   is no damages.  There are not even, Your Honor, the words

1    "reasonable royalty" are not in the interrogatory response.

2    It doesn't use those words.

3          So where are we now four years after the close of

4    fact discovery?

10:40:42   5          So where are we is we've got a purported supplemental

6    interrogatory response that's 10 pages long purporting to

7    identify a new method of calculating royalties, licenses they

8    think are now relevant and comparable, computations and ranges

9    that they apparently calculated based on those licences,

10:41:04  10    witnesses that are going to testify on topics that were never

11    disclosed before and some other material.

12          None of that was in their earlier interrogatory

13    response.  None of that was in their Rule 26 disclosures,

14    which were essentially blank pages.

10:41:18  15          So I think what they would say is that the expert

16    report that the Court struck saves them.  And so we'll talk

17    about that.

18          So what did their expert report say?  So Judge

19    Kendall actually covered it in her *Daubert* opinion, and it's

10:41:37  20    at page 6 of the slip opinion in Judge Kendall's opinion, and

21    she says, she summarizes the Baxter damages opinion as

22    follows, she says, "It's a $91 million" -- she doesn't say "it

23    is" -- "$91 million damages figure" and "Salters reaches that

24    amount by multiplying the number of Alaris PCU units sold by

10:42:03  25    the operating profit of the PCU unit, which is $225 per unit."

1    And so that is the theory that was in the expert

2 report.  It was based on the operating profit of the PCU unit

3 and multiplying it by the number of units.

4    There is no reliance on any licences to get to the 90

10:42:29  5 plus million dollar number.  There is no mention of four

6 licences being comparable.  There is no mention of four

7 comparable licences, purportedly comparable licences giving a

8 range of what they now say is 25 to 250.

9    And with respect to the licences, specifically two of

10:42:46  10 them, they were never even discussed by Baxter's expert

11 report -- expert.  So we had no notice that Baxter was going

12 to rely on them.  They could have said during fact or expert

13 discovery, Oh, yeah we think those licenses are relevant and

14 we are going to rely on them.  Didn't do that.

10:43:02  15    One of the licences, and this is in the briefing to

16 you, both of Baxter's experts said it was not relevant and

17 that it was not comparable.  And that's the opposite of

18 disclosing that they were going to rely on it.  It's

19 essentially affirmative waiver.

10:43:20  20    So we had no notice of any of the factual bases or

21 the damages contentions that they now want to put forward in

22 this case.

23    In terms of witnesses, they only disclosed two

24 witnesses in their Rule 26 disclosures as having knowledge of

10:43:39  25 damages.  That was a witness named Sato and Vaughn.

1    And when we served a 30(b)(6) notice on them, they

2    designated Sato on licences and Vaughn primarily on financial

3    statements.  Vaughn was the director of finance.

4    So now what do they want to do?  They want to call

10:44:03    5    the other witnesses, Lynn and Bello, on issues relating to

6    damages without having said in the Rule 26 disclosures that

7    they're going to call them on damages issues.

8    The disclosures, what they want to now do is say that

9    Lynn and Bello can talk about damages.  They can talk about

10:44:21    10    reasonable royalties.  Your Honor, they want to say that those

11    witnesses should be able to talk about, quote, "customary

12    royalty rates," that those witnesses should be able to talk

13    about, quote, this is from their brief and their interrogatory

14    response, "calculation of a reasonable royalty."  That's what

10:44:36    15    they think those witnesses should now be able to say without

16    ever saying or suggesting that those witnesses would be or

17    could talk about any of those issues.

18    They simply cannot rely on new topics that they never

19    disclosed before.

10:44:50    20    Most of what I've talked about up 'til this point,

21    Your Honor, is sort of what's new in their supplement,

22    reported supplemental interrogatory response.  But there is an

23    equally fundamental issue is that as a matter of procedure,

24    what they are now telling you is that they want to put in a

10:45:12    25    damages case through all of their fact witnesses.

1    But, remember, the disclosures and the rog response

2 said, We're not giving you anything in fact discovery.  And so

3 they intentionally and deliberately put all of their eggs in

4 the expert discovery basket, said you get nothing in fact

5 discovery.  And, remember, they didn't even say the words

6 "reasonable royalty" in their interrogatory responses.  And

7 they said all of that is extra discovery.  It's not a topic

8 for fact discovery.

9    So we had no reason to go out and discover the bases

10 for these contentions that they now purport --

11    THE COURT:  Mr. Khan, wouldn't this be cured by me

12 allowing a limited time for you to depose these four

13 individuals at issue?  Because I will say -- and thank you for

14 the presentation.  I'll allow Ms. Hartzell to respond, or I'll

15 allow you to finish and then I'll allow Ms. Hartzell to

16 respond.

17    But, you know, my initial reaction to your motion,

18 it's a big stick, right.  You all have been litigating for

19 years.  And this is essentially summary judgment.  It's a

20 technical default, right, which I will say is tempting for a

21 new judge with almost 400 cases to say this case can go bye

22 bye.

23    But, you know, when we have a trial set I think

24 November, December, correct?

25    MR. KHAN:  Yes, Your Honor.

1    THE COURT:  This case has been going on for many

2  years.  You know, the timing of how things happened of the

3  expert report not being stricken until 2022, after fact

4  discovery had closed, you know, in terms of prejudice to

10:46:57    5  CareFusion, like why, why is any prejudice not cured by me

6  simply saying you could depose these folks for, you know, two

7  to three hours each of damages alone?  Why doesn't that solve

8  the problem, the disclosure problem?

9    MR. KHAN:  Your Honor, the prejudice in our view is

10:47:17   10  incurable and here is why.  The entire case has been

11  predicated and premised on the way that fact discovery has

12  proceeded.  So key decisions were made in the case that have

13  been made since then that essentially are predicated on no

14  fact discovery relating to the damages issues.

