**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BAXTER INTERNATIONAL, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | **Case No.: 1:15-cv-09986** |
| v. | ) | |
| | ) | **Judge Nancy L. Maldonado** |
| CAREFUSION CORPORATION, and | ) | |
| BECTON, DICKINSON AND COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS CAREFUSION CORPORATION AND BECTON, DICKINSON AND
COMPANY'S OPPOSITIONS TO BAXTER INTERNATIONAL INC.'S
MOTIONS *IN LIMINE* REGARDING DAMAGES**

**[REDACTED]**

# TABLE OF CONTENTS

Page

I. RESPONSE TO BAXTER MIL 1: EVIDENCE THAT THE '805 PATENT IS A COMBINATION OF KNOWN ELEMENTS IS PROBATIVE OF THE MINIMAL VALUE OF THE CLAIMED INVENTION ...............................................................................1

II. RESPONSE TO BAXTER MIL 2: CAREFUSION'S AND OTHERS' PRIOR ART PATENTS ARE DIRECTLY RELEVANT TO DAMAGES....................................................4

III. RESPONSE TO BAXTER MIL 3: THE REBUTTAL LICENSES PROVIDE NECESSARY CONTEXT TO BAXTER'S NON-COMPARABLE LICENSES. ................6

IV. RESPONSE TO BAXTER MIL 4: THE COLLEAGUE RECALLS ARE RELEVANT TO THE PURPORTED VALUE OF THE '805 PATENT. ...........................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Astrazeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015) ................................................................................................ 3

*AVM Techs., LLC v. Intel Corp.*,
    No. CV 15-33-RGA, 2017 WL 1787562 (D. Del. May 1, 2017) .......................................... 5

*Betts v. City of Chicago, Ill.*,
    784 F. Supp. 2d 1020 (N.D. Ill. 2011) ................................................................................ 12

*Boston Sci. Corp. v. Cook Med. LLC*,
    2023 WL 2411277 (S.D. Ind. Feb. 2, 2023) .................................................................. 5, 13

*Chatman v. Bd. of Ed. of Chicago*,
    2020 WL 5110380 (N.D. Ill. Aug. 31, 2020) ...................................................................... 11

*Dexcowin Global, Inc. v. Aribex, Inc.*,
    No. CV 16–143–GW(AGRx), 2017 WL 3478492 (C.D. Cal. June 29, 2017) ................... 15

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) ........................................................................................ 3, 4

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,
    879 F.3d 1332 (Fed. Cir. 2018) ........................................................................................ 3, 5

*Freeman v. Ocwen Loan Servicing, LLC*,
    2023 WL 2613641 (S.D. Ind. Mar. 23, 2023) .................................................................... 11

*Fresenius Med. Care Holdings, Inc., v. Baxter Int'l, Inc.*,
    2006 WL 1646113 (N.D. Cal. June 12, 2006) ......................................................... 12, 14, 15

*Georgia Pacific Corp. v. U.S. Plywood Corp.*,
    318 F.Supp. 1116 (S.D.N.Y.1970) ...................................................................................... 3

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ............................................................................................ 5

*Mass Engineered Design, Inc., v. Planar Sys., Inc.*,
    2017 WL 11820360 (D. Or. Aug. 31, 2017) ........................................................................ 6

*Olson v. Ford Motor Comp.*,
    410 F.Supp. 2d 869 (D.N.Dakota 2006) ............................................................................ 15

*Physicians Healthsource, Inc. v. Alma Lasers, Inc.*,
    2014 WL 6561781 (N.D. Ill. Nov. 20, 2014) ........................................................................ 11

*PSN Illinois, LLC v. Abbott Labs.*,
    09 C 5879, 2012 WL 5381278 (N.D. Ill. Oct. 31, 2012) .................................................. 15

*Rao v. Gondi*,
    2017 WL 4278542 (N.D. Ill. June 26, 2017) (exhibits identified in the pre-trial
    exhibit list) .................................................................................................................................. 11

*Retractable Techs. Inc. v. Becton, Dickinson & Co.*,
    2:07-CV-250, 2009 WL 8725107 (E.D. Tex. Oct. 8, 2009) ........................................... 5, 6

*Wonderland NurseryGoods Co., Ltd. v. Thorley Indus., LLC*,
    CIV.A. 12-196, 2014 WL 241751 (W.D. Pa. Jan. 22, 2014) ............................................ 5

## TABLE OF EXHIBITS

| 19 | File History of U.S. Patent No. 85,782,805 (excerpted) |
|----|---------------------------------------------------------|
| 20 | Transcript of Supplemental Deposition of Kenneth Lynn, July 26, 2023 (excerpted) |
| 21 | Transcript of Supplemental Deposition of Dennis Vaughn, July 24, 2023 (excerpted) |
| 22 | Transcript of Supplemental Deposition of Debra Bello, August 4, 2023 (excerpted) |
| 23 | Transcript of Deposition of Jennifer Sipple, March 29, 2017 (excerpted) |
| 24 | Transcript of Deposition of Eric Sato, April 13, 2017 (excerpted) |
| 25 | Massachusetts General License Agreement between Massachusetts General Hospital and Alaris Medical Systems, Inc., October 12, 2001 |
| 26 | Hearing Transcript, April 28, 2023 |
| 27 | Patent License Agreement between Cardinal Health 303 Inc. and Cerner Corporation, December 29, 2006 |
| 28 | Defendants' First Set of Discovery Requests to Plaintiff Baxter International, Inc., June 10, 2016 (excerpted) |
| 29 | Baxter Press Release, "Baxter to Recall Colleague Infusion Pumps in U.S.," May 3, 2010 |
| 30 | Colleague Volumetric Infusion Pump Transition Guide |
| 31 | Baxter's Supplemental Responses to Defendants' First Set of Interrogatories, Nos. 1, 3 & 5, dated March 3, 2017 (excerpted) |
| 32 | Expert Report of Warren P. Heim on Infringement, March 13, 2020 (excerpted) |
| 33 | Expert Report of Gregg R. Kirkpatrick regarding Non-Infringement, dated October 14, 2020 (excerpted) |
| 34 | U.S. Patent No. 5,782,805 |
| 35 | Baxter's Webpage, "Our History," last accessed September 27, 2023 |

