**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BAXTER INTERNATIONAL, INC., | ) | |
| Plaintiff, | ) | |
| | ) | **Case No.: 1:15-cv-09986** |
| | ) | |
| v. | ) | **Judge Nancy L. Maldonado** |
| | ) | |
| CAREFUSION CORPORATION, and | ) | |
| BECTON, DICKINSON AND COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS CAREFUSION CORPORATION AND BECTON, DICKINSON AND COMPANY'S REPLY IN SUPPORT OF MOTIONS _IN LIMINE_ REGARDING DAMAGES**

**[REDACTED]**

## <u>TABLE OF CONTENTS</u>

Page

I.     REPLY ISO CAREFUSION MIL 1: PRECLUDE BAXTER FROM RELYING ON
NONCOMPARABLE LICENSES ................................................................................1

II.    REPLY ISO CAREFUSION MIL 2: PRECLUDE BAXTER FROM PRESENTING
EVIDENCE AND ARGUMENT REGARDING ANY SO-CALLED "UNDER 10%"
STANDARD ROYALTY RATE DAMAGES THEORY ...........................................6

III.   REPLY ISO CAREFUSION MIL 3:  PRECLUDE BAXTER'S WITNESSES FROM
PRESENTING EVIDENCE AND TESTIMONY IN VIOLATION OF FRE 701 .............8

IV.   REPLY ISO CAREFUSION MIL 4:  PRECLUDE SPECULATIVE TESTIMONY AND
HEARSAY REGARDING ANECDOTAL CUSTOMER FEEDBACK.............................10

V.    REPLY ISO CAREFUSION MIL 5:  PRECLUDE EVIDENCE REGARDING
CAREFUSION'S FINANCIAL RESOURCES AND SIZE.....................................................12

VI.   REPLY ISO CAREFUSION MIL 6: PRECLUDE OR LIMIT BAXTER'S ABILITY TO
RELY ON PHILIP GREEN DURING ITS CASE IN CHIEF ...............................................15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.,*
    694 F.3d 1312 (Fed. Cir. 2012) ................................................................................................1

*Apple Inc. v. Motorola, Inc.,*
    757 F.3d 1286 (Fed. Cir. 2014) ................................................................................................1

*Baker Hughes Oilfield Operations, Inc. v. Pump System Management, Inc.,*
    2018 WL 8963557 (W.D. Okla. Mar. 5, 2018) .....................................................................2, 10

*Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.,*
    967 F.3d 1353 (Fed. Cir. 2020) ................................................................................................1

*Bobak Sausage Co. v. A & J Seven Bridges, Inc.,*
    805 F. Supp. 2d 503 (N.D. Ill. 2011) .....................................................................................12

*Ericsson, Inc. v. D-Link Systems, Inc.,*
    773 F.3d 1201 (Fed. Cir. 2014) ................................................................................................1

*Exmark Manufacturing Co. v. Briggs & Stratton Power Products Grp., LLC,*
    879 F.3d 1332 (Fed. Cir. 2018) ................................................................................................5

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. Ltd.,*
    1993 WL 1510657 (D. Mass. Apr. 27, 1993) .........................................................................14

*Finjan, Inc. v. Secure Computing Corp.,*
    626 F.3d 1197 (Fed. Cir. 2010) ................................................................................................1

*Georgia Pacific Corp. v. U.S. Plywood Corp.,*
    318 F.Supp. 1116 (S.D.N.Y.1970) ...........................................................................5, 10, 13, 14

*Gonzalez v. Olson,*
    2015 WL 3671641 (N.D. Ill. June 12, 2015) ..........................................................................10

*Jonasson v. Lutheran Child & Family Servs.,*
    115 F.3d 436 (7th Cir.1997) ....................................................................................................8

*LaserDynamics, Inc. v. Quanta Computers, Inc.,*
    694 F.3d 51 (Fed. Cir. 2012) ...............................................................................................2, 15

*McGinley v. Luv N Care Ltd.,*
    3-17-cv-00821, Dkt. 444 (W.D. La. Sep. 26, 2023) .................................................................7

*MLC Intellectual Properties, LLC v. Micron Tech., Inc.*,
  10 F.4th 1358 (Fed. Cir. 2021) ................................................................... 1

*Multimedia Patent Trust v. Apple Inc.*,
  2012 WL 5873711 (S.D. Cal. Nov. 20, 2012) ............................................ 7

*Omega Patents, LLC v. CalAmp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) .............................................................. 3, 4

*Rehco LLC v. Spin Master Ltd.*,
  2020 WL 7025091 (N.D. Ill. Nov. 30, 2020) ............................................ 9

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ................................................................. 14

*Rex Medical v. Intuitive Surgical, Inc.*,
  2023 WL 6142254 (D. Del. Sept. 20, 2023) ........................................... 2, 4

*SEC v. Ferrone*,
  163 F. Supp. 3d 549 (N.D. Ill. 2016) ................................................... 8, 10

*Sloan Valve Co. v. Zurn Industries, Inc.*,
  33 F.Supp.3d 984 (N.D. Ill. 2014) ..................................................... 14, 15

