**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BAXTER INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:15-cv-009986 |
| | ) | |
| v. | ) | Hon. Nancy L. Maldonado |
| | ) | |
| CAREFUSION CORPORATION, and | ) | |
| BECTON, DICKINSON AND COMPANY, | ) | PUBLICLY FILED |
| | ) | VERSION |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTIONS *IN LIMINE* REGARDING DAMAGES**

# TABLE OF CONTENTS

**Page**

I.  MIL #1 – There is Sufficient Evidence of Comparability to Allow The Jury to
    Consider the MGH License .................................................................................... 1

II.  MIL #2 – Mr. Sato May Provide Testimony of His Personal Knowledge ......................... 7

III.  MIL #3 – This Motion Should Be Denied Because It Seeks An Improper
     Preemptive Blanket Order............................................................................................ 7

IV.  MIL #4 – To the Extent Plaintiff Intends to Offer the Identified Testimony, it is
     Neither Speculative Nor Hearsay............................................................................... 9

V.  MIL #5 – This Motion Should Be Denied to the Extent It Seeks To Exclude
    Financial Evidence Related to The Royalty Analysis........................................................ 12

    A.  Financial Data Outside the Damages Period is Relevant to Reasonable
    Royalty.....................................................................................................................13

    B.  Total Alaris Revenues Are Relevant to Reasonable Royalty ...............................13

    C.  Sales of Administrative Sets Are Relevant to the Reasonable Royalty................14

VI.  MIL #6 – Plaintiff Is Entitled to Call Mr. Green to Address Facts and Testimony
     related to His Damages Opinion ............................................................................... 15

VII.  Conclusion ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABC Distrib. v. Living Essentials, LLC,*
    No. 15-cv-02064 NC, 2017 WL 11672905 (N.D. Cal. Oct. 19, 2017)............................. 9

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.,*
    694 F.3d 1312 (Fed. Cir. 2012)......................................................................................... 2

*Apple Inc. v. Motorola, Inc.,*
    757 F.3d 1286 (Fed. Cir. 2014)......................................................................................... 2

*Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.,*
    967 F.3d 1353 (Fed. Cir. 2020)..................................................................................... 2, 4

*Cesario v. Jewel Food Stores, Inc.,*
    No. 17 CV 319 2020 WL 996498 (N.D. Ill. Mar. 2, 2020) ............................................. 5

*CIVIX-DDI v. Hotels.com,*
    2012 WL 6591684 (N.D. Ill. Dec. 18, 2012) .................................................................. 4

*Divanovic v. Giordano's Enters.,*
    No. 07 C 1561, 2010 WL 3324887 (N.D. Ill. Aug. 20, 2010) ......................................... 9

*Dow Chem. Co. v. Mee Indus.,*
    341 F.3d 1370 (Fed. Cir. 2003)......................................................................................... 8

*Ericsson, Inc. v. D-Link Sys., Inc.,*
    773 F.3d 1201 (Fed. Cir. 2014)..................................................................................... 1, 2

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC,*
    879 F.3d 1332 (Fed. Cir. 2018)......................................................................................... 8

*Finjan, Inc. v. Secure Computing Corp.,*
    626 F.3d 1197 (Fed. Cir. 2010)......................................................................................... 4

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
    318 F. Supp. 1116 (S.D.N.Y. 1970).............................................................................. 3, 13

*Interactive Pictures Corp. v. Infinite Pictures, Inc.,*
    274 F.3d 1371 (Fed. Cir. 2001)....................................................................................... 14

*Johns Hopkins Univ. v. Alcon Laboratories Inc.,*
    No. CV 15-525, 2018 WL 4178159 (D. Del. Aug. 30, 2018) ......................................... 13

## TABLE OF AUTHORITIES
*(Continued)*

**Page(s)**

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012).........................................................................................6, 13

*Lucent Tech., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)............................................................................................6

*Micro Chem., Inc. v. Lextron, Inc.*,
  31 F.3d 1387 (Fed. Cir. 2004)............................................................................................15

*Moskowitz Family LLC v. Globus Med., Inc.*,
  CV 20-3271, 2023 WL 5487662 (E.D. Pa. Aug. 24, 2023)...............................................3

*Omega Patents, LLC v. CalAmp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) ............................................................................................6

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*,
  No. 09-61490, 2011 WL 1807676 (S.D. Fla. May 12, 2011)....................................11, 12

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
  320CV02390RSHMSB, 2023 WL 2130379 (S.D. Cal. Feb. 10, 2023) ............................3

*Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l*,
  No. 12-1099, 2015 WL 1598085 (C.D. Ill. Apr. 8, 2015) ..............................................12

