IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAXTER INTERNATIONAL, INC., <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>CAREFUSION CORPORATION, and <br>BECTON, DICKINSON AND COMPANY, <br><br>　　　　Defendants. | **Case No.: 1:15-cv-09986** <br><br>**Judge Nancy L. Maldonado** <br><br>**REDACTED** |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTIONS *IN LIMINE*
REGARDING DAMAGES-RELATED ISSUES**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

I.  Argument ............................................................................................................................. 1

    A.  MIL #1 - Plaintiff's MIL #1 is limited and seeks only to prevent evidence and testimony contrary to the Court's Summary Judgment Order .................................................................................................................. 1

    B.  MIL #2 - Defendants should be precluded from any reference to their own Eggers Patent or any other patent alleged to cover features of the Defendants' accused infusion pump because such references are likely to cause jury confusion. ................................................................................ 3

    C.  MIL #3 – Defendants fail to meet their burden to establish that their reliance on the Late Produced Licenses is justified or harmless .......................... 6

    D.  MIL #4 - Defendants should be precluded from presenting any testimony or argument regarding recalls of Plaintiff's Colleague Pump ............. 11

II.  Conclusion ........................................................................................................................ 15

CERTIFICATE OF SERVICE ..................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AstraZeneca AB v. Apotex Corp.*
   782 F.3d 1324 (Fed. Cir. 2015)..................................................................................................3

*Bio-Technology General Corp. v. Genentech, Inc.*
   80 F.3d 1553 (Fed. Cir. 1996)....................................................................................................4

*David v. Caterpillar, Inc.*
   324 F.3d 851, 857 (7th Cir. 2003) ...........................................................................................11

*Ericsson, Inc. v. D-Link Sys., Inc.*
   773 F.3d 1201 (Fed. Cir. 2014)..................................................................................................3

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*
   879 F.3d 1332 (Fed. Cir. 2018)..................................................................................................2

*Fautek v. Montgomery Ward & Co.*
   96 F.R.D. 141 (N.D. Ill. 1982)...................................................................................................7

*Finwall v. City of Chicago*
   239 F.R.D. (N.D. Ill. 2006).......................................................................................................10

*Fiskars, Inc. v. Hunt Mfg. Co.*
   221 F.3d 1318 (Fed. Cir. 2000)..................................................................................................4

*Fresenius Med. Care Holdings, Inc., v. Baxter Int'l, Inc.*
   C 03-01431 SBA(EDL), 2006 WL 1646113 (N.D. Cal. June 12, 2006)................................12

*ICU Medical, Inc. v. RyMed Technologies, Inc.*
   752 F.Supp.2d 486 (D. Del. 2010)...........................................................................................14

*Kearns v. Chrysler Corp.*
   32 F.3d 1541 (Fed. Cir. 1994)....................................................................................................5

*NeuroGrafix v. Brainlab, Inc.*
   No. 12 C 6075, 2021 WL 1057312, at *5 (N.D. Ill. Mar. 18, 2021) .......................................11

*Oslon v. Ford Motor Comp.*
   410 F.Supp. 2d 869 (D.N.Dakota 2006) .................................................................................14

# TABLE OF AUTHORITIES
(*Continued*)

**Page(s)**

*Paramount Media Grp., v. Vill. Of Bellwood*
  2015 WL 5307483, at *3 (N.D. Ill. Sept. 10, 2015) .................................................................10

Defendants' Opposition to Baxter's Motions *in Limine* fails to rebut the undue prejudice and irrelevance of the testimony and evidence to be excluded as identified in Baxter's Opening Brief. With respect to MIL #1, seeking to exclude testimony contrary to the Court's Summary Judgment Order, Defendants misunderstand the scope of the motion and offer no justification for why testimony contrary to the Court's Order should be admissible. With respect to MIL #2, seeking to prevent jury confusion regarding references to patents not in suit that may cover Defendants' products, Defendants fail to address the undue prejudice and confusion that Baxter identified. Responding to MIL #3, Defendants fail to meet their burden to establish that their years-late production of documents is justified or harmless. And with respect to MIL #4, seeking to prevent the undue prejudice and distraction that would be caused by references to Baxter's Colleague pump recall, Defendants fail to identify any reason that reference to the recall is necessary and do not address Baxter's concern regarding the resulting undue prejudice. Because Defendants' Opposition does not overcome the grounds set forth in Baxter's Motion, each of Plaintiff's Motions *in Limine* should be granted.