10:47:36   15    At this point we've tried to lay out for you sort of

16  all of the ways in which that we would have to do discovery,

17  we would have to have briefing again, we would have to have a

18  new report from our technical and expert witnesses.

19    I think we'd have to redo basically, I think if the

10:47:51   20  Court is concerned about how long this case has been going on,

21  we'd essentially have to redo the case because we'd have to

22  restart all of those items.  That's not to say --

23    THE COURT:  What if these individuals -- were all

24  four deposed, yes?

10:48:04   25    MR. KHAN:  They were, yes, Your Honor.

1    THE COURT:  Okay.

2    MR. KHAN:  They were all deposed, but not on --

3    THE COURT:  I know not explicitly on damages.  But

4 were they deposed on topics that would bleed into damages?

5 Because there is some overlay here, right.

6    So I don't know if I would allow a seven hour

7 deposition, you know.  But didn't some of the issues that they

8 were deposed on, aren't they relevant to a reasonable royalty

9 analysis?

10    MR. KHAN:  Your Honor, they are relevant to a

11 reasonable royalty analysis in terms of setting out very, very

12 basic predicate facts that aren't really sort of at the heart

13 of what they want to do with these witnesses today.

14    So they want these witnesses to talk about customary

15 royalty rates, royalty negotiations, personal knowledge of

16 licences that wasn't disclosed to us.  There is lots and lots

17 of things that we cannot sort of know what there is relevant

18 here.

19    THE COURT:  But you can know, you can know because I

20 can allow further discovery.  I can allow a limited deposition

21 on damages only as to these four, right?

22    Because here, Mr. Khan, you know, whether Baxter down

23 the line, and I'm thinking motions in limine, right -- I want

24 to focus on the disclosure issue and on the curing of any

25 prejudice, because the sanction seems incredibly harsh here,

1    the sanction that you are asking me to impose.

2          You know, it's not as if these four witnesses came

3    out of left field and CareFusion has no idea what they know.

4    I mean, presumably you probably spent at least seven hours in

10:49:52    5    deposition with all four of them, right?

6          So, again, getting back to the prejudice, tell me

7    more about how CareFusion is prejudiced by if I were to just

8    allow discovery to reopen for the limited purposes of

9    exploring damages only with these four.

10:50:16   10          MR. KHAN:  I think, Your Honor, first of all, it's

11   really we have to go way beyond that, which is to say we would

12   need the ability to supplement our expert reports, right, our

13   damages report may need to be supplemented, our technical

14   damages report.

10:50:31   15          THE COURT:  Well, I'm not so sure about that.  Tell

16   me why you think that.

17          MR. KHAN:  Okay.

18          THE COURT:  Right.  Because, you know, Baxter doesn't

19   have an expert.  And you were saying that reasonable royalty

10:50:44   20   was all new and you didn't know.  I mean, can't you just

21   cross-examine these four lay witnesses?  I mean, why do you

22   need a supplemental expert report?

23          MR. KHAN:  Because, Your Honor, the bases that are

24   laid -- we don't have -- we have an expert who sort of laid

10:51:05   25   out sort of a rebuttal to the damages case that Baxter laid

1    out and is now stricken, a rebuttal or damages report, right.

2    And so that expert needs to be able to take into account

3    whatever new facts may be elicited from the fact witnesses.

4            And I'll say, you know, you asked about the

10:51:22  5    prejudice, and in the district's long-standing practice and

6    the Court through Judge Kendall, and I'm going to quote from

7    her opinion here, has said that "The prejudice includes

8    causing defendants to have to refine their case, the theories

9    of the case or adjust their case strategies, thereby incurring

10:51:40  10   additional attorneys' fees, which would be difficult to

11   calculate and difficult for the Court to remedy through some

12   lesser sanction."

13           There are far more than -- there is far more

14   prejudice in this case than just sort of taking four

10:51:53  15   depositions.

16           And by the way, after we do the four depositions and

17   after in our view supplement our expert reports, we're going

18   to have to come back to you all, come back to you with renewed

19   briefing on these issues in light of the depositions.

10:52:05  20           THE COURT:  What kind of new briefing?  We have a

21   trial set.

22           MR. KHAN:  Right.

23           THE COURT:  So after -- if I allow this limited

24   discovery, which I think you already know something about

10:52:18  25   these four witnesses, right, so I don't think it should take

1    that long.

2         I'm not certain that an expert report is warranted, a

3    supplemental expert report is warranted.  What other briefing

4    are we talking about other than pretrial motions in limine,

10:52:34    5    which I'll be doing anyway?  What other briefing are we

6    talking about?

7         MR. KHAN:  Your Honor, I don't, we don't know what

8    other briefing might be necessary at this point because we

9    don't know what these witnesses are going to say.  There has

10:52:47   10    been no disclosure of any of that.

11         And by the way, I mean, I think we're focused on the

12    nondisclosure point.  You know, these witnesses can't talk

13    about apportionment.  That's of course the second basis.  So

14    even if we find that, you know, there is a cure on the

10:53:01   15    nondisclosure point, there can't be a cure on the

16    apportionment point that is the second basis for the motion.

17         But circling back to the first point that you were

18    talking about and why we need supplemental expert reports, I

19    think if the basis -- if suddenly, you know, let's talk about

10:53:20   20    the Cerner license, for example, if suddenly their fact

21    witnesses are talking about the Cerner license, our expert

22    needs to be able to address that in his opinion that the

23    Cerner license is not relevant and he needs to be able to say

24    why those fact witnesses are wrong.

10:53:34   25         And that's appropriate in the context of the

18

1      overall -- that's how the case proceeded in the first

2      instance.  And so that would be appropriate for our damages

3      expert to have to say, Well, the factual basis relating to

4      such and such license has changed, so I need to be able to

10:53:50    5      respond to that.