All of the evidence Baxter seeks to preclude is directly relevant to the determination of a reasonable royalty under the *Georgia-Pacific* factors, and none is unduly prejudicial or misleading in light of its significant probative value. A common and self-serving theme runs through Baxter's motions: limit the scope of relevant CareFusion evidence that the jury must consider, so that Baxter can artificially inflate the importance of the claimed invention and, therefore, inflate its value and the amount of reasonable royalty. Baxter should not be permitted to leave jurors with the impression that the only relevant patent in this field is the '805 patent and that the only relevant damages evidence is what Baxter seeks to put forward. Baxter's motions should be denied.

## I. RESPONSE TO BAXTER MIL 1: EVIDENCE THAT THE '805 PATENT IS A COMBINATION OF KNOWN ELEMENTS IS PROBATIVE OF THE MINIMAL VALUE OF THE CLAIMED INVENTION

Contrary to Baxter's motion, CareFusion does not seek to relitigate the Court's findings with respect to anticipation, obviousness, or indefiniteness.[1] But evidence that the '805 patent is a combination of known elements (the most important of which were undisputedly known) is highly relevant to the *Georgia-Pacific* and reasonable royalty analysis. This evidence is probative of the extent to which the patented combination provided value over the prior art, and will provide the jury with crucial context about infusion pump technology at the time of the hypothetical negotiation. Baxter's motion invites legal error by seeking to preclude this highly relevant evidence.[2]

---

[1] Baxter's motion overzealously suggests that this Court's prior orders have fully resolved all arguments regarding the written description of the '805 patent. Not so. CareFusion has argued that the Alaris System does not perform the algorithms claimed in the '805 patent because the written description of the patent specification does not disclose the algorithms that Baxter's technical expert Warren Heim identified in his report. *E.g.,* Dkt. 157 at 9-13. On summary judgment, after considering CareFusion's argument that "Heim's algorithms are 'invented' by Heim and are not found within the patent" the Court expressly held that "Defendants are free to attac[k] the sufficiency of Heim's algorithms through rebuttal expert testimony and cross examination." Dkt. 432 at 17-19.

[2] Baxter never articulates what evidence it seeks to preclude in its motion, and requests a broad ruling that would exclude "**any** evidence or arguments that the '805 patent is the combination known elements." Dkt. 553 at 3.

Claim 1 of the '805 patent recites "an infusion pump comprising: a main body portion; a display contained on the main body portion ... ; at least one pump module removably secured to the main body portion ... ; an auxiliary display contained on the pump module ... ; and means for generating a plurality of pictoral graphic representations ... ; wherein a plurality of sets of configuration parameters are included as user interface information." Ex. 34 at 20:12-32. Following several rejections over the prior art, the Patent Office allowed claim 1 ***only*** after Baxter amended the claim to specify that the invention is a combination of elements that specifically includes a "***means for generating*** a ***pictoral graphic*** representation as user interface information on the main display." Ex. 19 at BII-00000689. This "means for" language limits Baxter's claims to the ***specific*** computer algorithms for the user interface and graphics in the patent. *See* Dkt. 191 at 4-7.

It is undisputed—and nowhere in its motion does Baxter deny—that claims of the '805 patent include many known elements. For example, Kenneth Lynn, one of the inventors of the '805 patent, conceded that the most important of the technologies referenced in the claims were already known in the field at the time of the '805 patent filing.[3] CareFusion must be allowed to present evidence that those and other elements of the claims were already known in the prior art[4] so that the jury does not improperly award damages for technologies that were known prior to the '805 patent filing date, and instead awards damages for only the incremental value of the patented combination.[5]

---

[3] *See* Ex. 20 at 36:10-15 (infusion pumps existed before the '805 patent); 36:16-22 (infusion pumps with a main body already existed); 37:3-7 (infusion pumps that could display user interface information on the main body already existed); 32:15-18 (pumps with removable modules already existed); 38:14-19 (modules with auxiliary displays already existed); 39:1-5 (user interface information on an infusion pump display already existed); 39:10-14 (microprocessors used to generate user interface information already existed); 44:17-45:5 (infusion pumps that allowed configuration parameters already existed).

[4] *See, e.g.*, Ex. 32 ¶¶ 639 ('805 patent is a "combination" of configuration parameters, modular design, and pictoral graphics), 645 ( "special benefits" of the '805 patent "primarily relate to the combination of features within the infusion pump"); Ex. 33 ¶¶ 80-82 (no benefit from the '805 combination).