*Smith Fiberglass Products, Inc. v. Ameron, Inc.*,
  7 F.3d 1327 (7th Cir. 1993) .................................................................... 12

*Ultratec, Inc. v. Sorenson Communications, Inc.*,
  2014 WL 5080411 (W.D. Wis. Oct. 9, 2014) .......................................... 13

*Unicom Monitoring, LLC v. Cencom Inc.*,
  No. 06–1166 (MLC), 2013 WL 1704300 (D.N.J. Apr. 19, 2013) ............... 5

*United States v. Ruiz*,
  249 F.3d 643 (7th Cir. 2001) .................................................................. 11

*Virtnetx, Inc. v. Cisco Systems, Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) .............................................................. 14

**RULES**

Fed. R. Civ. P. 37 ......................................................................................... 3

FRE 403 ............................................................................................... 10, 12

FRE 602 ............................................................................................... 10, 12

iii

FRE 603 ...................................................................................................................... 7

FRE 701 ................................................................................................................. 7, 8, 9

FRE 802 ........................................................................................................... 10, 11, 12

FRE 803 ............................................................................................................... 11, 12

**TABLE OF EXHIBITS**

| 36 | Hearing Transcript, August 10, 2023 (excerpted) |
|----|------------------------------------------------|
| 37 | Expert Report of Philip Green, October 16, 2020 (excerpted) |

## I. REPLY ISO CAREFUSION MIL 1: PRECLUDE BAXTER FROM RELYING ON NONCOMPARABLE LICENSES

To be admissible, licenses must be "'sufficiently comparable' for evidentiary purposes." *MLC Intell. Proper., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1375 (Fed. Cir. 2021).[1] As part of the admissibility inquiry, patentees also bear the separate and independent burden to "soundly account[]" for any differences between a purportedly comparable license and a license for the asserted patent. *Id.* As set forth more fully below, Baxter does not contest the inadmissibility and exclusion of either the Cerner or Care Everywhere licenses, so it should be precluded from introducing evidence about those license at trial. With respect to the MGH license, Baxter has not identified admissible evidence to demonstrate technological or economic comparability, nor a way to account for its undisputed differences from a license for the '805 patent at trial. Baxter has no admissible expert testimony on either economic or technological comparability. The opinion of its technical expert, Warren Heim, on technological comparability is inadmissible because it relies on unaccused products and is contrary to this Court's claim construction. Baxter has no expert testimony on economic comparability, and the only remaining damages expert, CareFusion's Philip Green, found the MGH license economically "non-comparable." Dkt. 550 at 4-6. Baxter cannot fill this void with testimony of fact witnesses. Recent depositions demonstrate that none of Baxter's fact witnesses have the requisite personal

---

[1] Baxter's cited cases either support exclusion of the MGH license or are distinguishable. *See Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373-74 (Fed. Cir. 2020) (Federal Circuit "often exclude[s] licenses that are technologically or economically non-comparable"); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1332-33 (Fed. Cir. 2012) (affirming exclusion of license that "post-dated the hypothetical negotiation by four years" and noting that other license in the record could be properly considered where defendant "*never* challenged its admissibility"); *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227–28 (Fed. Cir. 2014) (expert available to "explains to the jury the need to discount reliance on a given license to account only for the value attributed to the licensed technology"); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1324 (Fed. Cir. 2014) (license comparability not at issue); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211-12 (Fed. Cir. 2010) (expert explained how license differences impacted the hypothetical negotiation).

knowledge to address comparability at all, let alone to account for the significant differences between the MGH license and a license for the '805 patent. *Id.* Moreover, Baxter's apparent plan to have its fact witnesses recite the economic and technological features of the MGH license and a hypothetical license for the '805 patent cannot support a damages verdict. *See, e.g., Rex Medical v. Intuitive Surgical, Inc.*, 2023 WL 6142254, at *7-*9 (D. Del. Sept. 20, 2023) (reducing jury damages award to $1 nominal damages). In the absence of any evidence relating to comparability and accounting for differences as compared to the hypothetical negotiation, it would be reversible error to allow the jury to consider the MGH license. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 80 (Fed. Cir. 2012).

**Cerner and Care Everywhere Licenses.** Baxter does not dispute the inadmissibility and exclusion of the Cerner and Care Everywhere licenses. Instead, Baxter reserves "the right to address the[se] … licenses at trial if Defendants open the door." Dkt. 563 at 1 n. 1. Baxter should have made this concession earlier, instead of repeatedly representing that these licenses would form the basis of its damages case, including in its December 2022 supplemental interrogatory response, subsequent status reports to the Court, and during the August 23, 2023 meet-and-confer to discuss the scope of the parties' MILs.[2] In any event, this Court should grant CareFusion's motion to exclude evidence of these licenses. Dkt. 550 at 2-4; *see also Baker Hughes Oilfield Operations, Inc. v. Pump Sys. Mgmt., Inc.*, 2018 WL 8963557, at *6 (W.D. Okla. Mar. 5, 2018) (excluding evidence after finding that failure to respond to motion *in limine* arguments is "a concession that such information is not relevant to the claims and defenses at issue under Fed. R. Evid. 401"). Excluding evidence of these two licenses will provide clarity, consistent with the Court's reasons for allowing early motions *in limine*. Ex. 36 at 2:22-3:3, 15:17-23, 7:3-9.