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
  849 F.3d 1360 (Fed. Cir. 2017)..........................................................................................15

*Rehco LLC v. Spin Master Ltd.*,
  No. 2020 WL 7025091 (N.D. Ill. Nov. 30, 2020)...............................................................8

*Shure Inc. v. Clearone, Inc.*,
  No. 19-1343-RGA, 2021 WL 5014770 (D. Del. Oct. 28, 2021) ......................................16

*Sloan Valve Co. v. Zurn Industries, Inc.*,
  33 F.Supp.3d 984 (N.D. Ill. 2014) .....................................................................................15

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
  883 F.2d 1573 (Fed. Cir. 1989)..........................................................................................15

*Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
  750 F.2d 1552, 224 USPQ 259 (Fed. Cir. 1984) ..............................................................15

*United States v. Ruiz*,
  249 F.3d 643 (7th Cir. 2001) .............................................................................................11

# TABLE OF AUTHORITIES
*(Continued)*

**Page(s)**

*Virnetx, Inc. v. Cisco Sys., Inc.,*
        767 F.3d 1308 (Fed. Cir. 2014)................................................................................. 3, 4, 6

*Weber Mfg. Techs., Inc. v. Plasan Carbon Composites, Inc.,*
        No. 14-cv-12488, 2016 WL 4073545 (E.D. Mich. Aug. 1, 2016)..................................... 9

*Wylie & Sons Landscaping, LLC v. FedEx Ground Package Sys., Inc.,*
        696 Fed. Appx. 717 (6th Cir. 2017)................................................................................... 5

## RULES

FRE 803(1).............................................................................................................................. 10

FRE 803(3).............................................................................................................................. 10

Defendants' damages-related motions *in limine* should be denied. Several of Defendants' motions seek to hold Plaintiff to a standard that does not exist – implying a requirement that expert testimony is necessary for the mere admission of factual evidence that supports its damages case. Yet, the United States Court of Appeals for the Federal Circuit has repeatedly held that expert testimony is not required to present a damages case in a patent infringement action. Other of Defendants' motions seek to limit Plaintiff's evidence in ways that are not required and are inconsistent with the accepted *Georgia-Pacific* methodology for the determination of reasonable royalty damages in patent cases. Because the scope of evidence considered under the *Georgia-Pacific* factors is exceedingly broad, those motions *in limine* should be denied as well.

## I.      MIL #1 – THERE IS SUFFICIENT EVIDENCE OF COMPARABILITY TO ALLOW THE JURY TO CONSIDER THE MGH LICENSE

Defendants' first motion *in limine* seeks to exclude the MGH-Sigma License.[1] Defendants allege that the MGH License is not comparable to this case's hypothetical negotiation and that Baxter's witnesses do not have sufficient personal knowledge to support admission of the MGH License. However, the question of comparability goes to the sufficiency of the evidence and Plaintiff's witnesses have personal knowledge of this license from their work. Plaintiff should have the opportunity to present that evidence.

The Federal Circuit has "recognized that licenses may be presented at trial to help the jury decide an appropriate royalty award." *See Ericsson, Inc. v. D-Link Sys., Inc.,* 773 F.3d 1201, 1227–28 (Fed. Cir. 2014) (citations omitted). But prior licenses are almost never perfectly analogous to the infringement action. *See id.* For example, factors like the number of patents involved, the scope

---

[1] Defendants' motion addresses two additional licenses, the Cerner and CareEverywhere Licenses. Baxter is mindful of the Court's Standing Orders directing that "parties should submit a list of trial exhibits they definitely intend to introduce." Accordingly, rather than contest every last issue in Defendants' motion, Baxter is electing to focus its opposition to Defendants' motion on the MGH License. Baxter reserves the right to address the other two licenses at trial if Defendants open the door to doing so.

and term of the agreement, the technology covered, and the relationship between the parties all may lead to differences in the appropriate royalty for the covered technology. *See id.* The fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility. *Id.*; )*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1326 (Fed. Cir. 2014) ("Here, whether these licenses are sufficiently comparable such that Motorola's calculation is a reasonable royalty goes to the weight of the evidence, not its admissibility."). Where the licenses meet a showing of baseline technological and economic comparability, the degree of comparability is a factual issue best addressed through cross examination and not by exclusion. *See Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1374 (Fed. Cir. 2020); *see also ActiveVideo Networks, Inc. v. Verizon Communications, Inc.,* 694 F.3d 1312, 1333 (Fed. Cir. 2012). The MGH License meets at least a baseline level of comparability.