**I. Argument**

    **A. MIL #1 - Plaintiff's MIL #1 is limited and seeks only to prevent evidence and testimony contrary to the Court's Summary Judgment Order.**

Defendants' Response to Plaintiff's MIL #1 misunderstands the scope of the motion and ignores the prejudice that the Motion seeks to address, resulting in spurious and unsupported allegations directed to Baxter's motives. (Dkt. 567 at 2-3.) Plaintiff does not seek to prevent Defendants from presenting evidence of their position that certain (or even many) elements of the claimed invention were known in the prior art, but only preventing the legally incorrect claim that *all* elements of the claimed invention were known in the prior art or that the claimed invention is

just or is merely a combination of known elements, as repeatedly asserted in Mr. Green's expert report. The Court has already decided that Defendants failed in their effort to prove that point, so any statements to that effect would be contrary to the Court's Summary Judgment ruling, confusing to the jury, and result in unfair prejudice to Baxter because they imply that invalidity remains at issue in the case.[1]

Defendants' opposition brief demonstrates their misunderstanding of the motion, both by characterizing it as broad and by identifying a long list of testimony that Defendants contend should be allowed. But Baxter hasn't challenged the substance of that testimony - at least not in connection with this motion.[2] To the contrary, the motion is limited in scope with specific examples from Mr. Green's report that reflect the challenged testimony. (Dkt. 553 at 2, fn. 1.)

Defendants' opposition also fails to address the prejudice argument raised by Plaintiff. Here, where the Court has ruled that Defendants failed to establish an invalidity case, any testimony that implies such invalidity (*i.e.*, statements that all elements of the claimed invention were known, that the invention is merely or nothing more than a combination of known elements, or that there are no non-obvious differences between the claimed invention and the prior art) allow an end-run around the Court's grant of summary judgment and are likely to provide the jury with an improper basis to find in Defendants' favor. The cases cited by Defendants do not deal with this situation. For example, in *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332 (Fed. Cir. 2018), patent invalidity was a live issue in the case. Further, the reversible

---

[1] This would be particularly confusing to this jury because there will be no jury instructions explaining what is required to prove invalidity based on prior art given that it is no longer at issue in the case. Jurors would be left only hearing insinuations and suggestions of such invalidity.

[2] There is one exception. Defendants do cite testimony from Mr. Kirkpatrick's expert report (Ex. 33 cited in fn.4) that appears to take the position that the claimed means-plus-function elements were known in the art. That is precisely what the Court found Defendants failed to prove. *See* (Dkt. 432 at pp. 1-5; 21-23.)

error cited by Defendants was an exclusion of prior art based on the court's misunderstanding that prior art needed to be commercialized in order to be relevant to damages. Except as addressed in MIL #2, Baxter does not seek to exclude testimony regarding prior art or the state of the art. MIL #1 addressed only testimony regarding the already-decided issue that Defendants failed to show that *every* element of the claimed invention was in the prior art. Similarly, *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015) only emphasizes that the *Georgia-Pacific* factors are intended to identify the value of an invention, including in circumstances where some conventional elements are part of the invention. In that circumstance, the court noted that it is improper to subtract out the value of those conventional elements, particularly as they can be rendered more valuable when combined with an invention[3]. Baxter agrees.[4]

Thus, any evidence or arguments that the '805 Patent is the combination of known elements should be excluded because it is irrelevant, contrary to the Court's Summary Judgment ruling, and likely to cause undue prejudice under FRE 402 and 403.