6          If, you know, if they're going to put forward new

7      technical evidence relating to the royalty rate that they

8      want, our technical expert needs to be able to look at that

9      and say, No, that technical evidence is wrong.

10:54:07    10          And so we need rebuttal evidence in response to any

11     new evidence that they are going to put forward through these

12     witnesses.

13          So in our view, Your Honor, it would be deeply,

14     deeply prejudicial to let them put forward these four

10:54:18    15     witnesses without giving us an opportunity to respond in the

16     expert reports to any new factual evidence that comes out of

17     these witnesses.

18          And once we're into the supplemental technical expert

19     reports for CareFusion, by the way, you know, I'm sure that

10:54:33    20     Baxter will tell you they want to depose those witnesses.

21     They may want *Daubert* briefing on or *Daubert* motions with

22     respect to supplemental reports or they may not.  I don't

23     know.

24          But, you know, Your Honor, yes, I'm referring to

10:54:46    25     motion practice, pretrial motion practice, but I'm also

1    referring to essentially having to bring the apportionment

2    motion again in front of you.  That issue doesn't go away.

3    We're going to be here back in front of you on this exact same

4    issue in whenever -- by the way, I'm not -- you know, we don't

10:55:06    5    even know, because we don't know what these witnesses are

6    going to say, we don't know how long this is going to take and

7    how far out it's going to be, but I don't think it can be done

8    this year really in terms of all the work that needs to get

9    done behind these.

10:55:19    10    THE COURT:  You don't think, you don't think it could

11    be done in the rest of the calendar year?

12    MR. KHAN:  With the expert reports and the

13    depositions of the expert reports and then, right, so if we

14    follow and then the supplemental briefing that's required,

10:55:35    15    that's sort of what I'm talking about.

16    If you are talking about just the four depositions,

17    which we don't think is the right approach, yes, that of

18    course can get done, and then we have time for pretrial work,

19    you know, on the basis of that.

10:55:47    20    But that I think would be deeply prejudicial or

21    basically would be allowing Baxter to put forward whatever

22    case it wants and hampering our ability to respond --

23    THE COURT:  Yeah, but they're going to be limited

24    what these four witnesses know, right.  So they're not going

10:56:02    25    to be able to invent there.  I mean, there will be evidentiary

1    objections.  There will be motions in limine.  You know, these

2    witnesses will have to speak from personal knowledge.  So

3    Baxter is in a difficult position as it is, right.  So the

4    question is whether I even allow them to go forward, right.

10:56:15    5               But you'll have fuel in your arsenal if I allow them

6    to go forward, you know, to cross-examine them.  You know,

7    there may be limits to the scope based on what they testify

8    to.  I mean, this is why I'm sort of -- this is feeling like a

9    very harsh sanction from what I understand what the facts are

10:56:39    10    here.

11               MR. KHAN:  It's not a harsh sanction.  Oh, go ahead,

12    Your Honor.

13               THE COURT:  Yeah.  Is there -- you can tell me why

14    you think it's not a hard sanction, and then if there is

10:56:48    15    anything else in your presentation that you think would be

16    helpful for me to hear, you can go ahead.

17               MR. KHAN:  Sure.  Your Honor, I would say it's really

18    not a harsh sanction because they put themselves in this box,

19    in other words, by stonewalling us throughout fact discovery

10:57:04    20    and then relying on expert reports alone, now that that expert

21    report has been thrown out, trying to backfill untimely

22    damages contentions of which we had no notice.

23               And I do think that there is really no question that

24    we're going to need the ability to respond in part to our

10:57:21    25    experts, to whatever new evidence that they put forward.  We

1    don't know what they're going to say.  Are our witnesses going

2    to have personal knowledge in order to respond to what their

3    witnesses are saying?  We don't know.

4         And so that is why we have experts in the case,

10:57:37    5    because sometimes CareFusion's witnesses don't have personal

6    knowledge sufficient to put forward rebuttal evidence to

7    whatever Baxter's witnesses are going to say.  And that's why

8    we have experts to begin with.

9         There is no question that we are going to need at

10:57:51   10    least, you know, the technical and the damages, our technical

11    and damages experts to put forward supplemental reports.  They

12    are going to need to be deposed.  I think there is going to

13    need to be an opportunity for briefing.

14         I think you are right that the briefing I'm referring

10:58:03   15    to is primarily sort of pretrial briefing of motions in

16    limine.  But I am flagging separately, Your Honor, that the

17    apportionment issue doesn't go away.  That is going to be back

18    in front of you almost right away after we take these

19    depositions because they're not going to be able to cure that.

10:58:19   20         They have not put forward -- let me just sort of

21    speak to the prejudice issues quickly.

22         The harshness of the sanction is essentially, Your

23    Honor, you know, to the extent that the Court is willing to,

24    you know, let them go forward, the path would be the second

10:58:45   25    approach that I talked about, which is they can call our

1    expert, because that would be sort of the opinions that our

2    expert has offered in the case, they can go ahead and call him

3    at trial, and that's the approach that, for example, the *Shure*

4    case took, *S-h-u-r-e*, and that's the approach *Info-Hold*

10:59:04    5    suggested.

6        But there is no case cited by either party, certainly

7    not by Baxter, that suggests that you can put forward

8    undisclosed damages contentions at this late in the game,

9    certainly not four years after trial.  And the prejudice is

10:59:20    10    just extraordinary and manifest under the circumstances.

11        You know, so many of the cases that we talked about

12    are not any more close to trial, and, you know, we're

13    obviously months from trial at this point.  You know, the

14    cases talk about how the litigants don't have license to

10:59:44    15    ignore timely disclosure obligations of damages theories just

16    because the trial date has not been set.  So that's without a

17    trial date even being set.