[5] The Court should reject Baxter's motion and allow the jury to hear evidence that includes, e.g.: fact testimony (including from Mr. Lynn) addressing what was known in the field of infusion pump

Evidence about the field of infusion pump technology and the extent to which elements of the claimed combination were already known is relevant to at least *Georgia-Pacific* factors 9, 10, and 13. *See, e.g.*, *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332 (Fed. Cir. 2018) (reversible error not to allow defendant, as part of its damages case, to show "the jury the small differences between the invention and prior art" to demonstrate that "many of the benefits [plaintiff] attributed to the [patent] were already present in the prior art"). In determining the value of a patent that, as here, "combines 'old elements' . . . the question is how much new value is created by the novel combination, beyond the value conferred by the conventional elements alone." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015) (*Georgia-Pacific* factors 9, 10, and 13 "take[] account of the inventive contribution in determining the royalty rate that would have emerged from the hypothetical negotiation); *see also Exmark*, 879 F.3d 1348-49; *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1233 (Fed. Cir. 2014) ("patent holder should only be compensated for the approximate **incremental benefit** derived from his invention"); *Georgia Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y.1970).

There is a simple reason why Baxter seeks to exclude evidence that the '805 patent is a combination of known elements: Baxter wishes to artificially inflate the novelty of the claimed invention over the prior art and, thus, its value to the jury.[6] In the recent depositions, Baxter's fact

---

technology prior to the '805 patent; the '805 patent file history in which Baxter articulated the difference between its claimed invention and the prior art; expert testimony about what would have been known to a person of ordinary skill in the art (*see, e.g.*, Ex. 33 ¶¶ 28-36, 71-82); and innovations by CareFusion and its predecessors (*see, e.g., id.* ¶¶ 30, 77, 82 and documents cited).

[6] The evidence Baxter seeks to broadly exclude would include evidence of CareFusion's own patents and innovations in the field of infusion pump technology, which Baxter also seeks to exclude in its MIL 2. *See* pp. 4-6, *infra*. However, Baxter's MIL 2 states that "substantial other evidence [is] available to Defendants to establish the state of the art at the time, including . . . evidence of earlier infusion pump products, and witness testimony about the development of Defendants' accused product." Dkt. 553 at 7. Baxter is clearly trying to have it both ways: preclude evidence that establishes the state of the art (and that the '805 patent is a combination of known elements), and in the next breath concede

witnesses variously characterized the invention and its benefits in ways that do not reflect that it was, at best, an incremental improvement over the prior art.[7]  In order for the jury to properly assess the value of the '805 patent—and ensure they do not mistakenly award damages for prior technological contributions—the jury needs comprehensive evidence of the infusion pump technologies that existed prior to the '805 patent.  That Baxter fears this contextualizing evidence will lead the jury to a lesser damages award is not sufficient to exclude it.  *See Ericsson*, 773 F.3d at 1233.

## II.  RESPONSE TO BAXTER MIL 2: CAREFUSION'S AND OTHERS' PRIOR ART PATENTS ARE DIRECTLY RELEVANT TO DAMAGES.

Baxter's motion assumes (incorrectly and without support) that CareFusion will use its own and competitors' prior art patents—including the Eggers, Kerns,[8] and Gargano patents—to improperly argue noninfringement.  Baxter ignores that these patents are directly relevant to damages, as explained above with respect to Baxter MIL 1, and/or to showing the operation of CareFusion's accused product.  Baxter's attempt to exclude all evidence regarding the state of the art prior to the '805 patent and CareFusion's patent-protected features would leave the jury with the misimpression that the '805 patent was the only patent the parties had, and was a groundbreaking innovation in the field of infusion pump technology rather than an incremental improvement.  That is clearly flawed and impermissible.

---

that CareFusion can present some evidence of the prior art (as long as Baxter deems that evidence relevant).  But, as discussed further below, it is entirely proper for CareFusion to use, *e.g.*, its patents to explain the state of the art and for damages purposes.  *See* p. 5, *infra* (citing cases).

[7] *See* Ex. 20 at 20:24-21:4 (describing invention as a "constructed work flow and how a clinician would interface with a machine"); Ex. 21 at 22:19-23:6 (describing invention as "[t]he graphical user interface," "[t]he modularity of the device," and "that you can actually set up the device for individual care areas"); Ex. 22 at 17:10-15 (describing invention as "the design of the Colleague pump").

[8] Baxter's brief wrongly implies that the Kerns patent belongs to CareFusion.  The Kerns patent was issued in 1988 to American Hospital Supply Corporation, which is a Baxter subsidiary.  *See* Ex. 35 at 6.  Essentially, Baxter seeks to prevent CareFusion from discussing **Baxter's own technology** from the 1980s, so that Baxter can imply that technology claimed by the '805 patent a decade later was new.