**MGH License.** With respect to the MGH license, Baxter has made three arguments, all of

---

[2] Dkts. 506; 530; 530-1 at 18-19; 478 at 2; 453 at 3; 542; 562-1; 562-2.

which fail to show admissible evidence of technological or economic comparability or to account for the undisputed differences as compared to a hypothetical license to the asserted patent. ***First,*** Baxter cannot rely on the purported technological comparability theory from its expert Warren Heim because he does not compare the licensed MGH technology to the '805 patent invention asserted in this case. Mr. Heim compared the value of the licensed MGH drug library to the value of "profiles that set the pump to meet the needs of hospital clinical areas." Dkt. 552-8 at ¶648. This comparability theory is foreclosed by this Court's prior rulings precluding Baxter from arguing that the '805 patent requires "configur[ing] the infusion pump to clinical areas." Dkt. 432 at 20. In addition, the "profiles" feature of the accused Alaris System that Mr. Heim relied on for his comparability opinion is "the Guardrails dose error reduction software," which this Court found is not accused of infringement. Compare Dkt. 552-8 at ¶641 (Heim Report) with Dkt. 286 at 2 (order striking opinions regarding Guardrails). Baxter attempts to dismiss the exclusion of Guardrails as "procedural," Dkt. 563 at 3, but there can be no dispute that Mr. Heim's theory is based on a comparison of the MGH license with a non-accused feature of the Alaris System. That comparison has no place in determining a reasonable royalty, which is properly limited to "only those damages attributable to the ***infringing features***" of the Accused Products. *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1376 (Fed. Cir. 2021) (emphasis added). Baxter concedes as much, insofar as it now manufactures an ***entirely new technological comparability theory*** premised on the patented invention as "software ... intended to increase safety and minimize medication errors."[3] Dkt. 563 at 2. Baxter should be precluded from relying on Mr. Heim's comparability theory at trial. Fed. R. Civ. P. 37.

---

[3] Baxter does not cite Mr. Heim's report in support of this new theory, because it cannot. Accordingly, Baxter's case law concerning "analogous inventions," Dkt. 563 at 3-4, is irrelevant because it relies solely on a theory not preserved in expert discovery. CareFusion reserves the right to seek leave for supplemental expert reports responding to this theory if Baxter is permitted to present it.

But, even assuming that Mr. Heim's comparability analysis were relevant and admissible (which it is not), Mr. Heim did no analysis of the **economic** comparability, nor did he do any analysis to account for all the differences between the MGH license and the circumstances of a hypothetical negotiation. As but one example, Mr. Heim did not analyze the fact that the MGH license licensed multiple patents, as opposed to the single patent that would be licensed in the hypothetical negotiation, nor did he account for how this would have impacted the hypothetical negotiation. But economic comparability and testimony accounting for differences from the hypothetical negotiation are separate requirements for admissibility and the absence of any such evidence presents additional, independent bases to grant the motion.

**Second**, Baxter attempts to cure its evidentiary gaps by incorrectly asserting that CareFusion's damages expert, Mr. Green, "extensively opined about" the economic differences between the MGH license and a license for the '805 patent "and their effect on a hypothetical negotiation." Dkt. 563 at 4. Baxter cannot cite to any such analysis because there is none. Mr. Green found the MGH license economically **non-comparable** and therefore did not analyze how its differences would impact the hypothetical negotiation. Dkt. 565-2 at 44-45, 67. That Mr. Green used the MGH license as a "reasonableness check" (Dkt. 563 at 4) **in rebuttal** to Baxter's now-stricken expert opinions does not concede its admissibility. Dkt. 565-2 at 44-45, 57, 66-67.

**Third**, Baxter's fact witnesses cannot satisfy Baxter's burden to account for the economic and technological differences between the MGH license and a license for the '805 patent by reciting facts concerning the MGH license and the '805 patent. Dkt. 563 at 5. The Federal Circuit requires a patentee to do more than "merely identif[y]" the differences between a purportedly comparable license and a license for the asserted patent. *Omega Patents*, 13 F.4th at 1380-81; *see also* Dkt. 550 at 5 (citing cases); *Rex Medical v. Intuitive Surgical, Inc.*, 2023 WL 6142254, at *7-*9 (D. Del. Sept. 20, 2023) (reducing jury damages award to $1 nominal where patentee's fact witness "failed to offer any evidence of

4

apportionment of the [purportedly comparable] license at trial that would allow it to serve as a basis for damages").[4]  As explained below, the depositions of Baxter's fact witnesses make clear that they lack the personal knowledge to do more than that.