With respect to technical comparability, Plaintiff's technical expert Warren Heim opined that the MGH License is technically comparable to the technology of the '805 Patent, and Ken Lynn, a co-inventor of the '805 Patent provided additional testimony regarding the relevant technology. (Ex. H, Heim report at § 648.) The '805 Patent is directed to an improved infusion pump that includes particular claimed features, including software allowing for a user-friendly graphical interface and improved workflow, intended to increase safety and minimize medication errors. ('805 Patent claim 1; Ex. I - Lynn Dep 20:24-22:6; 27:20-30:8.) The MGH License is directed to the drug library, which is a software-related feature used in infusion pumps including Defendants' accused products[2] and the license itself covers the Sigma pump sold by Plaintiff. In other words, the MGH License and the '805 Patent are drawn to related technology, as both are

---

[2] *See* Lynn dep. 126:11-19; As noted in Baxter's motion *in limine*, Defendants also produced at a very late date a different MGH License that appears to license the MGH patents to Defendants for use in the accused infringing products. The fact that the MGH License covers the same products as are accused of infringement in this case demonstrates technological overlap. *See Moskowitz,* 2023 WL 5487662 at *6.

directed to software features of the infusion pump technology used in the accused infringing pumps, each intended to reduce medication errors and increase patient safety. *See, e.g., Virnetx, Inc. v. Cisco Sys., Inc.,* 767 F.3d 1308, 1330 (Fed. Cir. 2014) (affirming the admission of licenses directed to related technology). This is sufficiently comparable to meet the baseline standard provided by the Federal Circuit. *See, e.g., Moskowitz Family LLC v. Globus Med., Inc*., CV 20-3271, 2023 WL 5487662, *6 (E.D. Pa. Aug. 24, 2023) (finding licenses comparable where all addressed devices for implantation into or fixation of the spine and citing favorably that the patents in the comparable license had been asserted against the same accused products, "suggesting at least some overlap in the technology"); *Pelican Int'l, Inc. v. Hobie Cat Co.,* 320CV02390RSHMSB, 2023 WL 2130379,*28 (S.D. Cal. Feb. 10, 2023) (finding trademark license granting ability to use kayak designs to be sufficiently comparable to a patent claiming watercraft/kayak with an interface). The testimony of Mr. Heim and Mr. Lynn provides ample evidence of technological comparability.

Defendants' only argument appearing to challenge technical comparability is a red herring. Defendants cite the Court's prior procedural decision (Dkt. 286) finding that Plaintiff's *identification* of Defendants' Guardrails software that encompasses Defendants' drug library in its Infringement Contentions was insufficient. Defendants seem to imply that because the drug library is not accused of infringement in this case, it is not technologically comparable. (Motion at 4.) The Court's decision took issue with the way Plaintiff complied with the local rules and in no way addressed a technical comparison between drug libraries and the '805 Patent. It is therefore irrelevant. Moreover, Defendants cite no case in support of this contention. Comparable licenses are not required to cover features accused of infringing the patent-in-suit. *See Georgia-Pacific Corp. v. U.S. Plywood Corp*., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (setting out factor 12, at

issue here, which encompasses the portion of the profit or selling price that may be customary for use of the invention *or analogous inventions*) (*emphasis* added); *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) (Federal Circuit has "never required identity of circumstance;" courts may admit licenses to "technologies *other* than the patent in suit.").

With respect to economic comparability, Defendants first identify that there are differences between the terms of the MGH license and a license resulting from the hypothetical negotiation (Motion at 4). But Defendants' own expert has extensively opined about these differences and their effect on a hypothetical negotiation. In fact, he ultimately compares his proposed reasonable royalty rate to the rate of the MGH License as a reasonableness check. (Ex. J at 44-45; 57; 66-67.) Although Mr. Green concludes that the License is not economically comparable to a hypothetical negotiation, this conclusion is a fact issue for the jury to decide. *See, e.g., Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1374 (Fed. Cir. 2020). But Mr. Green's testimony on this point addresses Defendants' concerns regarding the jury's ability to adjust the hypothetical negotiation royalty rate as compared to the MGH License. *See, e.g., Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211-1212 (Fed. Cir. 2010).

Defendants then seek to exclude the MGH License arguing that none of Baxter's fact witnesses has the requisite knowledge to account for the economic differences already addressed by Mr. Green. (Motion at 5.) This argument hinges on their assertion that "[l]ay witnesses must have personal knowledge of the negotiations or terms of a license to testify about that license." But the only case Defendants cite to support that contention contains no such requirement. (Motion at 4 citing )*CIVIX-DDI v. Hotels.com*, 2012 WL 6591684 at *4 (N.D. Ill. Dec. 18, 2012).) The court in *CIVIX-DDI* does nothing more than limit a witness's testimony to his personal knowledge. Here, as set out below, Plaintiff's witnesses are offered for their personal knowledge. And that

4

knowledge is sufficient to permit the jury to weigh the economic differences between the MGH License and the hypothetical negotiation.