**B.    MIL #2 - Defendants should be precluded from any reference to their own Eggers Patent or any other patent alleged to cover features of the Defendants' accused infusion pump because such references are likely to cause jury confusion.**

In its motion, Plaintiff argued under Rule 403 of the Federal Rules of Evidence that a preclusion order should be entered concerning Defendants' Eggers Patent (*i.e.*, U.S. Patent No. 5,713,856 (Dkt. 555-2)) and any other patent alleged to cover features of the accused Alaris System

---

[3] *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1223; 1233 (Fed. Cir. 2014) does not specifically address the value conferred by a novel combination including some conventional elements, but instead addresses the value of a standard essential patent that covers a small part of a standard.

[4] But Defendants' characterization in the motion that this patent "combines 'old elements'" is legally inaccurate to the extent they seek to imply that the '805 patent *only* combines "old elements." That is exactly what the summary judgment decision found that Defendants failed to prove.

(collectively, the "Patents-at-Issue") for multiple reasons. Chief among them being that such evidence is likely to confuse the jury and cause its members to erroneously believe Defendants' accused pump is different than Plaintiff's asserted '805 Patent and therefore the pump cannot infringe that patent - in short, the misconception that the existence of the Patents-at-Issue precludes the possibility of infringement. The Federal Circuit is aware of this common misconception and has rejected it. *See Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996); *see also Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000) ("It is well established that separate patentability does not avoid [infringement] as a matter of law.").

In response, Defendants note that "[Plaintiff] does not identify a *single* instance in which [Defendants have] suggested [they do] not infringe merely because of the existence of the [Patents-at-Issue]" and further claim they "[do] not intend to so argue." (Dkt. 567 at 5-6.) This irrelevant misdirection should be ignored completely. The risk the jury will come to this improper conclusion arises once the Patents-at-Issue are presented to the jury and/or admitted into evidence. This risk is not dependent upon Defendants' intentions nor even upon Defendants affirmatively making an improper argument concerning non-infringement. In fact, it is essentially black letter law that patentability does not avoid infringement. *See Fiskars,* 221 F.3d at 1324 ("It is well established that separate patentability does not avoid [infringement] as a matter of law."). Permitting Defendants to make such an argument even impliedly would likely be reversible error, therefore Defendants' promise not to do so explicitly is an empty one, should be ignored, and moreover, misses the point of Plaintiff's motion entirely.

Defendants go on to cite many cases as purported support for their opposition to this motion. However, at no point do Defendants *specifically identify* for the Court a case with circumstances analogous to the relatively unusual circumstance of this case – *i.e.*, a case in which

a defendant's anticipation and obviousness defenses are not being tried alongside infringement. In its motion, Plaintiff pointed out that courts typically exclude evidence concerning other patents, and in particular, patents owned by the accused infringer, under FRE 403 in this circumstance because such evidence would be unfairly prejudicial and likely to create confusion in the minds of a lay jury. *See*, *e.g.*, *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1547 (Fed. Cir. 1994) (affirming decision to exclude prior art patents where trial court concluded that defendant's "attempts to offer such evidence constituted a disguised, 'back door' attack on the validity of the patents, which was expressly proscribed by" an earlier finding that the patents in suit were not invalid). In its opposition, Defendants do not address, let alone distinguish, the cases cited by Plaintiff as part of their failed effort to suggest a different result.

Instead, Defendants cite a number of inapposite cases in which a court permitted the use of non-asserted patents for a variety of purposes those courts deemed relevant, such as state of the art or damages. However, even assuming *arguendo* that the Patents-at-Issue are relevant, this alone is not enough to warrant denial of Plaintiff's motion. Indeed, such relevance, along with any theoretical probative value, would be substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and/or needlessly presenting cumulative evidence. *See* FRE 403. More specifically, any possible relevance is substantially outweighed by the possibility that the jury would either draw the false impression that the existence of those patents means that the accused Alaris system is substantially different from the pump claimed in the '805 Patent thereby preventing in their mind a finding of infringement, or the false impression that the '805 Patent is invalid, or both.