18        And the Court in this case, Judge Kendall found the

19    same thing when she excluded Ms. Marin earlier in the case.

11:00:01    20        So I don't -- you know, the sanction is not that

21    harsh.  If the Court is inclined to proceed with a damages

22    trial and allow the plaintiff to have some damages case, the

23    correct remedy is the one that's suggested by the *Shure* case

24    and by *Info-Hold*, which is to allow them to call our expert

11:00:18    25    and put in the opinions that were timely disclosed and had

1    ample time to be vetted over the course of the long life of

2    this case.

3         But the correct -- we don't think the right remedy is

4    to let them do whatever they want to do by allowing us four

11:00:29    5    depositions.  I don't think it can stop there.  We have to go

6    past that and we have to go beyond to make sure that we get

7    ample -- that we get the full discovery process available to

8    us to respond to the proofs that they want to put forward at

9    trial.

11:00:46    10        I'll touch very briefly on the apportionment issue,

11   you know, which is to say that there is a long line of cases

12   saying that damages cannot be speculative or based on

13   conjecture.  There has to be evidence of apportionment.

14        And they simply don't have and they have not told you

11:01:03    15   that they have any fact witness who can testify based on

16   percipient knowledge, based on personal knowledge on

17   apportionment issues.  And they don't have that witness.  They

18   can't do it, they won't be able to do it, because what the

19   apportionment and comparability analysis requires in this case

11:01:26    20   essentially is what Judge Kendall found, which is to say that

21   the product in this case is a multi-component product.  It has

22   a lot of different components.  And the '805, the patent in

23   this case, is not directed to all of them.

24        So what you have to do is separate the value of the

11:01:46    25   unpatented, allegedly unpatented components from the value of

1      the patented components.  And that was the failing that she

2      found in the damages expert report that Baxter put forward.

3              If we now -- the reason they had a damages expert

4      attempt that analysis was because they didn't have a fact

11:02:08   5   witness that could do it.  They still don't.  And that

6      evidence cannot be put forward by -- now, we're not saying

7      that an expert is necessarily required, Your Honor.  So that's

8      not what we're saying at all.  I think that's sort of, you

9      know, a red herring that they've thrown out.

11:02:23  10           What we're saying is that there can be cases where an

11     expert is not required.  But in this case they don't have a

12     percipient factual witness who performed an apportionment

13     analysis prior to this litigation.  They don't have somebody

14     who did a comparability analysis prior to this litigation.

11:02:42  15   They don't have a license to the asserted patent in this case.

16     They don't have -- so all of these things that are the

17     hallmarks of sort of allowing a case to go to trial because

18     there is sufficient apportionment evidence or sufficient

19     comparability evidence, we don't have any of that in this

11:02:57  20   case.

21             And that's the second reason that I don't think we

22     can go forward even today.  But if the Court were to allow,

23     you know, some cure of some nature, we're going to be back

24     here in front of you on that issue, and that's not going away,

11:03:14  25   because at the end of the day they will not have any witness

1  who can testify based on their own personal knowledge of the

2  apportionment of the comparability issue.

3          THE COURT:  How do you know that, Mr. Khan, if you

4  haven't deposed these four --

11:03:27  5          MR. KHAN:  Based on --

6          THE COURT:  There is some statements I know in the

7  record.  But, I mean, how do you really fully know that?

8          MR. KHAN:  They would have told you.  So in the

9  briefing, right, this has been briefed for several months now,

11:03:46  10 they're not telling you that they have a witness who will do

11 that analysis.

12          THE COURT:  Well, I think that they're saying they

13 want to rely on these four, correct?  And that they feel that

14 they can put together a damages case based on lay testimony

11:03:56  15 from these four, two of whom you have deposed, right?

16          It just feels to me like you actually don't know what

17 they know and that, you know, this -- I realize this is late.

18          Is there anything else that you want to add,

19 Mr. Khan?

11:04:17  20         MR. KHAN:  Just on that last point, Your Honor, I

21 would just add that they cannot use the four witnesses to

22 offer expert opinions.  So if there are things that are not

23 based on their percipient or personal knowledge --

24          THE COURT:  I understand.  And they are going to have

11:04:33  25 to deal with that, right?

1    MR. KHAN:  Right.

2    THE COURT:  They're going to have to deal with that.

3    But you're asking me, you're asking me to say game

4    over, don't even give them a chance, right.  That's what you

11:04:42    5    are asking for, which is dramatic, dramatic.

6    MR. KHAN:  And to be clear, Your Honor, what we are

7    saying is that, you know, there can be a liability only trial,

8    and we can move forward on that.  But there can't be a damages

9    trial on the facts here.  And there are -- there is ample --

11:05:02    10    THE COURT:  Why would I do a liability trial?  I

11    understand that the patent has expired.  Why would I do a

12    liability trial?

13    MR. KHAN:  Well, for example, if the Court were to

14    find that they were entitled to or had not waived nominal

11:05:19    15    damages.  Alternatively, for practical reasons, the Court

16    might want to say I'll have a liability trial, and if the jury

17    finds there is no liability, the damages issues might be moot

18    or, you know, at least that way if there is an appeal, only

19    one issue comes back, which is damages -- could ever come back

11:05:36    20    is damages.

21    So there are several cases that have come out in

22    favor of having a liability only trial.  We've cited them to

23    you.  And while the rationale for that approach isn't quite

24    clear, in some of those cases maybe there was an injunction

11:05:52    25    request, here there isn't.  But I think that is the

1   constellation of issues that would relate to that decision.