As set forth above, it would be reversible error to exclude testimony and evidence regarding CareFusion's patents relevant to showing the state of the art and the extent to which the claimed invention represented an advancement over the prior art. *Exmark*, 879 F.3d 1352 (district court "abused its discretion by holding that prior art is relevant to damages only to the extent that the prior art was commercialized"). And contrary to Baxter's assertions, it is entirely proper for CareFusion to use its (and others') patents to explain both the state of the art and for damages purposes. *See id.* at 1351-52; *Boston Sci. Corp. v. Cook Med. LLC*, 2023 WL 2411277, at *4 (S.D. Ind. Feb. 2, 2023) (defendant's patents admissible "as evidence in relation to damages" and "[c]ourts routinely admit such evidence for these purposes"); *AVM Techs., LLC v. Intel Corp.*, 2017 WL 1787562, at *4 (D. Del. May 1, 2017) ("The existence of [defendant's own] patents is relevant to the hypothetical negotiations and to the calculation of a reasonable royalty[.]"). Indeed, courts have found evidence of a defendant's patents relevant to the *Georgia-Pacific* analysis, including at least factors 9 and 13. *E.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1335 (Fed. Cir. 2009) (alleged advantages of patent over prior art under factor 9); *Retractable Techs. Inc. v. Becton, Dickinson & Co.*, 2009 WL 8725107, at *8 (E.D. Tex. Oct. 8, 2009) (defendant's patents relevant to factor 13). Moreover, under *Georgia-Pacific* factor 13, CareFusion should be permitted to present evidence of its own patents to show that the extent to which the value of the Alaris accused product is attributable to **CareFusion's own innovations**, and not the algorithms for generating pictoral graphics claimed by the '805 patent. *See, e.g., Exmark*, 879 F.3d at 1350 (vacating damages award where plaintiff's expert "problematic[ally] ... ignore those components" covered by defendant's patents); *Wonderland NurseryGoods Co., Ltd. v. Thorley Indus., LLC*, 2014 WL 241751, at *2 (W.D. Pa. Jan. 22, 2014) (evidence of defendant's patents relevant to "improvements added by the infringer").

Baxter does not identify a **single** instance in which CareFusion has suggested it does not infringe merely because of the existence of CareFusion patents or Baxter's 1988 Kerns patent.

CareFusion does not intend to so argue. Baxter cannot credibly argue that it would be prejudiced by CareFusion's use of its own patents, such as the Eggers patent (which explains, *e.g.*, the relevant circuitry within the Alaris Point-of-Care Unit (PCU")) to show how the accused Alaris product works. *See, e.g., In re Biogen '755 Pat. Litig.*, 2018 WL 3613162, at *6-7 (D.N.J. July 26, 2018) (defendant's patents relevant to understanding the accused product); *Schwendimann v. Arkwright Advanced Coating, Inc.*, 2017 WL 4277142, at *2 (D. Minn. Sept. 25, 2017) (defendants' patents relevant to showing noninfringing feature in accused products); *Retractable Techs.*, 2009 WL 8725107, at *8 (defendant's patents "relevant to a reasonable royalty analysis"); *Mass Engineered Design, Inc., v. Planar Sys., Inc.*, 2017 WL 11820360, at *6 (D. Or. Aug. 31, 2017) (defendant's patents "relevant and not unfairly prejudicial or unreasonably confusing").

## III. RESPONSE TO BAXTER MIL 3: THE REBUTTAL LICENSES PROVIDE NECESSARY CONTEXT TO BAXTER'S NON-COMPARABLE LICENSES.

Baxter objects to CareFusion's production of just two documents during the Court-ordered supplemental damages discovery period: a license between ███████████████████████████ ████████████████████████ and a license between ███████████████████████ ███████████████████████ (together, "Rebuttal Licenses"). CareFusion does not intend to introduce or rely on the Rebuttal Licenses except for just that: in rebuttal should Baxter be permitted to use its own licenses with Cerner Corporation ("Cerner License") and Massachusetts General Hospital ("MGH License").[9] Baxter ignores that it has *always* been aware of the Rebuttal Licenses. Baxter also fails to acknowledge that during the original fact discovery period Baxter provided no disclosure whatsoever regarding its damages theories and certainly no contentions

---

[9] CareFusion has moved to exclude the Cerner and MGH Licenses as not probative of a reasonable royalty while presenting an undue risk of confusion and prejudice. Dkt. 550 at 1-6. CareFusion will not introduce the Rebuttal Licenses if this Court grants CareFusion MIL 1.

suggesting reliance on its Cerner or MGH Licenses. Then, during the supplemental discovery period, Baxter injected vast amounts of new evidence into the case, including through four fact witness depositions, 18 pages of supplemental interrogatory responses, and supplemental initial disclosures relating to Baxter's Cerner and MGH Licenses.[10] If Baxter is permitted to rely on its Cerner and MGH Licenses to support its new damages claims, fairness requires that CareFusion be allowed to respond, including by providing the jury with contextual rebuttal evidence such as the Rebuttal Licenses. As explained below, CareFusion's production of the Rebuttal Licenses was both justified and harmless at least because Baxter was aware of both licenses and would not be prejudiced by allowing CareFusion to use the licenses to rebut Baxter's own supplemental evidence, any purported prejudice could be cured in the remaining six months before trial, and CareFusion did not act in bad faith or willfully.