Baxter's suggestion that it can have its fact witnesses merely recite "facts that are relevant" to damages issues so long as it instructs the jury on the *Georgia-Pacific* factors, Dkt. 563 at 8, is also wrong. Baxter's own case law makes clear that "a 'superficial recitation of the *Georgia-Pacific* factors, followed by conclusory remarks, cannot support the jury's verdict.'" *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, 879 F.3d 1332, 1350 (Fed. Cir. 2018).  A damages case should not be put to the jury without "either clear guidance from an expert how to apply complex calculations or simple factual proofs about what [the] patentee has previously accepted in factually analogous licensing situations." *Unicom Monitoring, LLC v. Cencom Inc.*, No. 06–1166 (MLC), 2013 WL 1704300, at *6, *8 (D.N.J. Apr. 19, 2013).  Accordingly, the issue is not merely the weight of Baxter's proof, as it alleges, but the lack of admissible evidence that can be presented to the jury.

For example, on economic comparability, Baxter's Vice President of Operations, Dennis Vaughn, can do no more than identify the MGH royalty rate and base.  Dkt. 552-11 at 84:17-19, 85:18-87:10 (no knowledge regarding choice of license terms).[5]  And while Baxter plans to have Eric Sato address "the relationship between the parties" (Dkt. 563 at 5), he disclaimed any knowledge of the market at the time of the hypothetical negotiation (Dkt. 552-10 at 119:7-17) and did not even work in the infusion pump field until 2008—four years after the MGH license was executed (*id.* at 118:4-6). Critically, Kenneth Lynn and Mr. Sato both admitted that they lack relevant knowledge about Baxter

---

[4] Baxter's attempts to distinguish these cases as involving "expert witnesses who addressed a large number of licenses." Dkt. 563 at 6.  None of these cases suggest that a patentee is somehow relieved of its burden to address licensing differences if it has no damages expert or addresses only one license.

[5] Mr. Vaughn also disclaimed knowledge regarding the license's negotiation (Dkt. 552-11 at 79:11-80:2); payment history (*id.* at 81:23-82:11, 90:8-24); and scope (*id.* at 83:22-24, 84:1-16).

licensing policies.  Dkt. 552-12 at 123:18-124:7; Dkt. 552-10 at 161:12-22.  Thus, no witness can, nor should be allowed to, testify that Baxter generally did not license its patents or that licenses to competitors have higher rates to imply that the hypothetical negotiation with CareFusion would have resulted in a higher rate.  Dkt. 563 at 5.

Further, Mr. Lynn's testimony of MGH inventor Dr. Sims' purported licensing policy is improper hearsay testimony that cannot be used to support comparability or account for differences from the hypothetical negotiation.  Baxter contends that Mr. Lynn's testimony on this issue is not hearsay because it goes to "Plaintiff's motives."  Dkt. 563 at 5 n.3.  Baxter's meaning is unclear, as it does not claim to have negotiated the MGH license.  To the extent Baxter plans to argue that the MGH rate is lower than Baxter would have preferred because of Dr. Sims' purported policy, that is classic hearsay because it relies on the policy being factually true.

In any event, Baxter **never** identifies a witness capable of accounting for the **other**, salient differences between the MGH license and a hypothetical license that the jury will need to consider because there is no such witness.  These additional differences include MGH's significantly broader patent portfolio, grant of non-patent rights, broader geographic scope, later negotiation date, and requirements for funding and development work.  Dkt. 550 at 4.  There is no witness—fact or expert—who can account for any, much less all, of these differences and explain why the MGH license is nonetheless sufficiently comparable to a hypothetical, non-exclusive one-patent license to the '805 patent limited to the U.S. territory and with no other intellectual property or other commercial terms.

## II. REPLY ISO CAREFUSION MIL 2: PRECLUDE BAXTER FROM PRESENTING EVIDENCE AND ARGUMENT REGARDING ANY SO-CALLED "UNDER 10%" STANDARD ROYALTY RATE DAMAGES THEORY

Baxter's perfunctory response concedes that Baxter never disclosed a purported "under 10%" standard royalty rate for infusion pumps, and that it would be unduly prejudicial and likely to confuse the jury to suggest such a rate exists.  Dkt. 550 at 6-8.  Moreover, Baxter's sole argument in defense

of the "10%" rate—that Mr. Sato can testify about "his personal observations regarding the infusion pump licenses that he encountered in his work, including the types of royalty rates that he observed"— fails for three reasons. Dkt. 563 at 7. **First**, any testimony from Mr. Sato regarding purported trends, such as averages, derived or extrapolated from the very limited (i.e., three) infusion pump licenses he has observed necessarily constitutes impermissible expert opinion. It is undisputed that Mr. Sato never analyzed any licensing trends, including any averages, prior to his deposition and was not aware of any such analysis done by others. Dkt. 550 at 7. Mr. Sato is therefore not being proffered as a percipient witness testifying regarding historical facts. FRE 603; FRE 701-703. **Second**, Baxter has no evidence that the "under 10%" rate is based on factually analogous licenses. Mr. Sato could not identify **any** patent licenses he encountered as part of his job (Dkt. 552-10 at 102:13-104:13) and, as Baxter's 30(b)(6) witness, was aware of only three Baxter licenses relating to infusion pumps: Cerner, MGH, and Care Everywhere. Dkt. 552-13 at 20:15-23. None supports or even comes close to having a "10%" rate, and thus Baxter has no evidence of comparability. Dkt. 550 at n.11.[6] Mr. Sato's 10% rate should be excluded on this basis alone. *See McGinley v. Luv N Care Ltd.*, 3-17-cv-00821, Dkt. 444 (W.D. La. Sep. 26, 2023) (failure to show royalty studies had "a reasonable relationship to the [patent] and [product] in this case"); *Multimedia Patent Tr. v. Apple Inc.*, 2012 WL 5873711, at *9 (S.D. Cal. Nov. 20, 2012) (similar). Moreover, neither Mr. Sato nor Baxter has identified **any** basis for the "under 10%" rate. While it is true that the three licenses referred to by Mr. Sato have rates much below 10%, allowing him to characterize the licenses as "under 10%" would misleadingly imply that the number "10%" is relevant. It would be equally misleading to allow him to characterize the licenses as "under 25%," "under 50%," or "under 100%." Such testimony is unhelpful to the jury and can only serve to