The patents licensed by MGH were co-invented by Plaintiff's employees along with Dr. Nathaniel Sims, and Plaintiff helped fund the research that resulted in the licensed technology. (*See* Ex. K.) As Director of Engineering from 1993-1999, Mr. Lynn was both the leader of the team that created the Colleague pump and was familiar with the work being done by Plaintiff's employees working with Dr. Sims. (*See* Ex. I - Lynn dep 22:23-26:11; 129:13-130:11; 150:8-154:8.) He has personal knowledge of both the technology covered by the '805 Patent, which he co-invented, and the technology covered by the MGH License. *Id.* He also has personal knowledge that Plaintiff did not ordinarily license the technology it developed and also that it made an exception for the project that included Dr. Sims, which he understood to be a requirement from Dr. Sims for the collaboration[3]. (*See* Ex. I - Lynn dep 123:18-124:21; 150:8-19.)

Plaintiff's fact witness Eric Sato testified to the relationship between the parties, his knowledge of Baxter's history of not licensing to competitors, and his understanding why. (Ex. L Sato dep. at 135:20-138:12.) Plaintiff's fact witness Dennis Vaughn has personal knowledge of the terms of the MGH License and how Baxter interpreted those terms when making royalty payments once Baxter began selling Sigma Spectrum pumps. (Ex. M - Vaughn dep. 76:1-77:17; 78:12-79:10; 80:3-81:14; 82:7-83:19.) Defendants challenge Mr. Vaughn's testimony because he

---

[3] Although Defendants seek to exclude this testimony as hearsay, it is not hearsay. It is Mr. Lynn's understanding of Plaintiff's reason for choosing to license the technology it co-invented with Dr. Sims. It is not offered for the truth of the matter stated, but instead goes to Plaintiff's motive. *See Wylie & Sons Landscaping, LLC v. FedEx Ground Package Sys., Inc.,* 696 Fed. Appx. 717, 722 (6th Cir. 2017) (finding statement not hearsay where it explained why a corporate took a particular action). The sole case cited by Defendants is directed to statements the court characterized as "office gossip" and statements about employee performance made outside the scope of the speaker's job responsibilities. *See Cesario v. Jewel Food Stores, Inc.*, No. 17 CV 319 2020 WL 996498, at fn. 22, fn. 22 (N.D. Ill. Mar. 2, 2020).

did not negotiate the license and does not have knowledge of the technology covered by the license. (Motion at 5.) But he is not offered for those topics.

Defendants argue that the information provided by the fact witnesses is not sufficient to allow the jury to determine economic comparability. But it is sufficient for the jury to understand and weigh any relevant differences. *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) (presentation of the differences to the jury allowed them to fully evaluate the relevance of the licenses). The cherry-picked language in the cases cited by Defendants does not require more and is inapposite. Those cases involve expert witnesses who addressed a large number of licenses and failed to provide sufficient detail as to each. *See Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1328-1329 (Fed. Cir. 2009) (expert testimony as to eight agreements found "superficial" where Court was "simply unable to ascertain from the evidence presented the subject matter of the agreements."); *Omega Patents, LLC v. CalAmp Corp*., 13 F.4th 1361, 1380 (Fed. Cir. 2021) (expert testified as to 18 license agreements some covering what he only described as a "long list of patents" but opined that the same royalty rate would apply regardless of the patents licensed.); *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 80 (Fed. Cir. 2012) (expert testimony relying on industry survey and third party licensing programs stated that they showed the going rate for "those patents which may or may not be as important as the one in question" did not show sufficient comparability)). Here, Plaintiff's fact witnesses and Defendants' damages expert provide sufficient detail regarding the technology and details of the MGH License to permit the jury to weigh any differences.

Because this evidence is more than sufficient to establish baseline comparability allowing the MGH License to be presented to the jury, MIL #1 should be denied as to the MGH License.

## II.    MIL #2 – MR. SATO MAY PROVIDE TESTIMONY OF HIS PERSONAL KNOWLEDGE

Defendants' second motion *in limine* seeks to exclude specific testimony from Mr. Sato that, in his roles in the global commercial team including as Vice President of Marketing, he observed that royalty rates covering infusion pump technology were "either on a per unit basis or some percentage of a sale, typically under 10%." (Ex. L - Sato dep. 144:6-8.) Mr. Sato testified that he had responsibility, on behalf of Plaintiff's global marketing organization, to explore licensing opportunities for infusion pump technology for seven years. (Ex. L – Sato dep. 6:21-7:6; 101:2-103:7.) Mr. Sato may provide testimony regarding his personal observations regarding the infusion pump licenses that he encountered in his work, including the types of royalty rates that he observed. Baxter does not intend to seek his testimony as to an industry standard.