Defendants barely address the Rule 403 arguments advanced in Plaintiff's motion, merely claiming that "Baxter cannot credibly argue that it would be prejudiced by CareFusion's use of its

5

own patents, such as the Eggers patent (which explains, *e.g.,* the relevant circuitry within the Alaris Point-of-Care Unit (PCU')) to show how the accused Alaris product works." (Dkt. 567 at 6.) Setting aside the fact that that statement is conclusory, Defendants do not provide any support for the premise that the accused Alaris system utilizes any "circuitry" disclosed in the Eggers patent. Nor can they.

In his report, Defendants' technical expert claimed that "[t]he Alaris System architecture was disclosed publicly in Alaris Medical Systems' Eggers patent" and it "illustrates the circuitry within the Alaris System's PCU in Figure 3 (including 'Power Management' processor 254) and illustrates the pump module circuitry in Figure 6 (including 'Keyboard/Display Controller' 362). (Ex. O - Kirkpatrick Supplemental Non-Infringement Report at ¶ 88.) Yet, at his subsequent deposition, the expert admitted that he had not analyzed the accused Alaris System as it relates to the Eggers patent:

> I cannot say exactly that everything that's in this patent was implemented in the Alaris System. And I cannot say what all the changes were to the Alaris System after this patent was issued. *I didn't perform the analysis to take a look at all the things that changed on the Alaris System from the time that -- that the Eggers patent was issued on March 13th, 1995*.

(Ex. P - 2022.08.03 Kirkpatrick Deposition 45:15-21 (emphasis added).) As a result, the basis for Defendants' sole argument as to why Plaintiff would not be prejudiced is unsupported and should be rejected. Defendants' motion *in limine* should be granted.

### C. MIL #3 – Defendants fail to meet their burden to establish that their reliance on the Late Produced Licenses is justified or harmless.

Defendants do not dispute that the two Late-Produced Licenses were not produced in fact discovery, but only recently provided to Baxter. (Dkt. 567 at 6.)[5] Earlier in this case, when faced

---

[5] Defendants mischaracterize the timing as occurring during a "supplemental damages period." (Dkt. 567

6

with a fact witness disclosed for the first time on March 13, 2020, after fact discovery closed on July 19, 2019, this Court strictly applied Rule 37 and excluded any testimony from Baxter's disclosed witness Deborah Marin. (Dkt. 287; Dkt. 308.)[6] The Court found that conducting an incomplete initial investigation that failed to identify the witness during fact discovery did not justify late disclosure of the witness. Defendants have offered no better justification for their failure to identify relevant license agreements that covered the very products accused of infringement. The same result should be reached by excluding the Late-Produced Licenses.

Defendants do not dispute that the Late-Produced Licenses are responsive to Baxter's discovery requests seeking licenses in connection with the accused products, that Baxter produced the equivalent agreements to which it (or its predecessor) was a party, and that technical and damages experts from both parties considered and analyzed the Baxter-produced versions of the Licenses. (Dkt. 553 at 9-10; Dkt. 555 Ex. D, pp. 39-40, 52.) So, Defendants' assertions that the Late-Produced Licenses "were not the focus of fact discovery," that "***neither*** party's written discovery during the original fact discovery period suggested that the MGH License would be relevant," and that Baxter "never requested [the Rebuttal ▮▮▮ License's] production" are incorrect. (Dkt. 567 at 10-11.) To the extent the Late-Produced Licenses were necessary to provide context, Defendants had the opportunity to present them for that purpose in fact discovery. Fact discovery encompasses all responsive documents, not just those that Defendants choose to prioritize. *Fautek v. Montgomery Ward & Co.*, 96 F.R.D. 141, 145-146 (N.D. Ill. 1982) ("Parties

---

at 6.) But the Court's order allowing Defendants to take limited depositions of fact witnesses did not otherwise reopen fact discovery. (Dkt. 527).