2          THE COURT:  Okay.  Well, thank you, Mr. Khan.

3          Ms. Hartzell, you have the floor.

4          MS. HARTZELL:  Thank you, Your Honor.  There are a

5   few points that I want to make.  And first I want to start

6   with Mr. Khan's representation that we would have in the

7   briefing presented all of our apportionment evidence.  And

8   that's not our view.

9          Our view is that this motion can be resolved if there

10  is any evidence that can support a damages case that Baxter is

11  able to present, and at minimum it can present the defendants'

12  expert.  So we believe that that in itself resolves this

13  motion.

14         But then turning to a couple of other points that he

15  made, that Mr. Khan made, one, he argued, arguing about the

16  prejudice to the defendants here and the surprise that they

17  have suffered.  It's our view that that concern is overblown

18  and is demonstrated by the evidence that we've submitted.

19         For example, on page 7 of the defendants' reply, they

20  argue that they don't know what the license agreement, what

21  reasonable royalties goes with what license agreement.

22         But that was addressed by their expert.  And

23  similarly Mr. Khan says now their expert would need to go back

24  and address each of those licences.  He did that.  It's in

25  Exhibit 4 to Baxter's opposition at pages 44 to 49.  He

1    addressed each and every agreement.

2          And to say that defendants had no idea what evidence

3    related to damages is incorrect because they did depose each

4    of these witnesses.  They did ask questions that relate to the

5    damages analysis.  They did include in their expert report

6    each of these licences.

7          So with respect to the surprise and prejudice, we

8    disagree that there has been any here.  Each of the witnesses

9    was disclosed, both in the initial disclosures and they were

10   deposed.  And everything that's included in the supplemental

11   interrogatory was addressed in fact and expert discovery.

12         When the expert report was served, there was no

13   surprise, there was no concern that the evidence that was

14   cited there was unknown to the defendants.  There wasn't an

15   issue until that expert report was stricken.

16         So we do acknowledge that that is what brought us

17   here, the expert report being stricken.  But the question for

18   the Court as you've acknowledged is:  What do we do now?  What

19   is the end result of that?

20         And as I mentioned at the beginning, it is Baxter's

21   view because the statutory requirements that damages should be

22   awarded if liability is found and that the fact-finder should

23   look at the record and apply the *Georgia-Pacific* factors to

24   find what that reasonable royalty would be, that whatever goes

25   in in the case can support a damages award.

11:07:30

11:07:50

11:08:08

11:08:24

11:08:46

1   And specifically with respect to apportionment, the

2   parties have exchanged a couple of new cases that came out

3   since the briefing in the last 24 hours or so.  So one of

4   those cases that I would direct the Court toward is a recent

11:09:03   5   Delaware case, and it's called *Acceleration Bay Versus*

6   *Activision Blizzard*.  And the parties in the briefing cited

7   two other decisions from earlier decisions addressing similar

8   issues.

9   In this decision that was March 28th, and the case

11:09:18   10   number is 16-453-WCB in the District of Delaware, in this

11   case, Judge Bryson, who was sitting by designation in

12   Delaware, addressed the apportionment question and addressed

13   what could be -- what could support an apportionment case.

14   And all that apportionment looks at is whether or not

11:09:38   15   the damages case and the reasonable royalty award is tied to

16   the claimed invention's footprint in the marketplace.

17   And that's what was found here in Judge Kendall's

18   *Daubert* decision, she found that Baxter could rely on the PCU

19   as establishing the royalty base, but that it needed to

11:09:59   20   apportion the value of that, of the royalty, the reasonable

21   royalty for patented features and unpatented features.  And

22   that can be done with fact witnesses as is acknowledged in

23   *Exmark*.  There are a number of ways to establish

24   apportionment.

11:10:16   25   And here fact witnesses will testify regarding what

1   is the patented invention, what is the advantage of the

2   patented invention, and what elements of the accused devices

3   are not covered by the patent or include unpatented features,

4   I guess would be a better way to say that.

11:10:35   5       So that evidence can support apportionment.  And as

6   Judge Bryson found in the *Acceleration Bay* case, to decide

7   before the evidence has been submitted whether or not the

8   damages award is supported by sufficient evidence to provide

9   apportionment would be itself speculative.  And he allowed the

11:10:55   10   parties to move forward to trial and to present the evidence

11   that they believe will support apportionment.  And we think

12   that that's the appropriate remedy here as well.

13       There are a couple of other things that I wanted to

14   address, specifically some things that came up in the reply

11:11:13   15   brief.  One of those is that there was a new argument that

16   Baxter has waived reasonable royalty damages, and that was

17   premised on the *Promega* case.

18       First, Baxter hasn't waived its reasonable royalty

19   because it has consistently claimed a right to reasonable

11:11:34   20   royalty damages.

21       In the *Promega* case, the patentee explicitly stated

22   at trial that it was not seeking reasonable royalty damage,

23   only lost profits, and that was reflected both in arguments

24   made by counsel and in the jury verdict form that was

11:11:49   25   submitted by the parties.

1    And Judge Bryson similarly distinguished the *Promega*

2    case in the *Acceleration Bay* decision at pages 9 to 10.  And

3    since we didn't get a chance to address that since it was

4    raised for the first time in the reply, I wanted to mention

5    that here.

6    Additionally, there is a footnote in the reply brief,

7    footnote 10, where the defendants seek to reopen invalidity as

8    a matter of fairness if additional evidence related to damages

9    is allowed in.  And we want to make clear that those are not

10   comparable circumstances.  Baxter did seek and successfully

11   receive summary judgment on the issue of invalidity.  That

12   didn't happen with respect to damages, and that was a choice

13   made by defendants.  So we don't believe that would be

14   appropriate to reopen the invalidity issues for any reason.

15   I think that covers most of our arguments, but if the

16   Court has any specific questions for me, I'm happy to address

17   them.