*First*, Baxter cannot claim that it was surprised by the Rebuttal Licenses because it was aware of both licenses during the original fact discovery period. The Cerner License that Baxter produced expressly references the Rebuttal ▮▮▮ License. Dkt. 552-3 at Recital A. The Rebuttal ▮▮▮ License was also discussed (1) by CareFusion's 30(b)(6) witness on licensing, Ex. 23 (99:23-100:12); (2) by Baxter's 30(b)(6) witness on licensing, Ex. 24 (28:23-29:8); (3) in Baxter's now-excluded damages report, Dkt. 552-6 at ¶79; and (4) in CareFusion's damages report, Dkt. 552-7 at 46. Baxter was also aware of the Rebuttal ▮▮▮ License, which ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ Ex. 25. Baxter witness Kenneth Lynn confirmed Baxter has *always* been aware of the Rebuttal ▮▮▮ License, stating

---

[10] Baxter introduced evidence regarding the purported licensing policy of MGH inventor Nathaniel Sims, Dkt. 552 at 12, Dkt. 550 at 5; Baxter's purported patent licensing "preference[s]", Dkt. 552 at 12; anecdotes regarding "clinicians identifying features of the Colleague pump that they liked," Dkt. 550 at 11-12; anecdotes regarding "customers [who] loved the Colleague pump," *id.* at 12; the purported economic benefit of the Colleague to hospitals, *id.*; anecdotes relating to customer resistance to the FDA recall of the Colleague pump, *id.*; Baxter's intent to rely on the non-comparable Cerner, Care Everywhere, and Caesarea licenses, Dkt. 486 at 8; Baxter's intent to rely on the ▮▮▮▮▮▮▮ in the MGH license as applied to average sales price of the PCU, Dkt. 552-1 at 8; Baxter's plan to call fact witnesses Kenneth Lynn and Debra Bello to support its damages case, Dkt. 486 at 8-9.

that Baxter licensed the MGH patents to "competitors," ████████ Dkt. 552-12 (124:10-17). The Rebuttal Licenses are therefore no more "newish," as the Court noted, than the Baxter supplement contentions and evidence to which they respond. Ex. 26 (42:11-21).

**Second**, Baxter will not be prejudiced if CareFusion is permitted to introduce the Rebuttal Licenses to contextualize the Cerner and MGH Licenses. Baxter claims it could not take "follow up discovery" or "elicit testimony" from experts. Dkt. 553 at 9. Baxter never identifies any "follow up discovery" that would be needed and could have timely requested any such discovery when CareFusion served the Rebuttal Licenses. Baxter did not. Moreover, Baxter does not dispute that the technologies licensed by the Rebuttal Licenses and their Baxter counterparts are the same: the Cerner and Rebuttal ███ Licenses both cover the same technology ████████ oftware, and the MGH and Rebuttal ███ Licenses both ████████ (which this Court determined is not accused of infringement, Dkt. 286 at 2). Baxter's technical expert has therefore already addressed the technologies covered by the Rebuttal Licenses in his report. Dkt. 552-8 at ¶¶647-648. And even if Baxter's damages expert had addressed the Rebuttal Licenses, those opinions would nevertheless have been excluded due to her failure to apportion. Dkt. 434 (excluding **all** damages opinions, including those related to licenses.

A similar scenario has already played out before this Court: CareFusion previously moved to strike Baxter's supplemental damages evidence and noted that it would have sought additional discovery on, e.g., the Cerner license, had CareFusion known Baxter would attempt to rely on that license notwithstanding the fact that every expert found it noncomparable and irrelevant. Dkt. 514 n.6 and Ex. 26 (17:17-18:5). The Court denied CareFusion's motion and permitted limited depositions of certain Baxter fact witnesses. Dkt. 527. Any prejudice (there is none) could similarly be cured by allowing Baxter a supplemental deposition of CareFusion's licensing witness to mirror the remedy granted to CareFusion for Baxter's late disclosures. Such deposition would not disrupt trial, which is

nearly six months away, and Baxter previously asserted that as little as four months is sufficient to cure any prejudice resulting from production. *See* Dkt. 453 at 5 (arguing in mid-August 2023 that proposed damages supplement would not disrupt early December 2023 trial); *see also* Dkt. 530 at 7-8.

By contrast, to the extent the Court permits Baxter to rely on the Cerner and MGH Licenses, the prejudice to CareFusion in excluding the Rebuttal Licenses would be extreme. The Court allowed Baxter to submit significant supplemental damages disclosures and evidence after the close of the original discovery period. Critically, this supplemental evidence included Baxter's newly disclosed intention to rely on the (1) non-comparable Cerner License that, until recently, both sides agreed was not relevant to this case, and (2) the MGH License to support a ██████ applied to the average selling price of the PCU, a calculation that Baxter did not perform in its damages expert report or otherwise disclose before supplemental fact discovery. Dkt. 552; 552-1. As CareFusion explains in its MIL 1, both the Cerner and MGH Licenses are noncomparable and should be excluded. Dkt. 550 at 1-6. But if this Court permits Baxter to rely on these noncomparable licenses and new damages theories, CareFusion should be permitted to respond, including by using the Rebuttal ██████ ████ Licenses to provide contextualizing rebuttal evidence. For example, if allowed, Baxter will now, for the first time, use the Baxter-Cerner license to advocate for a $250 per unit royalty rate, which would result in a total royalty of about ██████ ($250 x ██████). Dkt. 552 at 15; Dkt. 552-1 at 7. But, as the Rebuttal ████ License shows, the underlying patents were licensed to ██████ ██████. The jury is entitled to hear that the royalty to which Baxter claims entitlement in this litigation is several orders of magnitudes greater than the value of the underlying patent rights in the real world. Similarly, the Rebuttal ████ License would show the jury that a license to the ██████ ██ ████████████████████ ██ ██ ████ ████████████████████████████████████████████ ██████████████ Ex. 25 at 4.1 and Dkt. 552-1 at 8. Baxter is also attempting

to inject a previously undisclosed "under 10%" purported standard royalty rate for infusion pump technology. *See* CareFusion MIL 2, Dkt. 550 at 6-8. The Rebuttal Licenses contradict the existence of any standard royalty rate.