---

[6] Moreover, Baxter tacitly concedes the irrelevance of both the Cerner and Care Everywhere license in its opposition brief. Dkt. 563.

cause confusion and undue prejudice to CareFusion. ***Third***, neither Mr. Sato nor Baxter has disclosed any other basis for this "under 10% rate," including what licenses support this rate, the intellectual property covered by those licenses, or even whether this rate represents the mean, median, or mode (or something else) of the rates in those licenses. Mr. Sato's purported standard rate is unquestionably speculative and lacks foundation. Dkt. 550 at 7-8.

## III. REPLY ISO CAREFUSION MIL 3: PRECLUDE BAXTER'S WITNESSES FROM PRESENTING EVIDENCE AND TESTIMONY IN VIOLATION OF FRE 701

Baxter incorrectly asserts that CareFusion did not identify the fact witness testimony it seeks to exclude. CareFusion did so with specificity, identifying grounds of Baxter's witnesses' lack of knowledge established during their depositions:

- "[N]one of Baxter's fact witnesses should be permitted to offer ***speculative testimony about how license rates would have to be adjusted in the hypothetical negotiation***." Dkt. 550 at 8.

- "Mr. Lynn also lacks requisite personal knowledge to testify regarding ***the 'value' of the invention claimed in the '805 patent, or apportionment of the patented invention*** as compared to non-patented features." *Id.* at 10.

- "Mr. Sato repeatedly admitted that he is 'not familiar' with the '805 patent, confirming that he, too, should be precluded from testifying ***about the 'value' of the claimed invention***[.]" *Id.* at 11.

- "Mr. Sato also lacks personal knowledge about the ***infusion pump market and customer preferences and feedback at the time of the hypothetical negotiation***. . . . [H]e should be precluded from testifying about those topics as well." *Id.*

Moreover, CareFusion's motion explains why and how Baxter's fact witnesses' testimony demonstrates they lack the personal knowledge to competently testify on these subjects. *Id.* at 8-11. Accordingly, CareFusion provided sufficient specificity to enable the Court to perform its crucial gatekeeping function. *See SEC v. Ferrone*, 163 F. Supp. 3d 549, 554–55 (N.D. Ill. 2016) (quoting *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir.1997)).

Contrary to Baxter's assertions, CareFusion is not relitigating the Court's decision to permit Baxter to present evidence of damages through its fact witnesses. CareFusion did not understand that

decision to give Baxter *carte blanche* to present inadmissible opinion testimony through its fact witnesses in violation of FRE 701. *See* Dkt. 568-8 at 35-39 ("[T]he expert is out. But **whether** Baxter **can** put this evidence forward through lay witnesses, that's the issue); Dkt. 550 at 9 (citing cases). Baxter's statement that it will not "solicit opinion testimony from its fact witnesses" regarding license terms in a hypothetical negotiation, how to adjust license rates, the monetary value of the claimed invention, or how to apportion the claimed invention does not alleviate CareFusion's concerns. Dkt. 563 at 8. Baxter claims its witnesses will "testify as to **facts** that are relevant to these issues,"[7] but as explained in CareFusion's motion, Baxter's witnesses lack the personal knowledge to do so. How can Mr. Lynn provide facts the jury can use to properly apportion damages when his testimony demonstrates he is unfamiliar with the scope of the claimed invention? Dkt. 550 at 10. How can Mr. Sato provide facts the jury can use to determine the purported value of the '805 patent when he admitted he is not familiar with the patent? *Id.* Baxter never addresses these points. The Court should preclude this testimony to prevent prejudice to CareFusion and jury confusion.

Baxter asks the Court to defer its determination on CareFusion's motion until trial. But the Court permitted CareFusion to depose Baxter's witnesses specifically to ascertain their personal knowledge on damages issues and then allowed the parties to file early motions *in limine* **because of** the valid concerns resulting from those depositions, "to provide clarity [that] would be a benefit to both sides." Dkt. 551-18 at 2:22-3:3. CareFusion is not seeking a "blanket order" but rather exclusion of testimony on specific issues for which Baxter's witnesses demonstrated a lack of personal

---

[7] Baxter's cite to *Rehco LLC v. Spin Master Ltd.* is unavailing, as the plaintiff in that case claimed the proper royalty base was the patented article as a whole under the "entire market value rule." 2020 WL 7025091, at *8-10 (N.D. Ill. Nov. 30, 2020). Here, it is undisputed that the royalty base is the Alaris System PC Unit. Dkt. 563 at 12. Baxter's fact witnesses lack the personal knowledge to adjust the royalty base or rate to apportion for the differences between the licenses in record and the hypothetical negotiation and the limited contribution of the '805 patent to the total value of the Alaris System.

knowledge during their depositions. *Ferrone*, 163 F. Supp. 3d at 554–55. Leaving these issues open would prejudice CareFusion's preparation for trial, needlessly inflate litigation costs for both parties, and fail to clarify critical issues as the parties continue to discuss settlement.