## III.    MIL #3 – THIS MOTION SHOULD BE DENIED BECAUSE IT SEEKS AN IMPROPER PREEMPTIVE BLANKET ORDER

In their third motion *in limine* (and in contrast to their fourth motion *in limine*) Defendants do ***not*** identify any specific testimony from Plaintiff's fact witnesses that they seek to exclude. In other words, there is no testimony already given by these witnesses that Defendants want the Court to exclude. Instead, Defendants ask that the Court issue a pre-emptive, blanket order that would prevent Plaintiff's fact witnesses from offering opinion testimony on broad topics in violation of Rule 701 – "Baxter should be precluded from presenting any of the improper fact witness testimony described below under FRE 701 because none of it will be rationally based on 'the witness's perception.'" (*See* Dkt. 562, p. 8.)

Plaintiff does not intend to offer witness testimony that violates Rule 701, but that is not truly Defendants' concern. Defendants refuse to accept that the patent statute "is clear that expert testimony is ***not*** necessary to the award of damages, but rather may be received as an aid." *See Dow Chem. Co. v. Mee Indus.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003) (cleaned up) (emphasis

added). So, Defendants assume that Plaintiff must be planning to offer expert-type opinion testimony through its fact witnesses. The cited deposition testimony reflects this demonstrating that, without first asking the witnesses if they actually had any opinions, Defendants attempt to lay the foundation to argue that Plaintiff's fact witnesses are unqualified to offer opinion testimony.

This motion is a red herring. Plaintiff does ***not*** intend to solicit ***opinion*** testimony from its fact witnesses concerning how license rates would be adjusted in the hypothetical negotiation, or what would be the license terms in a hypothetical negotiation, or the monetary value of the claimed invention, or how to apportion the patented invention as compared to non-patented features in an economic sense. To be sure, Plaintiff's fact witnesses will testify as to facts that are relevant to these issues. But, reaching conclusions based on those facts will be left to the jury, which will be instructed by the Court on the *Georgia-Pacific* factors. *See Rehco LLC v. Spin Master Ltd.*, No. 2020 WL 7025091, at *9-10 (N.D. Ill. Nov. 30, 2020) (declining to disturb jury award where plaintiff offered apportionment evidence "specifically outlined in *Georgia-Pacific Corp.*" and did not support it with expert testimony); *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) ("The standard *Georgia-Pacific* reasonable royalty analysis takes account of the importance of the inventive contribution in determining the royalty rate that would have emerged from the hypothetical negotiation.") (cleaned up).

Defendants' request for a pre-emptive, blanket order that is detached from any specific opinions that Defendants find objectionable should be denied. This issue is better left to trial when, if it arises at all, the Court will be able evaluate a specific lay opinion under the requirements of Rule 701. *See Divanovic v. Giordano's Enters.*, No. 07 C 1561, 2010 WL 3324887, *3 (N.D. Ill. Aug. 20, 2010) ("What defendant seeks to prohibit under this rubric, seeking a blanket exclusion in advance of trial, ***is really inappropriate***. Instead, the proper question is whether any employee-

witness has any relevant evidence to which that person can testify. And that fact-specific question is ***best addressed at the time of trial***.") (emphasis added); *ABC Distrib. v. Living Essentials, LLC*, No. 15-cv-02064 NC, 2017 WL 11672905, *2 (N.D. Cal. Oct. 19, 2017) ("The Court DEFERS defendants' challenge to 'improper lay opinion' . . . until trial. The ***Court will need <u>foundation</u> and <u>context</u> to resolve these objections*** . . . .") (emphasis added); *Weber Mfg. Techs., Inc. v. Plasan Carbon Composites, Inc.*, No. 14-cv-12488, 2016 WL 4073545, *9 (E.D. Mich. Aug. 1, 2016) (Denying without prejudice to raise objections at trial motion to exclude lay opinion testimony because "whether each witness's testimony is permissible lay opinion based on the witnesses' percipient responsibilities and what they actually observed . . . ***cannot be addressed in a <u>vacuum</u> or a '<u>blanket</u>' order in advance of trial***.") (emphasis added).

## IV.     MIL #4 – TO THE EXTENT PLAINTIFF INTENDS TO OFFER THE IDENTIFIED TESTIMONY, IT IS NEITHER SPECULATIVE NOR HEARSAY

Defendant's fourth motion *in limine* seeks to exclude statements made to Plaintiff's witnesses concerning Plaintiff's Colleague infusion pump under Rules 602 (personal knowledge) and 802 (hearsay).