[6] *See also* (Dkt. 286 at 2 (striking theory that Guardrails Software allegedly infringed asserted patent); Dkt. 434 at n.2 (rejecting renewed suggestion that Baxter would "argue infringement of the Guardrails software")).

are required to respond to requests to produce in a complete and accurate fashion.") (citation omitted). Defendants point only to expert discovery and the Court's Order finding that Guardrails was not sufficiently identified in the infringement contentions to support its contention that the Late-Produced Licenses were not relevant to fact discovery. While Baxter disputes that either circumstance renders the agreements it requested in fact discovery to be irrelevant, both of these events occurred in 2020, after the close of fact discovery in 2019 so in fact played no role in what should have been produced. This post-hoc justification offers no support for Defendants' failure to produce the relevant licenses in 2016 when they were requested.

      Defendants seek to minimize their failure to identify the Late-Produced ▆ License by saying it is 15 years old. (Dkt. 567 at 10.) But the agreement was signed in 2001 – the very year that the parties agree the hypothetical negotiation in this case would have taken place. It covered the very products accused of infringement. Under the terms of the agreement, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (Dkt. 569 Ex. 25 at pp. CF056969_0003-0004.) ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ so they cannot point to a later acquisition as the cause of their failure to produce.[7] Each of these facts only further emphasize that the Late-Produced ▆ License was responsive to Baxter's requests for production, rather than justifying Defendants' failure to provide it.

      Defendants' attempts to shift the focus and responsibility to Baxter are improper. First, Defendants' assertions that Baxter knew or should have known about the Late-Produced Licenses

---

[7] Defendants state that these predecessors-in-interest were not subject to a litigation hold but make no representation that Defendants did not have possession of the New Licenses during fact discovery.

8

overstate Baxter's knowledge and discovery obligations. Baxter was not a party to either license, unlike Defendants █████████████████████. The Late-Produced Licenses do not evidence any involvement by Baxter in ███ licensing activities, either generally or related specifically to the Late-Produced ███ license with Defendants' predecessor. At most, it indicates that ███ sought and obtained Baxter's general consent to ███ future licensing activities, if any, prior to entering into this license. (Dkt. 569 Ex. 25 at CF056969_0001.) Nor do Defendants have a basis to assert that Baxter had these Late-Produced Licenses in its Custody or Control, again apparently unlike Defendants. Contrary to Defendants' assertions, Baxter had no obligation to produce documents outside of its custody and control and Defendants cite to no authority for such an obligation. To the extent that Baxter had an awareness that Defendants or their predecessor may have licensed technology covering the accused products (either from deposition testimony or general market awareness), it satisfied any obligation to further explore that awareness by seeking production of those documents, as it did in 2016.

With respect to prejudice, Defendants point only to the fact that the technology of the Late-Produced Licenses is the same as the previously produced Licenses. But the terms of the Late-Produced Licenses are very different and that is relevant to the damages analysis. The parties have briefed how the sufficiency of the extensive fact and expert discovery directed to the licenses that were produced in terms of establishing economic comparability of those licenses. Here, there has absolutely been no fact or expert discovery related to the Late-Produced Licenses. Plaintiff does not even have an identification of Defendants' witnesses that have knowledge of these agreements, their negotiation, or their implementation. Nor has Baxter had an opportunity to explore how these Late-Produced Licenses would affect Mr. Green's reasonable royalty analysis. Baxter would have undoubtedly pursued a great deal of discovery related to the Late-Produced Licenses, potentially

including third party discovery, had they been timely disclosed. *See Paramount Media Grp., v. Vill. Of Bellwood*, 2015 WL 5307483, at *3 (N.D. Ill. Sept. 10, 2015). Nor does the theoretical ability to allow further discovery render Defendants' failure to produce relevant documents harmless. *Finwall v. City of Chicago*, 239 F.R.D. 494, 500 (N.D. Ill. 2006) ("Perhaps the most uninformed aspect of the plaintiff's presentation is the contention that even if the disclosures were untimely they must be tolerated because there is plenty of time before trial ...."). It is unrealistic to assert that the parties could start at square one on discovery related to these Late-Produced Licenses in a case this old, where fact discovery closed so long ago, and the Court has made clear that the trial date will not be moved.