18   THE COURT:  Yes, Ms. Hartzell.  So in terms of the

19   four lay witnesses that were previously deposed, tell me more

20   about the length of those depositions and whether they were

21   questioned on matters that are relevant to your theory, your

22   newest theory of damages.

23   MS. HARTZELL:  Yes, Your Honor.  We've identified in

24   our brief several areas in which the witnesses who are

25   identified specifically as to damages testified as to

1   reasonable royalty related issues.  And I don't know, I wasn't

2   involved in the case at that time, so I don't know the length

3   of those depositions.

4       With respect to the other two witnesses, they have

5   been identified as inventors of the patent-in-suit, and

6   Mr. Lynn was also identified as having knowledge related to

7   the, and I may not have the wording exactly right here, but

8   the history and development of infusion pumps at Baxter, so

9   generally that topic.

10      And with respect to the relationship to damages and

11  why their testimony is relevant to damages, it is with respect

12  to those topics because the *Georgia-Pacific* factors address as

13  we've talked about a few times the advantages of the patented

14  technology over the prior art as well as with respect to

15  comparable licences, those relate to what may or may not have

16  been known in the prior art at that time, at the time of those

17  licences, and that is what those witnesses are offered with

18  respect to damages.  It is the same topics for which they were

19  previously disclosed.  It's their technical knowledge of the

20  invention and, for Mr. Lynn, his knowledge of the development

21  of infusion pumps over time at Baxter.

22      THE COURT:  You know, my previous questions to

23  Mr. Khan indicated that I was open to some limited discovery

24  if I denied this motion.  And from your perspective, if I were

25  to allow the reopening of the depositions of these four, what

1  do you think would be some reasonable limits on those, on

2  those depositions?

3       MS. HARTZELL:  I think that probably the most

4  efficient way for the parties to address it would be to meet

11:15:33  5  and confer regarding the topics that defendants believed they

6  needed to address.  And then to the extent that Baxter was not

7  intending to rely on those witnesses for any of those

8  particular topics, the parties could agree to a narrowed

9  scope.

11:15:48  10       THE COURT:  And what is your position on an

11  additional supplemental expert report on the part of

12  CareFusion?

13       MS. HARTZELL:  As I mentioned previously, at least

14  with respect to the licences, which was one of the examples

11:16:04  15  that was given as to why that would be necessary, that's

16  already been addressed by the expert.  We don't believe that

17  additional supplementation with respect to that would be

18  needed.

19       With respect to the particular witnesses, I think

11:16:20  20  it's hard to know without hearing their testimony whether or

21  not that would create any new issues.

22       THE COURT:  I see.  Anything else?  Anything in

23  response that you would like to add, Mr. Khan, to what

24  Ms. Hartzell said?

11:16:39  25       MR. KHAN:  Your Honor, just a couple of things.  So

1       on the *Acceleration Bay* case that Ms. Hartzell identified,

2       just to be very, very clear about it, there was no issue in

3       that case about nondisclosure of evidence.  So the Court

4       expressly found in that case that she cited to you that the

11:16:59     5  evidence and the contentions were adequately disclosed.

6               The additional thing is that the expert opinions were

7       not excluded in their entirety, including expert opinions were

8       not excluded on particular licences.

9               And on the licences, Your Honor, Judge Bryson was

11:17:16    10  sitting by designation.  The district court judge, Judge

11      Andrews, had already previously found that the licences were

12      sufficiently economically comparable to go to the jury.

13              And so what you had in that case that Ms. Hartzell

14      cited to you was licences that the judges found to be

11:17:36    15  economically comparable sufficiently to go to a jury, an

16      expert who could talk about them, an inventor who could talk

17      about them, and those licenses, Your Honor, were directed to

18      the asserted patent, the patent-in-suit in that litigation

19      itself.

11:17:50    20          So it's a radically different case from the facts

21      here where we're talking about a nondisclosure of basic

22      damages theories and contentions.  And then moving on past

23      that even to the apportionment issues, the Court in that case

24      was looking at a situation where there was an expert who could

11:18:07    25  talk about licences directed to the asserted patent itself,

1   but not at all sort of the situation here.

2        I think there were a number of things that

3   Ms. Hartzell said.  You know, if the Court were inclined to

4   look at the papers and Judge Kendall's rulings more closely,

11:18:23   5   it would discover them itself, but essentially Judge Kendall

6   did not find that they are somehow entitled to rely on the PCU

7   as the base.  She excluded the opinions in their entirety.

8   And essentially she adopted, she said -- she was summarizing

9   Baxter's experts opinions and then said there is no

11:18:45   10   apportionment, and so I am going to exclude everything.

11        THE COURT:  Yeah, but she didn't exclude the facts.

12   I mean, the expert is out.  But whether Baxter can put this

13   evidence forward through lay witnesses, that's the issue,

14   right?  We don't need an expert here to prove damages,

11:19:03   15   right --

16        MR. KHAN:  That is the heart of --

17        THE COURT:  -- under the reasonable royalty, yeah.

18        MR. KHAN:  Our view is that we do, Your Honor,

19   because there is no percipient witness who knows the issues.

11:19:14   20   Now, I think --

21        THE COURT:  Well, we don't know that.  We don't know

22   that.  Because here is the problem that I'm finding.  You keep

23   saying no percipient witness.  But then you're like, We don't

24   know what they know.  So there is a tension there, right.

11:19:25   25        MR. KHAN:  There is.  But I'm relying --

1          THE COURT:  Yes, there is a tension.

2          MR. KHAN:  I'm relying, Your Honor, on what they told

3     you and us in their briefing, and they haven't said there is.

4          THE COURT:  Yeah.  But that doesn't, that doesn't --

5     that's not persuasive to me.