**Third**, contrary to Baxter's conclusory assertions, CareFusion did not act willfully or in bad faith. Neither the MGH nor Cerner Licenses upon which Baxter now relies were the focus of fact discovery and Baxter never disclosed that it intended to rely on them. Indeed, both sides agreed the Cerner License was not relevant, and it was not until the recent supplemental discovery period that Baxter took the opposite position.

With respect to the Rebuttal ████ License, **neither** party's written discovery during the original fact discovery period suggested that the MGH License would be relevant. Nor did Baxter ever request production of the Rebuttal ████ License despite being aware of its existence. Nevertheless, CareFusion did conduct a reasonable search for licenses relating to Guardrails and other drug library technology during the original discovery period.[11] It did not identify the Rebuttal ████ License, which was a ████████████████████████████████████████.[12] Ex. 25 (October 12, 2001 effective date). Moreover, the Court had excluded Guardrails from this case before CareFusion served its damages report, Dkt. 552-7 at 45 n.271, so CareFusion had no reason to search for licenses relating to that non-accused technology then. *See* Dkt. 553 at 9. It was only during the supplemental damages period when Baxter put a spotlight on the MGH License and, for the first time, the purportedly expansive licensing policy of Dr. Sims (*see* CareFusion MIL 1, Dkt. 550 at 5-6),

---

[11] CareFusion produced more than 1,433,227 pages of documents in this case and conducted a diligent search by, for example, speaking to key in-house witnesses and searching the relevant files in conjunction with an in-house paralegal.

[12] Alaris Medical was acquired by Cardinal Heath. CareFusion later spun off from Cardinal Health before subsequently being acquired by Becton Dickinson. When Becton Dickinson acquired CareFusion, this case had not yet been filed and there was no litigation hold.

that CareFusion had cause to consider MGH's license portfolio more broadly. In addressing Baxter's

new damages arguments, CareFusion became aware of the Rebuttal ███ License and produced it to

Baxter shortly after discovering it. CareFusion did not "s[i]t on" the Rebuttal ███ License "until

after the close of discovery," and there is no evidence of bad faith. *Chatman v. Bd. of Ed. of Chicago*,

2020 WL 5110380, at *5 (N.D. Ill. Aug. 31, 2020).[13] Baxter's baseless bad faith allegations ignore its

own obligation and failure to produce the Rebuttal ███ License. Baxter knew that the patents it co-

owned with MGH were licensed to multiple competitors, including ███. *Supra* 7-8. Accordingly,

Baxter should have produced all such licenses in response to CareFusion's request for "[a]ll documents

constituting, referring, or relating to any patent licenses or patent license offers or negotiations related

… to infusion pump technology or other drug or fluid delivery technology." Ex. 28 at 8.

   With respect to the Rebuttal ███ License, Baxter cannot identify **any** evidence or prior

discovery that suggests the relevance of the Cerner License before Baxter's December 2022

supplemental interrogatory response. *See* Dkt. 550 at 1-3. ███████ license falls within Baxter's

requested production of licenses concerning the "Accused Products," Dkt. 553 at 9, because ███

███████ concern technology related to the Cerner Software and its use with non-accused third-

party pumps. Ex. 27; Dkt. 552-3. ***Every expert in this case*** agreed that the Cerner License is

noncomparable and those opinions are unrebutted to this day. *See* CareFusion MIL 1, Dkt. 550 at 2-

3. Baxter knew about the Rebuttal ███ License (p. 7, *supra*) and never requested its production,

likely because Baxter agreed that the Cerner licenses were not relevant. Now that Baxter has taken a

---

[13] Baxter cites no facts or case law supporting bad faith. Dkt. 553 at 10. In any event, its other cited
cases involve conduct not at issue here. See *Rao v. Gondi*, 2017 WL 4278542 (N.D. Ill. June 26, 2017)
at *1-2 (exhibits identified in the pre-trial exhibit list); *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*,
2014 WL 6561781 at *2 (N.D. Ill. Nov. 20, 2014) (defendant repeatedly requested the unproduced
documents); *Freeman v. Ocwen Loan Servicing, LLC*, 2023 WL 2613641, *2-4 (S.D. Ind. Mar. 23, 2023)
(failure to produce records received during litigation and misrepresentation of scope of production).

position contrary to its position during fact and expert discovery and has made its Cerner agreement the centerpiece of its damages case, Baxter cannot claim bad faith or willfulness when CareFusion seeks to respond with rebuttal evidence.