## IV.  REPLY ISO CAREFUSION MIL 4:  PRECLUDE SPECULATIVE TESTIMONY AND HEARSAY REGARDING ANECDOTAL CUSTOMER FEEDBACK

Baxter does not dispute that the testimony from Mr. Vaughn and Dr. Bello regarding customer interactions constitutes impermissible hearsay. Dkt. 563 at 9. Accordingly, the Court should grant CareFusion's motion as to those two witnesses. *Gonzalez v. Olson*, 2015 WL 3671641, at *8-9 (N.D. Ill. June 12, 2015) (equating a failure to rebut with a concession and granting in part the MILs); *Baker Hughes*, 2018 WL 8963557, at *6. CareFusion's motion also identifies testimony from Mr. Sato and Mr. Lynn that recounts similar purported customer interactions, and should likewise be excluded under FRE 602, FRE 802, and FRE 403. As an initial matter, Baxter's advocacy for the admissibility of testimony regarding customer responses to the Colleague recalls is at odds with its motion to exclude all evidence of the recalls. Dkt. 553 at 11. CareFusion maintains that evidence of the recalls and Baxter's subsequent conduct is highly relevant to several *Georgia-Pacific* factors the jury may consider (Dkt. 567 at 12-15) but also maintains that any such evidence should be based on personal knowledge and not speculation or hearsay.

Mr. Sato should not be permitted to testify regarding alleged customer demands, needs or requirements during the pendency of the hypothetical negotiation under FRE 602 because he admits lacking personal knowledge regarding those exact topics. Dkt. 550 at 12. Moreover, Mr. Sato should be precluded from offering speculative hearsay about customer praise for the Colleague and responses to its recall—namely whether customers were "happy" or "reluctant" to use another device following the recall. By definition, the emotional or mental state of a third party falls outside of Mr. Sato's personal knowledge and thus no hearsay exception would overcome his lack of personal knowledge. FRE 602. Other than generically referencing Mr. Sato's "marketing role" Baxter identifies no evidence

10

to explain why Mr. Sato would have percipient knowledge of unnamed customers' feelings.

Similarly, Mr. Lynn should not be permitted to provide anecdotal, hearsay testimony about customer responses to the Colleague, its purported benefit to hospitals, or customer reactions to the Colleague recalls under FRE 802. Baxter all but admits that these statements are hearsay and asserts that the statements fall into an exception. For example, Mr. Lynn testified that unidentified nurses said "Please tell us you're not here to remove our Colleague pumps. We don't want to have those removed." Baxter admits that it intends to offer that statement for its truth, i.e., "the fact that the nurses were upset about giving up their Colleague pumps." Dkt. 563 at 12. Additionally, other than Baxter's conclusory say-so, there is no reliable evidence that any of the statements Baxter seeks to admit constitute present sense impressions pursuant to Fed. R. Evid. 803(1). *See United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001) (listing requirements). For example—and contrary to Baxter's assertions—Mr. Lynn did ***not*** testify that IVAC salespeople "personally saw the debut of the Colleague system," gave their "honest reaction to seeing the Colleague for the first time," or that those statements were made "immediately upon seeing the Colleague pump." *Compare* Dkt. 563 at 10-11 with Dkt. 552-12 at 140:4-9 ("I was standing there answering questions from customers, and we had two IVAC salesmen come up to me and hand me their business cards, and they said, 'There's no way we can compete with this and we want to join Baxter.'"). These statements do not qualify under FRE 803(1). Moreover, Mr. Lynn's testimony regarding the purported reactions of IVAC salespeople and various nurses attributes single statements to ***multiple*** out-of-court declarants. It stretches logic to believe that, for example, the salespeople approached Mr. Lynn and stated, in unison, "There's no way we can compete with this and we want to join Baxter." It is more likely that Mr. Lynn—who could not remember the names of any of the customers he referenced, admitted that his testimony regarding customer responses to the Colleague was "anecdotal," and conceded that the interaction took place "a long, long time ago" (Dkt. 552-12 at 162:6-163:1)—is broadly summarizing his memories of distant

events. Baxter never addresses why Mr. Lynn's hearsay testimony "possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at the trial even though he may be available." Fed. R. Evid. 803, Advisory Committee Notes. In these circumstances, "[c]ourts in this circuit consistently have rejected vague summaries of hearsay statements by unidentified consumers." *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503, 520 (N.D. Ill. 2011) (citing *Smith Fiberglass Products, Inc. v. Ameron, Inc.*, 7 F.3d 1327, 1330–31 (7th Cir. 1993) (refusing to "craft[ ] a new hearsay exception to the Federal Rules of Evidence for paraphrases of state of mind declarations by unknown declarants")).