With respect to Dr. Bello and Mr. Vaughn, Plaintiff does not intend to introduce through those witnesses the testimony objected to in Defendants' motion. (Ex.15 to Def.'s Motion, Bello dep. at 70:4-22; Ex. 13 to Def.s' Motion, Vaughn dep. at 105:16-106:21.)

With respect to Mr. Sato, there are no statements recounted in his cited testimony (Ex. 17: 125:8-126:6.) In those portions of his transcript, he testified as to what customers did when the Colleague recall occurred (happily moved to a different device or reluctantly moved to a different device) not what they said. He also testified as to the share of the market enjoyed by the Colleague pump. This testimony was based on his personal knowledge from his marketing role at Plaintiff and his involvement with the Colleague pump recall. That is the only Sato testimony objected to

by Defendants' motion. There are no out-of-court statements. It is not hearsay. And it is based on his personal knowledge. There is no basis to exclude his testimony.

With respect to Mr. Lynn, the first category of objected to testimony concerns statements made by potential customers and sales representatives for Defendants' predecessors when they saw the Colleague pump for the first time when it made its public debut at a trade show in Orlando, Florida. (Ex. 14 at 139:12-140:17.) As an initial matter, some of the objected to testimony concerns what people at the trade show did in front of Mr. Lynn, not what they said to him – *i.e.*, "there was probably as many competitive salespeople in that booth as there were customers, all clamoring to try and get their hands around that product" and "we had two IVAC salesmen come up to me and hand me their business cards." There is no basis to exclude that testimony. It is not hearsay.

The only actual statement contained in that portion of his testimony was Mr. Lynn's recollection that the two IVAC salesmen, upon seeing the Colleague for the first time, told Mr. Lynn that "there's no way we can compete with this and we want to join Baxter." That statement falls within at least two different hearsay exceptions – then-existing state of mind (Rule 803(3)) and present sense impression (Rule 803(1)). With respect to the then-existing state of mind, the statement reflects that, upon seeing the Colleague pump for the first time, the IVAC salesmen were worried about their ability to compete. *See Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-61490, 2011 WL 1807676, *3 (S.D. Fla. May 12, 2011) (statements made by customers about products and recorded in a written log "reflect the customers' then-existing state of mind, i.e., confusion" and statements recounted by one of plaintiff's employees made by customers about such products at a bridal show "are admissible under the 'then-existing state of mind' hearsay exception."). For the present sense impression exception, the IVAC salesmen were at the trade show and personally saw the debut of the Colleague pump, their statement was a simple,

10

uncalculated description of their honest reaction to seeing the Colleague for the first time, and they made the statement immediately upon seeing the Colleague pump. *See United States v. Ruiz*, 249 F.3d 643, 646-647 (7th Cir. 2001) ("Courts have agreed on three principal criteria for the admission of statements pursuant to [Rule 803(1)]: (1) the statement must describe an event or condition without calculated narration; (2) the speaker must have personally perceived the event or condition described; and (3) the statement must have been made while the speaker was perceiving the event or condition, or immediately thereafter.").

Although not actually referenced in Defendants' motion, statements made to Mr. Lynn by potential customers during the Colleague pump product trials in Peoria, Illinois (Ex. I, 140:18-141:16) similarly fall within then-existing state of mind and present sense impression exceptions to the hearsay rule. The statements reflect the potential customers' amazement and surprise (then-existing state of mind) and their uncalculated, contemporaneous statements of their initial impressions on seeing the Colleague pump operate (present sense impression). They are admissible and should not be excluded. *See Pandora*, 2011 WL 1807676, at *3; *Ruiz*, 249 F.3d at 646-647.

The second category of objections concern statements made to Mr. Lynn by nurses at a trade show in Las Vegas, Nevada after the recall of the Colleague pump became public. (Ex. I at 149:8-150:7.) As an initial matter, not all of the statements are hearsay. Mr. Lynn's testimony that "when we started removing the Colleague pumps, we had customers that were actually resisting removal, and they said, 'No, we own the product. We're not going to give it back to you'" will not be offered for the truth of the matter asserted and is therefore not hearsay as defined by Rule 801(c)(2). This statement will not be offered to prove that the customers actually refused to give the pumps back, but rather to prove they liked the pumps and did not want to give them up. Mr. Lynn testified that the customers surrendered the pumps. As for the only other statement in this

11

portion of Mr. Lynn's testimony – *i.e.*, "I went in an elevator, and there were three or four nurses in the elevator, and they said, 'Please tell us you're not here to remove our Colleague pumps. We don't want to have those removed." – that statement falls within the then-existing state of mind exception. It goes to the fact that the nurses were upset about giving up their Colleague pumps. *See Pandora*, 2011 WL 1807676, at *3.