Defendants seek to analogize this unjustified late disclosure to Baxter's supplemental interrogatory response. But, as thoroughly briefed by the parties in Defendants' Motion to Strike that supplemental response, Baxter did not identify any previously undisclosed witnesses or documents in the interrogatory response or, indeed, in the course of the supplemental depositions of the previously disclosed witnesses. And Baxter's supplemental interrogatory response merely summarized the previously-identified witnesses and the scope of their expected testimony. Here, Baxter has no idea what witnesses have relevant knowledge of the Late-Produced Licenses or the scope of any supplemental testimony, beyond that of Mr. Green, that may be needed with respect to those licenses. Defendants' belated attempt to disclose new documents is more analogous to the Court's exclusion of any testimony from Baxter's witness Deborah Marin or its exclusion of the Guardrails software from Baxter's Infringement Contentions. For the same reasons, the Late-Produced Licenses should be excluded.

As Defendants have failed to establish that their failure to produce responsive documents in fact discovery was either justified or harmless, the exclusion of those documents is automatic

and mandatory. *See NeuroGrafix v. Brainlab, Inc.,* No. 12 C 6075, 2021 WL 1057312, at *5 (N.D. Ill. Mar. 18, 2021) (quoting *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003)). MIL #3 should be granted.

### D. MIL #4 - Defendants should be precluded from presenting any testimony or argument regarding recalls of Plaintiff's Colleague Pump.

Defendants assert that Baxter has not identified any specific document or testimony regarding the recalls it seeks to preclude. But Baxter seeks to preclude any reference to recalls of the Colleague pump. While Defendants' opposition identifies facts relevant to the case related to Baxter ceasing sales of the Colleague pump, the relevant information can be conveyed to the jury without reference to the reason the sales were ceased, *i.e.*, the recalls, which create undue prejudice based on the nature of a product recall. Defendants never address this prejudice.

Specifically, Defendants identify the following recall-related facts as relevant, but Defendants can present those facts without reference to a recall.

- That, when Baxter ceased sales of the Colleague, it offered to replace the Colleague with other infusion pumps that do not practice the patented invention and began selling the Sigma Spectrum pump which does not practice the patented invention.

- That Baxter's sales of the Spectrum pump achieved allegedly similar success as the Colleague pump.

The core of Defendants' argument, as shown on page 15 of their brief, is that "[t]he jury should be permitted to hear that, following the 2010 destroy order, Baxter replaced the patent practicing Colleague with the non-practicing SIGMA Spectrum pump with minimal impact to Baxter's bottom line." (Dkt. 567 at 15.) But that testimony can be presented to the jury without the use of inflammatory language like "destroy order" and "recall."

11

And Defendants argue that Baxter has made the success of the Colleague the centerpiece of its damages case. But they also admit that evidence submitted by Baxter is focused on the Colleague's implementation of the features of the Colleague covered by the '805 Patent. *See* (Dkt. 567 at 14) (noting that Baxter's witnesses offered testimony that "purportedly demonstrate the value and success of the '805 Patent"). The fact that Baxter presents testimony regarding the value of the patented invention does not mean that evidence of a recall unrelated to the patented invention is relevant or necessary to counter Baxter's evidence.

To support the contention that evidence of the recall in this case is necessary to the *Georgia-Pacific* analysis, Defendants rely on a separate court decision evaluating different evidence presented in that case related to different Baxter products. *Fresenius Med. Care Holdings, Inc., v. Baxter Int'l, Inc.*, C 03-01431 SBA(EDL), 2006 WL 1646113 (N.D. Cal. June 12, 2006). In *Fresenius*, the defendant cited extensively to its expert report and other record evidence to demonstrate that, in that case, evidence of the recall was relevant to *Georgia-Pacific* factors 5, 7, 8, and 9. 2006 WL 1646113 at *1-3; (Ex. Q, Fresenius Opposition Brief at pp. 4-6). The Court's analysis of whether the recall evidence is relevant and necessary to any of the *Georgia-Pacific* factors here should look to the evidence in this case to make that determination. But Defendants cite to no such evidence.