6          MR. KHAN:  Okay.  So what I would say, Your Honor, is

7     if the Court is trending towards, you know, limited discovery,

8     I think I heard Ms. Hartzell say that, you know, essentially

9     as I said, that it depends, the need for supplemental reports

10    and their need to have expert discovery responses for

11    CareFusion is dependent on what the fact witnesses say.  I

12    agree 100 percent.  So we need the opportunity to provide

13    supplemental expert reports.  We need the opportunity to have

14    additional briefing on the apportionment issue.

15         I also think, Your Honor, as we pointed out in our

16    papers, we need a complete supplemental rog response as well.

17    We need a proffer of what they think these witnesses are going

18    to say.  We are going to need like a specific, you know,

19    direct -- we can talk about that in the context of sort of a

20    meet and confer with them to get to those.

21         THE COURT:  I think you want to meet and confer, you

22    know, because this is getting a little bit in the weeds.  You

23    know, it struck -- I didn't even think about a supplemental

24    interrogatory response.  I just thought, if anything, you

25    would depose these four witnesses for a limited time period on

1    damages only and that's how you would know what they state.

2          I mean, to go through the lawyers and require an

3    interrogatory response, I mean, perhaps this can be handled

4    informally through a meet and confer process what the exact

11:21:01    5    scope and disclosure of more detail in advance of the

6    deposition so you're not, you know, you're not prejudiced in

7    that way.

8          So here is what I am going to do.  I am going to deny

9    the motion.  I think, you know, this reasonable royalty

11:21:28    10    theory, there were hints of it outside the interrogatory

11    response throughout this litigation.  So this is not the case

12    where it's like, oh, it's out of the thin blue sky.  We had no

13    idea.  You know, your experts, witnesses talked about other

14    licences.

11:21:42    15          So I find that the prejudice is unlike other cases.

16    But I recognize that there is some in the sense that two

17    witnesses were disclosed on damages, two weren't.  There is

18    this sort of commingling here of, you know, what's damages,

19    what are questions that went towards liability.

11:22:07    20          And so I do think that I will allow some limited

21    deposition discovery of these four witnesses.

22          Now, I think Ms. Hartzell is correct that the best

23    way for this to happen is for both sides to get together and

24    talk about what is the scope of these depositions.

11:22:28    25          I think, Ms. Hartzell, you heard from Mr. Khan, he

11:22:52

1   wants a supplemental rog answer.  I think that that probably

2   might slow things down quite a bit.  However, I think that he

3   needs to know exactly, he needs a better idea of what these

4   four witnesses will be able to testify to and how they fit

5   into Baxter's theory.  I do think CareFusion is entitled to

6   that.

7          And whether it's through an interrogatory, rog

8   answer, or informally through meet and confer, that

9   information should be exchanged.

11:23:05

10         Now, I threw out earlier two to three hours.  You

11  guys know the case much better than I do.  I don't know how

12  long the original depositions were and how detailed they were,

13  and someone is going to have to do the analysis as to whether

14  a lot of the *Georgia-Pacific* factors were already questioned

11:23:27

15  on, right.

16         You guys are going to need to master the record of

17  these four witnesses anyway for purposes of pretrial motions

18  and trial.  So you're going to have to do that study and come

19  up with a plan and propose that to me.

11:23:41

20         I will say I'm not happy about having a 2015 case on

21  my docket, but I inherited, and I inherited lots of old cases.

22  But for me, in terms of fairness, this is the fair way to go.

23  This is the fair way to go in my view balancing all these

24  factors that I have to balance.

11:24:01

25         Now, whether Baxter ultimately, what they can do at

1  trial with these four witnesses we don't know, I think we

2  don't really know.

3        So I understand there is going to be more motions,

4  Mr. Khan.  I'm in the business of motions.  So I understand

11:24:20  5  there is going to be more motions.

6        I also will have you know, I had a December trial

7  that just settled, so I could move you back 30 days if we

8  needed to.  And my trial schedule also opens up, I believe, in

9  February of the coming year.

11:24:35  10        But for me, speediness versus fairness here, I'm more

11  interested in fairness, right.  And I understand that even

12  with this ruling, it doesn't end the story.  And this is, I

13  understand, an issue for Baxter at pretrial and at trial.  But

14  they should be allowed to prove their damages case or give it

11:24:58  15  a shot, right, in the confines of what's already happened in

16  this case that I inherited, which means no damages expert.

17        So in terms of time to meet and confer, I want to

18  give you sufficient time, but I also want you all to give this

19  case priority.  And so how much time do you need to meet and

11:25:24  20  confer on a deposition plan here?

21        On the issue of the expert report, I'm going to kick

22  that issue until we know a little bit more.  And I don't feel

23  that that issue has been really fully briefed or discussed

24  here today for me to make a ruling either way on whether I'm

11:25:45  25  going to allow any supplemental expert reports.

1          But on the time issue, Mr. Khan, do you have a

2    thought on how much time, Ms. Hartzell, how much time you

3    would need to meet and confer?

4          MR. KHAN:  I think, Your Honor, we could get that

11:26:01    5    done fairly quickly, you know, seven to ten days if that's

6    acceptable to Ms. Hartzell and to you.

7          MS. HARTZELL:  I was going to suggest 14 days, but

8    generally the same time frame I think.

9          THE COURT:  Okay.  So I will give you, let's look at

11:26:20    10    the calendar, I will give you 14 days.  Let's go until May

11    12th for you to submit a joint report describing your

12    deposition plan.

13          Now, just to keep us all accountable, I am going to

14    set this for a hearing the following week.  I'm expecting --

11:26:48    15    and it would be totally great if you all can agree on

16    everything.  I would be very pleased with you if you were to

17    agree on everything and come to me with a very concise little

18    plan of what we've agreed to do.