## IV.   RESPONSE TO BAXTER MIL 4: THE COLLEAGUE RECALLS ARE RELEVANT TO THE PURPORTED VALUE OF THE '805 PATENT.

Baxter intends to introduce evidence of the success of the Colleague pump as a proxy for the value of its '805 patent, but invites legal error by seeking to withhold from the jury crucial evidence about the multiple Colleague recalls—a process that began in 1999 and culminated over a decade later when the FDA issued a recall and destroy order in April 2010.[14]  Ex. 29.  Following the 2010 FDA recall and destroy order, Baxter offered to either purchase the Alaris pump (that Baxter accuses of infringement in this case) as a replacement for the Colleague, or replace the Colleague with other infusion pumps—**none** of which have ever been alleged to practice the '805 patent.  Ex. 30; Ex. 31 at 7-9.  Baxter then began marketing and selling the SIGMA Spectrum pump that does *not* practice the '805 patent, yet achieved substantially the same success as with the Colleague.  Ex. 21 at 56:16-57:4.  Evidence of the recalls and Baxter's subsequent conduct is directly relevant to several of the *Georgia-Pacific* factors that the jury may consider in determining whether to award a reasonably royalty.  *See Fresenius Med. Care Holdings, Inc., v. Baxter Int'l, Inc.*, 2006 WL 1646113, at *1 (N.D. Cal. June 12, 2006) (denying Baxter's MIL to exclude evidence of its product's recall relevant to a reasonable royalty); *see also Boston Sci. Corp.*, 2023 WL 2411277, at *4 (evidence of recalls is relevant to damages).  And, contrary to Baxter's assertions, CareFusion has no intention of introducing "inflammatory" evidence regarding patient harm or death.[15]  Instead, CareFusion seeks to provide the jury with a balanced perspective. It

---

[14] Baxter's motion fails to identify any specific document or testimony regarding the recall it seeks to preclude.  Dkt. 553 n. 4.  The Court may choose to defer ruling on the motion until Baxter has defined its request.  *See Betts v. City of Chicago, Ill.*, 784 F. Supp. 2d 1020, 1023 (N.D. Ill. 2011).

[15] If Baxter opens the door by, e.g., presenting evidence suggesting that the Colleague is a life-saving

is only fair that CareFusion be permitted to counter evidence of supposed benefits of the Colleague with evidence of its shortcomings. That Baxter did not replace the recalled Colleague with a product that practices the '805 patent is also relevant to the value and commercial success of the '805 patent.

As an initial matter, CareFusion strongly disputes Baxter's assertion that there is no evidence tying the recalls to the claimed invention. Mr. Lynn (an '805 patent inventor and Colleague developer) testified that one design flaw that the FDA identified related to the Colleague "work flow," which Mr. Lynn characterized as the claimed invention. *Compare* Ex. 20 at 145:2-20 *with* 87:16-89:13. And certain Colleague recalls stemmed from battery-related features that Baxter contends are covered by the '805 patent. *Compare* Ex. 20 at 91:10-24 *with* Ex. 32 at 25, 26 (battery charge level as example of a claim limitation). On those bases alone, the Court can and should deny Baxter's motion because the causes of the various Colleague recalls are an issue of fact for the jury. In any event, regardless of the precise **causes**, the **fact** of the recalls and Baxter's response thereto are evidence of the purported value and commercial success of the '805 patent and directly relevant to damages.

Baxter has made the purported success of the Colleague the centerpiece of its damages case. As such, it would be fundamentally unfair to limit the jury's access to all relevant evidence about that product. In its Supplemental Response to Interrogatory No. 8, Baxter identified significant evidence related to the Colleague as relevant to Baxter's claim for a reasonably royalty, including:

- Testimony from Mr. Lynn about the development of the Colleague, customer need for the Colleague, launch of the Colleague, and customer reception and volume of orders of the Colleague;

- Testimony from Dr. Bello about the development of the Colleague, a clinician's use and feedback of the Colleague, the market's needs for the Colleague and customer response to the Colleague; and

- Testimony from Mr. Vaughn regarding financial information for the Colleague, "including its commercial success, profitability, pricing, and market share over time," the recall of the

---

product, CareFusion reserves the right to respond with rebuttal evidence.

Colleague, and customer reception to the Colleague.

*See* Dkt. 552. In the supplemental depositions, Baxter's fact witnesses also provided self-serving and hearsay testimony about the Colleague that purportedly demonstrate the value and success of the '805 patent. CareFusion MIL No. 4, Dkt. 550 at 11-14; Ex. 20 at 146:4-149:7.

Notwithstanding its efforts to use the Colleague as a proxy for the value and success of the '805 patent, Baxter disingenuously claims that the Colleague recall "is not relevant to the issues to be decided in this case." Dkt. 553 at 11. But evidence of a recall of a patent-practicing product is "highly relevant to the calculation of a reasonable royalty under the *Georgia Pacific* framework." *Fresenius*, 2006 WL 1646113, at *1. Baxter previously sought—and failed—to preclude evidence of its product's recall in the *Fresenius* case. *Id.* In denying Baxter's motion, the court found the recall evidence was relevant to *Georgia-Pacific* factors 5, 7, 8, and 9 and determined that the "likelihood of unfair prejudice and jury confusion… is absent." *Id.* at *1-3. As in *Fresenius*, evidence of the multiple Colleague recalls would tend to show that, under *Georgia-Pacific* factor 8, the profitability, commercial success, and popularity of the accused Alaris System is ***not*** due to the patented technology, but rather to other factors such as a perceived difference in quality between the Alaris System and the Colleague. *Id.* at *1. Evidence of the Colleague recalls is also relevant to the terms of the hypothetical license, and the *Fresenius* court found that, under Factor 7, "[q]uality control problems of a competitor-licensor is likely to lead the licensee to re-negotiate for a lower royalty rate." *Id.* at *2. Evidence of the Colleague recalls is also relevant to the commercial relationship between CareFusion and Baxter under Factor 5: the *Fresenius* court found "[e]vidence of recalls tends to show that customers view Fresenius's machines as superior than…Baxter's machines." *Id.* The court explained that, in that case, evidence of recalls reduces the extent to which the products are said to be competitive, "which in turn would tend to reduce the royalty rate in the hypothetical negotiation." *Id.* This is highly salient here where ***Baxter offered to***