Even if any of these statements regarding customers' purported responses to the Colleague and its recalls were to pass muster under FRE 602 and 802, their extremely minimal probative value—to show that customers "liked the pumps and did not want to give them up" (Dkt. 563 at 11)—is greatly outweighed by the danger of unfair prejudice and misleading the jury about the actual value of the '805 patent. Fed. R. Evid. 403. For example, admittedly "anecdotal" testimony that "competitive salespeople [were] all clamoring to try and get their hands" on the Colleague is unfairly prejudicial and misleading, particularly when Colleague sales data produced in this case could be offered to show demand for the product by the market. Baxter never addresses the unduly prejudicial nature of Mr. Sato's and Mr. Lynn's testimony regarding customer's responses to the recalls. This testimony should not be permitted to mislead the jury about the value of the '805 patent and should be excluded.

## V.     REPLY ISO CAREFUSION MIL 5: PRECLUDE EVIDENCE REGARDING CAREFUSION'S FINANCIAL RESOURCES AND SIZE

Despite claiming in a footnote that Baxter has no intention of offering evidence or testimony about CareFusion's size, financial resources, market power, market capitalization or overall financial performance (Dkt. 563 at 13 n.4), the thrust of Baxter's response indicates that it in fact intends to do so by reference to "total Alaris revenues" and the amount of sales of unaccused administrative sets (products such as tubing, valves, and connectors used to deliver medications and fluids to patients).

As discussed in CareFusion's motion, Baxter's excluded expert report on damages mentioned numerous irrelevant and unapportioned figures in the hundreds of millions and billions of dollars. Dkt. 550 at 13. Reference to any of these overall revenues or bottom-line sales figures is improper and prejudicial as they include a substantial amount of unaccused equipment and **Baxter is not seeking damages based on revenues**.[8] Baxter's arguments to the contrary are not only legally and factually incorrect, but also fail to address the high risk of undue prejudice and juror confusion discussed at length in CareFusion's motion.

*First*, Baxter's argument for the relevance of total Alaris revenues and sales improperly applies *Georgia-Pacific* Factor 8 and ignores Federal Circuit precedent regarding apportionment. Factor 8 is directed to the "established profitability" of the **patentee's profits** at the time of the hypothetical negotiation, not to the profits of an accused infringer. *See, e.g.*, §3:30 *Georgia-Pacific* Factor 8 - Established Profitability, Patent Damages Law and Practice (Factor 8 "cannot refer literally to the infringer's profits on the infringing products because at the time of the hypothetical negotiation, no infringing sales have occurred"); *see also, e.g., Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 2014 WL 5080411, at *2 (W.D. Wis. Oct. 9, 2014) ("[F]actor 8 applies because the 2011 agreements represent income plaintiffs expected when licensing…the product made under the patent"). Moreover, the Court has already found, and Baxter does not dispute, that "total Alaris revenues" encompasses a substantial amount of unaccused technology. Dkt. 434 at 7, 10. Baxter's illogical conclusion that "the jury will need to consider the **total Alaris sales**" simply because the overall Alaris System includes the accused PCU units and three pump modules contravenes the Federal Circuit's "consistent[] [holding] that 'a

---

[8] To the extent Baxter argues that it is permissible to introduce any of the data that underlies the overall revenue and sales calculations in its excluded expert's report—as opposed to the overall revenue and sales calculations themselves—CareFusion reserves the right to challenge the admissibility of those documents.

reasonable royalty analysis requires a court to… carefully tie proof of damages to the claimed invention's footprint in the market place." *Virtnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-27 (Fed. Cir. 2014) (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

**Second**, Baxter misconstrues the relevance of collateral sales to *Georgia-Pacific* Factor 6.[9] "[T]he *Georgia-Pacific* factors apply **qualitatively**—meaning that experts analyze whether each factor supports a higher or lower royalty rate" and "they **do not apply quantitatively** to add a specific figure" to the royalty base or rate. *Sloan Valve Co. v. Zurn Indus., Inc.*, 33 F.Supp.3d 984, 997-98 (N.D. Ill. 2014); *see also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. Ltd.*, 1993 WL 1510657, at *23 (D. Mass. Apr. 27, 1993) ("Convoyed sales are a factor to be considered in determining a reasonable royalty. They do not create a separate sum on which the royalty is calculated.") (citations omitted). **If** there is evidence that a claimed invention promotes collateral sales as required by Factor 6, then the fact of those collateral sales (but not a specific dollar amount) may be qualitatively considered as to whether the fact of those sales "supports a higher royalty rate, a lower rate, or is neutral." *See Sloan Valve*, 33 F. Supp. 3d at 997 (quoting Seventh Circuit Civil Jury Instruction No. 11.4.4, n. 2). Baxter has not identified any evidence suggesting the claimed invention of the '805 patent—specific algorithms used to generate pictoral graphics—promotes sales of tubing, valves, and connectors. Even if collateral sales of administrative sets were relevant here (they are not), critically, courts— including Courts in this District—have squarely rejected what Baxter attempts here: to quantitatively introduce the overall sales or revenues from collateral goods to influence the royalty rate by some

---

[9] Mr. Green, the only damages expert remaining in this case, stated that there was no evidence suggesting that the claimed invention of the '805 patent promotes sales of administrative sets (or "disposable sets") as required by *Georgia-Pacific* Factor 6. Ex. 37 at 31 ("[T]he technology claimed by the '805 patent is not related to the need to use disposable sets; **use of disposable sets would occur regardless of whether the technology of the '805 patent were employed**. . . . Rather, the sales of these ancillary products appear to be driven by the infusion pump product as a whole, inclusive of many features and functionalities not at issue in this matter.").

numeric value (*i.e.*, ███████) corresponding to those sales.[10] *See id.* at 997-98 (citing cases).