Finally, with respect to Mr. Lynn not being able to remember the names of the people he spoke to, or the fact that the conversations occurred a long time ago, or even the "anecdotal" nature of his testimony, those are all factors that go the weight of his testimony, not admissibility. Defendants will be able to cross-examine Mr. Lynn. *See Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l*, No. 12-1099, 2015 WL 1598085, *2 (C.D. Ill. Apr. 8, 2015) ("While Defendants have identified several inconsistencies or weaknesses in Smith's testimony, these inconsistencies go to weight rather than admissibility and can be addressed through rigorous cross-examination.").

## V.    MIL #5 – THIS MOTION SHOULD BE DENIED TO THE EXTENT IT SEEKS TO EXCLUDE FINANCIAL EVIDENCE RELATED TO THE ROYALTY ANALYSIS

Defendants' fifth motion *in limine* seeks to exclude a broad swath of financial information relevant to the jury's determination of a reasonable royalty applying the *Georgia-Pacific* factors. Defendants' motion narrowly (and improperly) focuses only on whether or not the financial data is applicable to the royalty base to which a royalty rate should be applied, which Plaintiff agrees here is the PC Unit sales. However, the motion ignores that selection of a royalty rate encompasses a much broader range of relevant financial information. To the extent Defendants' motion seeks to exclude sales data related to the Alaris System and related administrative set sales, including

sales within the life of the patent, but outside of the damages period, the motion should be denied because such data is relevant and necessary to the *Georgia-Pacific* analysis.[4]

### A.  Financial Data Outside the Damages Period is Relevant to Reasonable Royalty

Defendants seek to exclude evidence concerning sales made outside the damages period, but within the life of the patent, but cite no case finding such evidence improper. Plaintiff has limited its royalty base to account for the statutory limit on the recovery of damages. But the hypothetical negotiation seeks to determine a royalty rate based on the value of the patented technology at the time infringement began (*i.e.*, 2001), including consideration of both the length of the remaining life of the patent and the term of any license. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). The statutory limit on damages is a separate consideration that limits plaintiff's recovery but does not alter the hypothetical negotiation analysis. *See LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 75 (Fed. Cir. 2012) (distinguishing between the statutory damages period and the hypothetical negotiation); *Johns Hopkins Univ. v. Alcon Laboratories Inc.*, No. CV 15-525, 2018 WL 4178159, at *15 (D. Del. Aug. 30, 2018) (denying motion to exclude evidence outside the damages period because such evidence may be relevant to hypothetical negotiation). Because financials during the entire length of the expected license are relevant, this aspect of Defendants' motion should be denied.

### B.  Total Alaris Revenues Are Relevant to Reasonable Royalty

The *Georgia-Pacific* factors contemplate the parties to a hypothetical negotiation will consider the entire benefit that the licensee would obtain from taking a license to the patented technology. *Georgia-Pacific* factor 8 is directed to the profitability, commercial success, and

---

[4] To the extent Defendants' motion seeks to exclude reference to Defendants' size, financial resources, alleged market power, market capitalization, or overall financial performance, Plaintiff does not intend to offer such testimony unless Defendants place it at issue. Nor does Plaintiff intend to show that "CareFusion has the ability to pay a significant damages award."  (Motion at 14.)

popularity of the product made under the patent. Factor 11, as characterized by Defendants' own expert, is directed to "the extent to which the infringer has made use of the invention, and any evidence probative of the value of that use." (Ex. J Green Report at 38.) As shown by Mr. Green's report analyzing these factors, the *Georgia-Pacific* analysis includes consideration of the accused infringer's profits, expected sales revenue, and actual sales revenue. *See, e.g., Interactive Pictures Corp. v. Infinite Pictures, Inc.,* 274 F.3d 1371, 1384 (Fed. Cir. 2001). Further, though Plaintiff has apportioned its damages base by limiting that base to the PCU unit revenues, the accused infringing product in this case is broader than just the PCU units and includes other components such as pumping units. (Ex. N Final Infringement Contentions.) To account for the value of the full invention applying the *Georgia-Pacific* factors, the jury will need to consider the total Alaris sales.