Contrary to Defendants' assertions, the *Georgia-Pacific* analysis as reflected in Mr. Green's report references the recalls only in ways that can equally be presented by stating that Baxter ceased sales of the Colleague without reference to reasons or causes for such cessation. For example, in connection with factor 5, Defendants' expert notes that the parties were competitors, including via Baxter's sales of Sigma pumps after the Colleague recall. The same point can be made by merely stating that they remained competitors after Baxter ceased sales of the Colleague

12

pump and began selling the Sigma Spectrum. In connection with factor 7, Mr. Green makes no reference to the Colleague recall. Defendants' reference to the *Fresenius* court's finding that under the evidence in that case "[q]uality control problems of competitor-licensor is likely to lead the licensee to re-negotiate for a lower royalty rate" is found nowhere in Mr. Green's analysis or, indeed, anywhere in the record in this case. With respect to factor 8, Defendants' only argument is that the "profitability, commercial success, and popularity of the accused Alaris system is ***not*** due to the patented technology, but rather to other factors such as a perceived difference in quality between the Alaris System and the Colleague." But again, Defendants are free to address the reasons for the profitability, commercial success, and popularity of the accused Alaris system, and Defendants do not cite to any portion of Mr. Green's *Georgia-Pacific* analysis identifying perceived differences in quality between Alaris and Colleague. In connection with factor 9, the only reference that Mr. Green made to the recall is that Baxter's subsequent sales of Spectrum pumps resulted in higher sales and profits than the Colleague. (Dkt. 557 at 38.) Again, that point can be made without reference to a recall. The only evidence Defendants identify that requires explicit reference to a recall is evidence from the *Fresenius* case that is not of record here. Defendants cannot now try to rely on someone else's evidence in another case to argue relevance based on a new damages defense presented for the first time in motions *in limine.*

None of the arguments or evidence cited by Defendants outweighs the potential confusion and unfair prejudice likely to result from presentation of evidence of the recalls. As demonstrated in Defendants' opposition, Defendants' strained attempts to create a connection between the recalls (related to problems with a third-party battery and a crystal issue in the clocking circuit) and the patented invention confused even Mr. Lynn, a co-inventor of the '805 patent and the individual responsible for the recalls. (Dkt. 567 at 13.) Defendants purport to present Mr. Lynn's testimony

13

that anything that causes the infusion pump to stop "created a problem with the patented workflow" as some sort of admission that the recall itself was *caused* by the workflow reflected in the '805 Patent. But the testimony does not support this conclusion and Mr. Lynn flatly denied that characterization. (*Compare* Dkt. 568 Ex. 20 at 145:2-20 *with* 87:16-89:13); *see also* Dkt. 557 at 13-14 (Green expert report which does not attribute the recalls to the patented invention). A jury, with much less understanding of the technology, cannot help but be confused by Defendants' belated and unsupported efforts to tie the patented invention to the recall.

Further, diving into the causes of the recalls would be an unnecessary distraction and sideshow from the relevant issues in this case. *See ICU Medical, Inc. v. RyMed Technologies, Inc.*, 752 F.Supp.2d 486, 496 (D. Del. 2010) (excluding evidence that could create an unjustified sideshow); *see also Oslon v. Ford Motor Comp.*, 410 F.Supp.2d 869, 875 (D.N.D. 2006) (excluding reference to recalls where the need to provide evidence of the purpose, context and resolution of the recalls would lead the jury far astray). Even as presented by Mr. Green, any relevance of the recalls can be addressed by discussion of Baxter's cessation of sales of the patented product, avoiding any unnecessary inflammatory language like "recall," "destroy order," "substantial risk of injury," or "death." Such language on its own only invites jurors to rely on unsupported assumptions regarding which of the products in suit they might prefer to be used in their own treatment based on their emotional response to the fact of a recall.