19          However, in the event that you do not, we will set

11:27:05    20    this for a hearing, we will set this for hearing on May 18th.

21    And I'll set it at, does 11:00 o'clock work for you all?  I

22    want to give you my undivided attention and not have you sit

23    through other, my full motion call.  Is 11:00 o'clock okay?

24          MS. HARTZELL:  Yes, Your Honor.

11:27:40    25          THE COURT:  Okay, okay.  So we'll hold that for a

1    status.  I'll have your report in hand.  If there is any

2    disputes, you can flag them in your report, but I'm hoping

3    there will be none.  And at that time I'll enter dates so that

4    we can keep this moving.

5    11:27:56    I'm going to keep the trial as it is right now.  But

6    you heard me, I'm more interested in fairness and thoroughness

7    than speed here.  So I'm holding that trial.  I'm hopeful that

8    we can work through this and keep that trial date.  If at some

9    point it feels like we cannot, I will be flexible, okay.

10   11:28:22    MS. HARTZELL:  Thank you, Your Honor.

11               THE COURT:  Okay.  Anything else for me?

12               MR. KHAN:  Your Honor, I had two minor issues that I

13   would like to --

14               THE COURT:  Sure.

15   11:28:29    MR. KHAN:  -- make sure that, you know, either, you

16   know, we get your views today or we can take it up in the meet

17   and confer with Ms. Hartzell and her team.  But the first is,

18   of course, in the interest of fairness, you know, we already

19   took these depositions without the disclosures in hand, and so

20   11:28:46  at minimum we think sort of Baxter should have to compensate

21   us for having to take these depositions again.  That is

22   something we can discuss with Ms. Hartzell, unless the Court

23   has a ruling that it wants to make on the issue.

24               THE COURT:  I'm sorry, you cut out there.  You want

25   11:29:01  Baxter to pay for these depositions?  Is that what I heard?

1    MR. KHAN:  Yeah.  I mean, in fairness there should be

2    cost shifting for any additional work that we're having to do

3    as a result of Baxter's late disclosures.

4    THE COURT:  Okay.  I'm going to hold that ruling -- I

5    understand your position.  I understand your position.  I will

6    think about that and we can discuss it at the next hearing.

7    MR. KHAN:  Thank you, Your Honor.  And, you know, if

8    any briefing would be useful on that, we're happy to provide

9    it.

10   The second issue is --

11   THE COURT:  You know, yeah, I understand.  I

12   understand I have a lot of discretion here.  It's not new.

13   It's kind of newish, but not really newish, right.  This is, I

14   think, the difficulty here, I understand your position,

15   Mr. Khan, it's all new.  Ms. Hartzell is like, No, it's not.

16   And the truth I think is somewhere in the middle.  And so it's

17   not the clear-cut case for me where if they had picked four

18   witnesses that you knew nothing about, had never laid eyes on,

19   didn't even know their names, then I would think we would be

20   talking about a fee sanction.  But this is not really that

21   case.

22   So I would be reluctant to order fees.  But, you

23   know, perhaps, you know, we could talk about it at the next

24   hearing.  Perhaps, you know, if you agree on a minimal

25   deposition, I'll reserve.  I note your request, but I won't --

1    but I think you kind of know what I'm thinking, Mr. Khan.

2             MR. KHAN:  Thank you.

3             THE COURT:  Yes.

4             MR. KHAN:  Thank you, Your Honor.

11:30:44    5             And the second item that I wanted to raise was again

6    in the interest of fairness, you know, the sole basis for

7    granting summary judgment of our invalidity case, which is

8    sort of a core part of the liability case obviously, was that

9    our expert, you know, didn't sort of line up in exactly the

11:30:59   10   way that Judge Kendall had in mind sort of the claim

11   construction with his opinions.  And so I think we should be

12   allowed to revisit that issue, of course, the Court in its

13   discretion can revisit that, insofar as the sole basis was the

14   format of the invalidity expert report's opinion.

11:31:20   15             And so, again, I can take that up with Ms. Hartzell

16   and her team offline and we could come back and discuss it at

17   the hearing if that's acceptable.

18             THE COURT:  Feel free to discuss it with

19   Ms. Hartzell.  I will say that my general feeling is I'm not

11:31:37   20   going to go back on what another judge said, except, I mean,

21   if you want to file a motion to reconsider, although I don't

22   even know if it will be timely at this point, you know, I'm

23   not going to be redoing things of the past.

24             You know, Baxter doesn't have an expert on damages

11:31:53   25   because of what Kendall ruled.  So I'm not inclined to change

44

1    Judge Kendall's rulings, and so I'm not inclined to revisit

2    that issue.  Feel free to discuss it with Ms. Hartzell, but

3    it's unlikely that I would revisit that issue.

4         MR. KHAN:  Thank you, Your Honor.  Appreciate you

11:32:12   5    hearing us out on those two issues.

6         THE COURT:  Okay.  Anything else, Ms. Hartzell?

7         MS. HARTZELL:  No, Your Honor.

8         THE COURT:  Okay.  Okay.  Well, thank you.  And we'll

9    see you next month.

11:32:25   10        MS. HARTZELL:  Thank you.

11        THE COURT:  Thank you.

12        MR. KHAN:  Thank you, Your Honor.

13        (Proceedings concluded)

14                   C E R T I F I C A T E

15        I, Jennifer S. Costales, do hereby certify that the

16   foregoing is a complete, true, and accurate transcript of the

17   proceedings had in the above-entitled case before the

18   Honorable NANCY L. MALDONADO, one of the judges of said Court,

19   at Chicago, Illinois, on April 28, 2023.

20

21                        /s/ Jennifer Costales, CRR, RMR, CRC

22                        Official Court Reporter

23                        United States District Court

24                        Northern District of Illinois

25                        Eastern Division