*buy Alaris System pumps for its customers* to replace the recalled Colleague pumps. Ex. 30.[16] The jury should also be permitted to hear that, following the 2010 destroy order, Baxter replaced the patent-practicing Colleague with the non-practicing SIGMA Spectrum pump with minimal impact to Baxter's bottom line. Ex. 21 at 56:16-57:4. Baxter's response is probative of the effect of the patented invention on profits—namely, that there was no effect of removing the patented invention from the marketplace—and clear evidence of the lack of "profits … due to the patented invention" considered in Factor 10. *Cf. PSN Illinois, LLC v. Abbott Labs.*, 2012 WL 5381278, at *2 (N.D. Ill. Oct. 31, 2012) (defendant's abandonment of drug program may be relevant to reasonable royalty).

If Baxter intends to extoll the purported advantages of the Colleague pump and use it as a proxy for the value of the '805 patent, it must also confront rebuttal evidence of a decade-long recall process that ultimately culminated in a destroy order by the FDA. And the jury should be permitted to hear evidence that Baxter chose to replace the Colleague with a product that did not embody the '805 patent. It is only with the full scope of Colleague-related evidence that the jury can make informed findings about the value, if any, of the '805 patent and the amount of a reasonable royalty.[17]

---

[16] *Olson v. Ford Motor Co.* is unavailing: that court excluded evidence of recalls on a different car model and car part than what was at issue in the case. 410 Supp. 2d 869, 875 (D.N.Dakota 2006). Even the *Fresenius* court found Baxter's reliance on this products liability case "misplaced." 2006 WL 1646113, at *3. *Dexcowin Global, Inc v. Aribex, Inc.*, is similarly inapposite as that court did not consider the relevance of the recall to a reasonably royalty analysis but rather to a lost profits damages theory. 2017 WL 3478492, at *15 (C.D. Cal. June 29, 2017) (nonetheless, permitting evidence of the recall but excluding particularly prejudicial documents).

[17] Relevant facts arising after the hypothetical negotiation may inform the reasonable royalty analysis. *See Fresenius*, 2006 WL 1646113, at *2; *Cummins-Allison Corp. v. SBM Co., Ltd.*, 669 F. Supp. 2d 774, 778 ("If there have been changes in the market between the date of the hypothetical negotiation and the date of trial, a damages expert may include in pre-trial calculations every advantageous change in profits, sales, and other conditions under the 'book of wisdom' rubric."), *aff'd*, 484 Fed. Appx. 499 (Fed. Cir. 2012).

Respectfully submitted,

**CAREFUSION CORPORATION and BECTON, DICKINSON AND COMPANY**

Dated: September 28, 2023

By: _/s/ Lisa J. Pirozzolo_
One of Their Attorneys
E-mail: lisa.pirozzolo@wilmerhale.com

Kevin Tottis (ARDC No. 6193853)
Monica L. Thompson (ARDC No. 6181455)
Keith M. Stolte (ARDC No. 6244848)
**TOTTIS LAW**
401 North Michigan Avenue, Suite 530
Chicago, Illinois 60611
Tel: (312) 527-1400

Omar Khan (admitted *pro hac vice*)
Lauren E. Matlock-Colangelo (admitted *pro hac vice*)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
7 World Trade Center, 250 Greenwich Street
New York, NY 10007
Tel: (212) 937-7252

Heather Petruzzi (admitted *pro hac vice*)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: (202) 663-6028

Lisa J. Pirozzolo (admitted *pro hac vice*)
Nina Garcia (admitted *pro hac vice*)
Labdhi Sheth (admitted *pro hac vice*)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Tel: (617) 526-6388

16

Kurt J. Niederluecke (MN Reg. # 0271597)
Adam R. Steinert (MN Reg. # 0389648)
Barbara Marchevsky (MN Reg. # 0398256)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street
Suite 1500
Minneapolis, Minnesota 55402-4400
Tel: (612) 492-7000

Thomas M. Patton (MN Reg. # 0401728)
**FREDRIKSON & BYRON, P.A.**
111 East Grand Avenue, Suite 301
Des Moines, Iowa 50309-1884
Tel: (515) 242-8900

***Attorneys for Defendants***

17

## CERTIFICATE OF SERVICE

Lisa J. Pirozzolo, an attorney, states that she caused the **DEFENDANTS' OPPOSITION TO BAXTER'S MOTIONS *IN LIMINE* REGARDING DAMAGES** to be served electronically by transmission through e-mail and/or file transfer link on September 28, 2023, upon:

Julianne M. Hartzell
Kelley S. Gordon
Chelsea M. Murray
MARSHALL GERSTEIN & BORUN LLP
6300 Willis Tower
233 S. Wacker Dr.
Chicago, IL 60606
T: 312.474.6300
E: jhartzell@marshallip.com
E: kgordon@marshallip.com
E: cmurray@marshallip.com


Douglas J. Nash
John D. Cook
Denis Sullivan
Thomas Hoehner
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Tel: (315) 425-2700

Jeffrey R. Gargano
Devon C. Beane
Melissa Haulcomb
K&L Gates LLP
70 W. Madison Street, Suite 3300
Chicago, IL 60602
T: 312.372.1121


_Lisa J. Pirozzolo_
Lisa J. Pirozzolo