**Third**, other than a wholly conclusory assertion that "the relevance of the collateral sales figures outweighs any potential theoretical prejudice" (Dkt. 563 at 15), Baxter never addresses CareFusion's argument—and the accompanying body of case law—that overall financial figures are **routinely** excluded as unduly prejudicial. Dkt. 550 at 14. These overall revenue and sales figures "which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is adequate to compensate for the infringement," and should be excluded. *LaserDynamics*, 694 F.3d at 68 (quotation marks omitted).

## VI.    REPLY ISO CAREFUSION MIL 6: PRECLUDE OR LIMIT BAXTER'S ABILITY TO RELY ON PHILIP GREEN DURING ITS CASE IN CHIEF

Despite refusing to provide its position on this issue during the parties' August 23, 2023 meet and confer, Baxter now agrees that it would be improper to "solicit testimony from Mr. Green [that] constitute[es] mere restatement of facts outside his personal knowledge." Dkt. 563 at 15. Accordingly, the Court should grant CareFusion's motion and make clear that, to the extent that Baxter calls Mr. Green in its case-in-chief, any testimony he provides should include his ultimate opinions regarding the appropriate measure of damages to avoid undue prejudice to CareFusion and juror confusion.

---

[10] As discussed in CareFusion's motion, the overall revenues and profits from Baxter's excluded damages report that are attributed in whole or in part to sales of administrative sets include: ███████ in revenue from sales of administrative sets during the damages period; ███████ in revenue from sales of administrative sets from July 2009 to February 2017; ███████ standard gross margin on administrative sets; ███████ in gross profits on the Alaris System and administrative sets; and ███████ in adjusted gross profits for the Alaris System and administrative sets.

Respectfully submitted,

**CAREFUSION CORPORATION and BECTON, DICKINSON AND COMPANY**

Dated:  October 12, 2023      By:   /s/  Lisa J. Pirozzolo
           One of Their Attorneys
           E-mail:  lisa.pirozzolo@wilmerhale.com

Kevin Tottis (ARDC No. 6193853)
Monica L. Thompson (ARDC No. 6181455)
Keith M. Stolte (ARDC No. 6244848)
**TOTTIS LAW**
401 North Michigan Avenue, Suite 530
Chicago, Illinois 60611
Tel: (312) 527-1400

Omar Khan (admitted *pro hac vice*)
Lauren E. Matlock-Colangelo (admitted *pro hac vice*)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
7 World Trade Center, 250 Greenwich Street
New York, NY 10007
Tel:  (212) 937-7252

Heather Petruzzi (admitted *pro hac vice*)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel:  (202) 663-6028

Lisa J. Pirozzolo (admitted *pro hac vice*)
Nina Garcia (admitted *pro hac vice*)
Labdhi Sheth (admitted *pro hac vice*)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Tel:  (617) 526-6388

16

Kurt J. Niederluecke (MN Reg. # 0271597)
Adam R. Steinert (MN Reg. # 0389648)
Barbara Marchevsky (MN Reg. # 0398256)
**FREDRIKSON & BYRON, P.A.**
200 South 6th Street, Suite 4000
Minneapolis, Minnesota 55402-1425
Tel: (612) 492-7000

Thomas M. Patton (MN Reg. # 0401728)
**FREDRIKSON & BYRON, P.A.**
111 East Grand Avenue, Suite 301
Des Moines, Iowa 50309-1884
Tel: (515) 242-8900

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

Lisa J. Pirozzolo, an attorney, states that she caused the **DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTIONS *IN LIMINE* REGARDING DAMAGES** to be served electronically by transmission through e-mail and/or file transfer link on October 12, 2023, upon:

Julianne M. Hartzell
Kelley S. Gordon
Chelsea M. Murray
MARSHALL GERSTEIN & BORUN LLP
6300 Willis Tower
233 S. Wacker Dr.
Chicago, IL 60606
T: 312.474.6300
E: jhartzell@marshallip.com
E: kgordon@marshallip.com
E: cmurray@marshallip.com


Douglas J. Nash
John D. Cook
Denis Sullivan
Thomas Hoehner
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Tel: (315) 425-2700

Jeffrey R. Gargano
Devon C. Beane
Melissa Haulcomb
K&L Gates LLP
70 W. Madison Street, Suite 3300
Chicago, IL 60602
T: 312.372.1121

*Lisa J. Pirozzolo*
Lisa J. Pirozzolo