### C. Sales of Administrative Sets Are Relevant to the Reasonable Royalty

*Georgia-Pacific* factor 6 is directed to "the effect of selling the patented specialty in promoting sales of other products of the licensee." This factor recognizes, that when determining an appropriate royalty rate, a hypothetical licensee would consider how the ability to use the patented technology would also bring in sales of other products. Defendants' argument that the amount of collateral sales cannot be considered has been repeatedly rejected by the Federal Circuit, which held explicitly that the "value of collateral sales [can] also be factored into the royalty rate." *See, e.g., State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1580 (Fed. Cir. 1989) (citation omitted). Whether the patented technology promotes sales of these other products is a factual issue for the jury. *See Micro Chem., Inc. v. Lextron, Inc.*, 31 F.3d 1387, 1393 (Fed. Cir. 2004).

In *Micro Chem.*, the Federal Circuit rejected the very arguments raised here by Defendants, affirming the district court's ruling that, while collateral sales could not be encompassed in the

royalty base,[5] they are relevant to determining a reasonable royalty. *See id.; see also Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.,* 750 F.2d 1552, 1568, 224 USPQ 259, 269–70 (Fed. Cir. 1984) (holding that profits from sale of non-patented eyeglasses displayed on infringing racks were relevant to reasonable royalty determination). Defendants cite several cases to support exclusion under FRE 403 arguing that the sales figures they seek to exclude have "little probative evidence." None of those cases address the collateral sales as applied to the reasonable royalty analysis and the relevance of the collateral sales figures outweighs any potential theoretical prejudice. *See, e.g., Prism Techs. LLC v. Sprint Spectrum L.P.,* 849 F.3d 1360, 1368 (Fed. Cir. 2017) (affirming denial of Rule 403 motion to exclude admittedly relevant evidence where its probative value was not substantially outweighed by potential undue prejudice). Because a hypothetical negotiator would consider the amount of such sales, the motion should be denied as to administrative sets.

## VI.     MIL #6 – PLAINTIFF IS ENTITLED TO CALL MR. GREEN TO ADDRESS FACTS AND TESTIMONY RELATED TO HIS DAMAGES OPINION

In their sixth motion *in limine*, Defendants seek to preclude Plaintiff "from soliciting testimony from Mr. Green that would amount to a mere restatement of facts outside his personal knowledge." (*See* Dkt. 562, p. 15.) Plaintiff agrees that it will not solicit testimony from Mr. Green constituting mere restatement of facts outside his personal knowledge. However, this should not preclude Plaintiff from calling Mr. Green in its case-in-chief and asking him about facts and testimony in evidence that relate to his disclosed opinions on damages. *See, e.g.*, *Shure Inc. v. Clearone, Inc.*, No. 19-1343-RGA, 2021 WL 5014770, at *1-2 (D. Del. Oct. 28, 2021) (permitting plaintiff to call defendant's damages expert at trial even if defendant chooses not to call her).

---

[5] Defendants cite only one case in support of their position that the "value" of collateral sales should be excluded. That case addressed an expert opinion that "created an over-inclusive royalty base." *Sloan Valve Co. v. Zurn Industries, Inc.*, 33 F.Supp.3d 984, 998 (N.D. Ill. 2014). Baxter does not seek to include any collateral sales in the royalty base, only addressing them in connection with selection of the royalty rate.

## VII.    CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny all aspects

of Defendants' motion unless expressly agreed to by Plaintiff.

Respectfully submitted,

**BAXTER INTERNATIONAL, INC.**

Dated: September 28, 2023                    By: /s/*Julianne M. Hartzell*
                                                  Julianne M. Hartzell
                                                  Kelley S. Gordon
                                                  Chelsea M. Murray
                                                  MARSHALL GERSTEIN & BORUN LLP
                                                  6300 Willis Tower
                                                  233 S. Wacker Dr.
                                                  Chicago, IL 60606
                                                  T: 312.474.6300
                                                  E: jhartzell@marshallip.com
                                                  E: kgordon@marshallip.com
                                                  E: cmurray@marshallip.com


                                                  Douglas J. Nash
                                                  John D. Cook
                                                  Denis Sullivan
                                                  Thomas Hoehner
                                                  BARCLAY DAMON LLP
                                                  Barclay Damon Tower
                                                  125 East Jefferson Street
                                                  Syracuse, New York 13202
                                                  Tel: (315) 425-2700

                                                  ATTORNEYS FOR PLAINTIFF
                                                  BAXTER INTERNATIONAL, INC.

## <u>CERTIFICATE OF SERVICE</u>

I, Julianne M. Hartzell, attorney for Plaintiff Baxter International, Inc. hereby state that on

this 28th day of September, 2023, the foregoing **PLAINTIFF'S OPPOSITION TO**

**DEFENDANT'S MOTIONS *IN LIMINE* REGARDING DAMAGES** was electronically

served by transmission through the Court's ECF Filing system upon all counsel of record.


/s/*Julianne M. Hartzell*
Julianne M. Hartzell