Because Defendants have not identified probative value to explicit references to the Colleague recalls and because the risk of confusion and unfair prejudice related to such recall references substantially outweigh any such probative value, MIL #4 should be granted.

14

## II.     Conclusion

For the foregoing reasons, Plaintiff asks that the Court preclude Defendants from offering evidence, testimony, or argument on the identified topics.

Respectfully submitted,

**BAXTER INTERNATIONAL, INC.**

Dated:  October 12, 2023                      By: /s/*Julianne M. Hartzell*
　　　　　　　　　　　　　　　　　　　　Julianne M. Hartzell
　　　　　　　　　　　　　　　　　　　　Kelley S. Gordon
　　　　　　　　　　　　　　　　　　　　Chelsea M. Murray
　　　　　　　　　　　　　　　　　　　　MARSHALL GERSTEIN & BORUN LLP
　　　　　　　　　　　　　　　　　　　　6300 Willis Tower
　　　　　　　　　　　　　　　　　　　　233 S. Wacker Dr.
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60606
　　　　　　　　　　　　　　　　　　　　T: 312.474.6300
　　　　　　　　　　　　　　　　　　　　E: jhartzell@marshallip.com
　　　　　　　　　　　　　　　　　　　　E: kgordon@marshallip.com
　　　　　　　　　　　　　　　　　　　　E: cmurray@marshallip.com

　　　　　　　　　　　　　　　　　　　　Douglas J. Nash
　　　　　　　　　　　　　　　　　　　　John D. Cook
　　　　　　　　　　　　　　　　　　　　Denis Sullivan
　　　　　　　　　　　　　　　　　　　　Thomas Hoehner
　　　　　　　　　　　　　　　　　　　　BARCLAY DAMON LLP
　　　　　　　　　　　　　　　　　　　　Barclay Damon Tower
　　　　　　　　　　　　　　　　　　　　125 East Jefferson Street
　　　　　　　　　　　　　　　　　　　　Syracuse, New York 13202
　　　　　　　　　　　　　　　　　　　　Tel: (315) 425-2700

　　　　　　　　　　　　　　　　　　　　ATTORNEYS FOR PLAINTIFF
　　　　　　　　　　　　　　　　　　　　BAXTER INTERNATIONAL, INC.

**CERTIFICATE OF SERVICE**

I, Julianne M. Hartzell, attorney for Plaintiff Baxter International, Inc. hereby state that on this 12th day of October, 2023, the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTIONS *IN LIMINE* REGARDING DAMAGES-RELATED ISSUES** was electronically Filed Under Seal through the Court's ECF Filing system and an unsealed copy was served via email to the following counsel of record:

| | |
|---|---|
| Kevin Tottis<br>Rachel M. Vorbeck<br>Monica L. Thompson<br>Tottis Law<br>1 East Wacker Drive<br>Suite 1205<br>Chicago, IL 60602<br>ktottis@tottislaw.com<br>rmvorbeck@tottislaw.com<br>mthompson@tottislaw.com | Kurt J. Niederluecke<br>Lora M. Friedemann<br>Adam R. Steinert<br>Nikola L Datzov<br>Fredrikson & Byron, P.A.<br>200 South Sixth Street, Suite 4000<br>Minneapolis, MN 55402-1425<br>kniederluecke@fredlaw.com<br>lfriedemann@fredlaw.com<br>asteinert@fredlaw.com<br>ndatzov@fredlaw.com |
| Heather Petruzzi<br>Lisa Pirozzolo<br>Josefina Garcia<br>Lauren Matlock-Colangelo<br>Labdhi Sheth<br>William Cutler Pickering Hale and Dorr LLP<br>60 State Street<br>Boston, MA 02109<br>Labdhi.Sheth@wilmerhale.com<br>Lauren.Matlock-Colangelo@wilmerhale.com | |

        /s/*Julianne M. Hartzell*
        Julianne M. Hartzell

16